UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JESSICA HODGES, et al.                    )
                                          )
            Plaintiffs,                   )
                                          )        Case Number: 4:22-cv-00067-WTM-CLR
vs.                                       )
                                          )
CHATHAM COUNTY, GEORGIA, et al.           )
                                          )
            Defendants.                   )

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JESSICA HODGES, et al.          )
                                )
        Plaintiffs,             )
                                )
Vs.                             )          Case Number: 4:22-cv-00067-WTM-CLR
                                )
CHATHAM COUNTY, GEORGIA, et al.  )
                                )
        Defendants.             )

---

## AFFIDAVIT OF KIMBERLY A. GRIFFIN

---

1. I am a paralegal at the Claiborne Firm. I am over the age of 18 and am of sound mind and body.

2. On September 17, 2020, I submitted an open records request to Sheriff John Wilcher. That request was for the following:

> This request includes, but is not limited to, surveillance video and audio from any stake-outs, arrest warrants, body cameras worn by any and all officers involved, vehicle dashboard cameras of any and all officers involved, witness statements, 911 calls, arrest reports, supplemental reports, electronic documents, written documents, and the complete investigative file, handwritten notes, electronic notes, all documents, incident reports, final autopsy report, video and audio recordings accident reports, investigative reports, arrest records, interim autopsy coroner reports, case files, internal affairs records, initial incident reports, crime laboratory reports, criminal histories, medical records, chain of custody reports or logs, notes, letters, memos, jail documents, photographs, videotapes, audiotapes, summaries, telephone logs, electronic surveillance, and/or other materials (paper, electronic or otherwise) regarding any communications and/or investigations with or about Lee Michael Creely, including internal and external investigations. I have enclosed an Authorization for Release of Health Information on behalf of Lee Michael Creely.

3. Lawyers for the sheriff objected, noting that the matter was under criminal investigation. After a number of emails and telephone calls with the sheriff's lawyers and their staff, on June 9, 2021, the sheriff's office responded with two (2) jump drives containing documents and video,

including one document within one of the jump drives titled "Creely Final Review Autopsy Submitted 020821 highlighted" with the names of Dr. Kenneth A. Ray and Dr. Ronald M. Shansky on top of the first page and dated September 29, 2020.

4. I attach as Exhibit 1 the initial September 17, 2000 request, the sheriff's June 9, 2021 response, and the document with Dr. Ray and Dr. Shansky's name on the first page to my affidavit.

Pursuant to 28 U.S.C.A. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed on this 12th day of January, 2023.

KIMBERLY A. GRIFFIN
Affiant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JESSICA HODGES, et al.                    )
                                          )
        Plaintiffs,                       )
                                          )
Vs.                                       )        Case Number: 4:22-cv-00067-WTM-CLR
                                          )
CHATHAM COUNTY, GEORGIA, et al.           )
                                          )
        Defendants.                       )

# EXHIBIT 1

| | | | |
|---|---|---|---|
| **From:** | Kim Griffin | | |
| **Sent:** | Thursday, September 17, 2020 3:15 PM | | |
| **To:** | 'John Wilcher (jtwilche@chathamcounty.org)' | | |
| **Cc:** | Sherri Oliver; Donna Myers; Jonathan Hart; Will Claiborne; David Utter; Scott Robichaux | | |
| **Subject:** | Open Records Request- Lee Michael Creely | | |
| **Attachments:** | Chatham County Sheriff Office.pdf; 20200917-Creely-OR to CCSO.pdf | | |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | 'John Wilcher (jtwilche@chathamcounty.org)' | | |
| | Sherri Oliver | | |
| | Donna Myers | | |
| | Jonathan Hart | | |
| | Will Claiborne | Delivered: 9/17/2020 3:15 PM | Read: 9/18/2020 10:44 AM |
| | David Utter | Delivered: 9/17/2020 3:15 PM | |
| | Scott Robichaux | Delivered: 9/17/2020 3:15 PM | |

Please see attached open records request and HIPPA Authorization.

Very truly yours,

**Kimberly A. Griffin**
**Paralegal to William R. Claiborne**
**David Utter, Scott C. Robichaux, and Casey Redwine**

**The Claiborne Firm, P.C.**
**410 East Bay Street**
**Savannah, Georgia 31401**
**Telephone: (912) 236-9559**
**Facsimile: (912) 236-1884**
**Cell Phone: (912) 695-4491**
**E-mail:** kim@claibornefirm.com

**Confidentiality Notice** - This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

**IRS Circular 230 Disclosure** - To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting.

# The Claiborne Firm, P.C.

*Attorneys at Law*
410 E. Bay Street
Savannah, Georgia 31401
www.clairbornefirm.com

Telephone: 912.236.9559

Facsimile: 912.236.1884

writer's email: kim@clairbornefirm.com

William R. Claiborne
David J. Utter (GA, FL & LA)
Scott C. Robichaux (GA)
Casey L. Redwine (GA & NY)

September 17, 2020

**Via Electronic Mail Only**
*jtwilcher@chathamcounty.org*

Sheriff John T. Wilcher
Chatham County Sheriff Office
1050 Carl Griffin Drive
Savannah, Georgia 31405

   *Re: Georgia Open Records Request*

Dear Sheriff Wilcher:

   Please allow this correspondence to serve as my request pursuant to the Georgia Open Records Act Request, (hereinafter "ORA") O.C.G.A. §50-18-70 et seq. I hereby request that, within three (3) business days, as required by the Act, you provide our office with copies of all documents, video and audio recordings related to any all investigations performed by the Chatham County Sheriff Office regarding the death of Lee Michael Creely (DOB: 05/07/1986) on or about September 6, 2020.

   This request includes, but is not limited to, surveillance video and audio from any stake-outs, arrest warrants, body cameras worn by any and all officers involved, vehicle dashboard cameras of any and all officers involved, witness statements, 911 calls, arrest reports, supplemental reports, electronic documents, written documents, and the complete investigative file, handwritten notes, electronic notes, all documents, incident reports, final autopsy report, video and audio recordings accident reports, investigative reports, arrest records, interim autopsy coroner reports, case files, internal affairs records, initial incident reports, crime laboratory reports, criminal histories, medical records, chain of custody reports or logs, notes, letters, memos, jail documents, photographs, videotapes, audiotapes, summaries, telephone logs, electronic surveillance, and/or other materials (paper, electronic or otherwise) regarding any communications and/or investigations with or about Lee Michael Creely, including internal and external investigations. I have enclosed an Authorization for Release of Health Information on behalf of Lee Michael Creely.

   If my request is denied in whole or in part, the law requires your agency to justify all redactions by reference to the exemptions in the Act, specifying code section, subsection and paragraph. O.C.G.A. § 50-18-71(d). The law requires you to release all other portions of a record that contains exempt material. O.C.G.A. § 50-18-72(b). Please provide a written description of

**Via Electronic Mail Only**
*jtwilcher@chathamcounty.org*
Sheriff John T. Wilcher
Chatham County Sheriff Office
1050 Carl Griffin Drive
Savannah, Georgia 31405
   ***Re: Georgia Open Records Request***
September 17, 2020
Page 2 of 2

such records, together with a timetable for their inspection and copying. O.C.G.A. § 50-18-70 (f).

The Georgia Open Records Act/Freedom of Information Act Request sets criminal and civil penalties for any person or entity failing to comply with the terms of the Act. O.C.G.A. § 50-18-74. I request within three business days you provide me or a representative with access to, or exact copies of, the requested public records – including records in electronic form – or, where no actual official record exists, a complete or accurate account of the information requested. Please inform me prior to making these records available if costs are to exceed $25.00.

   Sincerely,

   THE CLAIBORNE FIRM, P.C.

   */s/: Kimberly Griffin*
   KIMBERLY A. GRIFIFN
   *Paralegal for the firm*

KAG/slf
Cc: File



# CHATHAM COUNTY ATTORNEY

**R. JONATHAN HART**
COUNTY ATTORNEY

**JENNIFER DAVENPORT**
ASSISTANT COUNTY ATTORNEY

124 BULL STREET
ROOM 230
SAVANNAH, GEORGIA 31401

PLEASE REPLY TO:
P.O. BOX 8161
SAVANNAH, GEORGIA 31412
T: 912-652-7881
F: 912-652-7887

June 9, 2021

David J. Utter, Esq
410 E. Bay Street
Savannah, GA 31401
anthonyminotti@ammrecovery.com

      Re:  Open Records Request dated May 1, 2021

Dear Mr. Utter:

      Our office is in receipt of your Open Records Act request dated April 7, 2021 to Chatham County Sheriff's Department. Please consider this our initial response. In your request, you ask for copies of the following:

> **All documents, video, and audio recordings related to any and all investigations performed by the Chatham County Sheriff Office regarding the death of Lee Michael Creely (DOB: 05/07/1986) on or about September 6, 2020 to include:**
>
> **A.) surveillance video and audio from any stake-outs, arrest warrants, body cameras worn by any and all officers involved, vehicle dashboard cameras of any and all officers involved, witness statements, 911 calls, arrest reports, supplemental reports, electronic documents, written documents, and the complete investigative file, handwritten notes, electronic notes, all documents, incident reports, arrest records, interim autopsy coroner reports, case files, internal affairs records, initial incident reports, crime lab reports, criminal histories, medical records, chain of custody reports or logs, notes, letters, memos, jail documents, photographs, videotapes, audiotapes, summaries, telephone logs, electronic surveillance, and/or materials regarding any communications, and/or investigations with or about Lee Michael Creely including internal and external investigations.**

      Please see the enclosed set of jump drives in response to your request.

Sincerely,

*/s/ Jennifer R. Davenport*

Jennifer Davenport
Assistant County Attorney

JD/lsg
Encl.

**Creely, Lee Michael**
**DIN: P1703141**
**DOB: 05/07/86**
**Chatham County Detention Facility**
**Death Chart Review Issues Identified**

Dr. Kenneth A. Ray, DBH MEd, Dr. Ronald M. Shansky, MD, MPH
09/29/20

This event involved the death of an inmate while undergoing treatment for opioid detoxification / withdrawal. Mr. Creely was booked on September 03, 2020 and died September 06, 2020. The jail medical indicates he died at the jail before transport to the hospital by EMS. According to the GBI autopsy report (attached) provided to this Monitor on December 30, 2020, the official cause of death was Fentanyl Intoxication. The physiology cause of death was likely due to severe pulmonary depression and/or cardiac arrest due to Fentanyl intoxication.

Examination of the full electronic medical record evidenced no documentation that demonstrates adherence to the treatment protocols ordered by the treating provider. In fact, there is no documentation to demonstrate that the inmate received attention by health care staff after the protocols were initiated. Several existing health care policies were not followed. The record suggests that this death was likely preventable if existing health care policies and standard protocols would have been followed as written and ordered. There are concerns regarding documentation and assessment and provision of treatment. CorrectHealth <u>must</u> consistently follow their policies and procedures regarding:

1) Receiving screening:

   Unable to determine if additional historical health information was imported from the GRAChIE portal.

2) Intoxication and withdrawal care and management:

   Orders were in place for the withdrawal protocol for benzodiazepines and narcotics yet the inmate did not have an initial or serial CIWA assessment.

   There seemed to be no documentation in the record to indicate that the inmate was actually being monitored (paper trail, serial CIWA assessments) on the assigned withdrawal protocols.

3) Medication services:

   The timely delivery of this inmate's ordered medications was not documented in the record. In fact, the only date the inmate received medications was 09/04/20. For each time medication was due on 09/05 and 09/06, the MAR documents "pending". It is unclear the meaning of "pending" in this situation. Was the pharmacy unable to deliver the inmate's medications? Was the inmate's name and meds missing from the med pass list? Had medication orders changed but not documented in the record? Did the inmate refuse

medications? Was the inmate at the facility both days (i.e., court, etc.)? Were the medications actually given but the medication technician failed to document in the record?

The documentation "pending" for medications due the inmate on 09/05 and 09/06 is not clearly understood. The nurses and deputies both had a duty to ensure the inmate received his medications, particularly because he was on benzodiazepine and narcotic withdrawal protocols. Investigation into the reasons the inmate did not receive medications those 2 days is prudent. If there are technical difficulties/glitches within the eMAR system, these would merit immediate address and action from the IT department or vendor. If the inmate had received ordered medications, there would have been at least 2 opportunities daily on the 5th and 6th to observe the inmate's state of health and participate in communication with the inmate.

4) Inmate care and treatment:

There is no documented evidence of adherence to the withdrawal protocol guidelines for benzodiazepines and narcotics. The protocols included CIWA and there were no serial CIWA assessments in the record, no general notes of the observation or assessment of the inmate's state of health on 09/05 and 09/06. Medications were ordered but not given on 09/05 and 09/06. Continuity of care was not demonstrated according to the documents provided in the record.

Continuity of care was not demonstrated, as evidenced by missing medications for 2 days, which included the day of death, as well as any documentation of observation of the inmate's state of health on 09/05 and 09/06. Serial CIWAs were not in the record therefore it is assumed they were not performed. There were multiple opportunities to observe the inmates state of health but the lack of documentation of such suggests a failure to provide continuity of care to this inmate.

There are multiple questions surrounding the lack of inmate medications the day before and the day of his death. There is no supporting documentation to suggest the inmate refused, that the medications were not available or had been change/discontinues, nor is there any note to suggest technical difficulties with the eMar, or any other explanation as to the reason the inmate did not receive his scheduled medications. The inmate received meds on 09/04 and all other scheduled times for meds for this inmate are labeled "pending" in the MAR.

There is no documentation in the record that supports that the inmate received scheduled medications on 09/05 and 09/06, therefore, medications were NOT administered as ordered.

## Salient Summary

1. Mr. Creely was medically cleared for booking into Chatham County Jail 9/3/20 at approximately 12:12pm and was found deceased in his jail cell at approximately midnight on 9/6.

2. During the 9/3 intake processes, benzodiazepine and opioid withdrawal protocols were ordered at approximately 15:39 pm and specifically prescribed withdrawal medication and ordered vitals to be taken. Medications prescribed included Klonopin administrations for 9/3 – 9/6, Clonidine for 9/3-9/9, Reglan for 9/3-9/8, and Imodium for 9/3-9/8. Daily vital signs (blood pressure, pulse, and respiration) were ordered to be taken for seven consecutive days. These medications and the taking of vitals are appropriate and critical standards of care for treating and health monitoring benzodiazepine and opioid dependence withdrawal.

3.  Examination of the electronic medication administration records (attached) found that none of these treatment and health monitoring orders were followed. Klonopin administration started on 9/4, not 9/3 as ordered. This medication was administered only on 9/4 and not on 9/3, 9/5 or 9/6 as ordered. Similarly, Clonidine and Reglan were administered only on 9/4. Review of the medical record found that vital signs ordered for health monitoring were not take after 9/4 but should have been taken on 9/5-9/9.

4.  The medical record indicates that necessary and ordered medical care for the treatment of drug dependence withdrawal was not provided to Mr. Creely. The record also suggests that Mr. Creely was not assessed or seen by any health care staff after 9/4.

5.  Review of CorrectHealth Policies and Procedures indicates that several relevant health care requirements were not followed.

## Additional Concerns

1.  No CIWA (withdrawal symptoms and assessment tool) documents found other than the initial guidelines for Benzo and narcotic withdrawal along with customized start and stop dates and a change in how often the vitals need to be taken (daily for 7 days). (Historically, the inmate's previous incarceration in March of 2019 does document he was placed on CIWA protocol for substance use, and there are 3 CIWA Rating Scale documents from the date of booking 3/11, again on 3/12 and another on 3/15. It is not clear why CIWA rating scales were not present in the 2020 incarceration.

2.  In review of the flowsheet, there was no indication that vitals were taken beyond 09/04. BP and respirations were slightly elevated on 09/04. A second set of vitals would have been prudent, even though the order was for one set daily for 7 days, particularly since the inmate was complaining of abdominal pain and nausea at booking. The error in recording the pulse at intake did not give a baseline of comparison for the pulse of 88 on 09/04. Elevated vitals could signal subtle signs of distress and merited further investigation.

3.  The only activity reported in the chart for the day of 09/05 was the reading of the tuberculin skin test where the ppd was placed at intake. Since the order for vital signs was for daily checks x 7 days, I would have expected to see this recorded in the flowsheet (was not documented) or on a separate document but did not locate in the record.

4.  Subsequently, the only activity reported in the chart for the day of 09/06 was the CPR event, which occurred near midnight. Since vital signs checks were ordered daily for 7 days, I would have expected to see these values recorded and in the record (none found on 09/06)

5.  The eMAR indicates that ordered medications were not administered beyond 09/04/20. A review of the detailed list of meds in the MAR for this inmate reveals that meds due for all doses on 09/05 and 09/06 are labeled as "pending". It is unclear what this signifies. Because there were 2 days of medications labeled pending, it may be important to trace the path from order to pharmacy to patient to see if there is a process improvement opportunity. Of note, because medications were not administered the day before and the day of the inmate's death,

opportunities were missed for observation of and communication about the inmate's state of health.

6. Although the patient denied Hep A, B or C, it was reported in a problem list later that he has a history of Hepatitis (did not specify A, B, or C). A review of historical information revealed lab reports performed in a 2018 incarceration reported antibodies for Hep C. An HCV antibody reflex to NAA was also performed and results indicate that the patient had either had an active case of Hep C in the past and the infection had cleared, or it was a false positive result.

7. Of note, there was no sick call request, no documentation that reported the inmate was in distress or discomfort beyond the nurse intake screen of "anxiety" and the withdrawal protocols for "abdominal pain and nausea".

8. There was no scanned document or documentation of the CPR event by the EMTs.

CorrectHealth Policies and Procedures
Adherence Areas of Concern

## INTOXICATION AND WITHDRAWAL
### *CSO-G-07.0*
### G – Special Needs and Services

The HSA is responsible for making sure everyone is trained in protocol for withdrawal including:
2b.   Serial scoring of CIWA (none present in the record. Inmate complaining of abdominal pain and nausea at intake, withdrawal protocols were in place for Benzo and narcotic withdrawal)
2d.   Consequences of prolonged or delayed Benzodiazepine withdrawal

***CONCERN: Orders were in place for the withdrawal protocol for benzodiazepines and narcotics yet the inmate did not have an initial or serial CIWA assessment.***

4.       Evaluation of the patient post-intake will continue per the protocol or provider orders to monitor for the complications of withdrawal.

***CONCERN: There seemed to be no documentation in the record to indicate that the inmate was actually being monitored (paper trail, serial CIWA assessments) on the assigned withdrawal protocols.***
## MEDICATION SERVICES
### *CSO-D-02.0*
### D – Health Care Services and Support

10.   Medications are delivered in a timely fashion. Facility medication administration times are 8am and 4pm, unless medications are specifically ordered at different times (example, every 12 hours). See Pharmacy Manual for expected time frames from ordering to delivery and the backup plan if time frames cannot be met. Medications are delivered daily by Quick Rx.

***CONCERN: The timely delivery of this inmate's ordered medications was not documented in the record. In fact, the only date the inmate received medications was 09/04/20. For each time***

*medication was due on 09/05 and 09/06, the MAR documents "pending". It is unclear the meaning of "pending" in this situation. Was the pharmacy unable to deliver the inmate's medications? Was the inmate's name and meds missing from the med pass list? Had medication orders changed but not documented in the record? Did the inmate refuse medications? Was the inmate at the facility both days (i.e., court, etc.)? Were the medications actually given but the medication technician failed to document in the record?*

Medication Administration
i.    Units 2A and 2B –
      1.  List of inmates receiving medication is Printed from 3AM system and given to unit hub deputies to ensure inmates and housing unit are prepared for medication administration

      4.  The nurse logs into 3AM cart, list of inmates for the housing unit appears

iv.   Medication discrepancies/confirmation
      1. Each Nurse has access to Centricity EMR in the medication preparation room on each unit. The inmate's medical record can be reviewed and medication orders confirmed. If   a medication   is ordered and is not showing in the 3AM tower, the nurse can override the cart to obtain the       ordered medication.

***CONCERN: The documentation "pending" for medications due the inmate on 09/05 and 09/06 is not clearly understood. The nurses and deputies both had a duty to ensure the inmate received his medications, particularly because he was on benzodiazepine and narcotic withdrawal protocols. Investigation into the reasons the inmate did not receive medications those 2 days is prudent. If there are technical difficulties/glitches within the eMAR system, these would merit immediate address and action from the IT department or vendor. If the inmate had received ordered medications, there would have been at least 2 opportunities daily on the 5th and 6th to observe the inmate's state of health and participate in communication with the inmate.***

**RECEIVING SCREENING**
***CSO-E-02.0***

**E – Inmate Care and Treatment**

When the detainee is initially assigned to the facility, a complete receiving screening will be conducted as follows:

13.   The GRAChIE portal will be accessed and viewed for additional historical health information. Subsequently, during the health assessment, the qualified health professional will import the GRAChIE historical health information into the medical record.
14.   Discrepancies that arise between GRAChIE information and inmates self-report will be assessed and managed as clinically indicated.

***CONCERN: Unable to determine if additional historical health information was imported from the GRAChIE portal.***

**CONTIUITY OF CARE DURING INCARCERATION**
*CSO-E-12.0*
**E – Inmate Care and Treatment**

1. All clinical orders are evidence-based and implemented in a timely manner.

*CONCERN: There is no documented evidence of adherence to the withdrawal protocol guidelines for benzodiazepines and narcotics. The protocols included CIWA and there were no serial CIWA assessments in the record, no general notes of the observation or assessment of the inmate's state of health on 09/05 and 09/06. Medications were ordered but not given on 09/05 and 09/06. Continuity of care was not demonstrated according to the documents provided in the record.*

2. When clinicians deviate from the standard of practice, the deviation is documented in the medical record and justified, and shared with the patient.

*CONCERN: Continuity of care was not demonstrated, as evidenced by missing medications for 2 days, which included the day of death, as well as any documentation of observation of the inmate's state of health on 09/05 and 09/06. Serial CIWAs were not in the record therefore it is assumed they were not performed. There were multiple opportunities to observe the inmates state of health but the lack of documentation of such suggests a failure to provide continuity of care to this inmate.*

    c. Current medications will be evaluated and continued as deemed appropriate by the appropriate provider.

*CONCERN: There are multiple questions surrounding the lack of inmate medications the day before and the day of his death. There is no supporting documentation to suggest the inmate refused, that the medications were not available or had been change/discontinues, nor is there any note to suggest technical difficulties with the eMar, or any other explanation as to the reason the inmate did not receive his scheduled medications.. The inmate received meds on 09/04 and all other scheduled times for meds for this inmate are labeled "pending" in the MAR.*

5.   c. Medications and other therapies will be administered as ordered and all subsequent clinic appointments will be met as clinically indicated.

*CONCERN: There is no documentation in the record that supports that the inmate received scheduled medications on 09/05 and 09/06, therefore, medications were NOT administered as ordered.*


**REVIEW OF THE RECORD FROM BOOKING ON 09/03/20 to 09/06/20 DEATH**

**General Health Questionnaire**

**Covid-19 Screening**
**A. Anderson, RN**
**09/03/20**
Questionnaire Responses: Negative for symptoms or contact with persons with Covid-19.  Temp: 98.2
Imported into the record by L. Loundy, HIT 09/04/20 @ 09:16 AM


**Provider Guidelines Narcotic Withdrawal**
**09/03/20 @ 15:10**
**Sackariasen, PA, A. Anderson, RN**
*This document is for inmate J. Morales and is in the wrong chart.  It is page 3 of 1-3 pages for Provider Guidelines for Withdrawal in L. Creely's chart. Pages 1-2 are Benzodiazepine Withdrawal Guidelines for L. M. Creely.*


**Provider Guidelines for Benzodiazepine Withdrawal**
**09/03/20 @ 15:39**
**Sackariasen, PA and A. Anderson, RN**
This document appears twice in the record; once as a 2-page document for L. Creely and again as a 3-page document with the wrong inmate's protocol attached to 2 pages for Creely.
NKDA
Daily use of Xanax 2 mg x 4 years
Protocol initiated at intake for chronic daily use of BZDs or s/s withdrawal: nausea
Protocol assigned: MILD Klonopin 1 mg po BID x 3 days 09-03 to 09-06
Refer to MH Team
Place on Sick Cal List for next available appointment after protocol is initiated
If not placed in infirmary or SNU, Vital Signs qd x 7 days


**Provider Guidelines for Narcotic Withdrawal**
**09/03/20 @ 15:39**
**Sackariasen, PA and A. Anderson, RN**
Protocol initiated due to: nausea, abdominal pain
Heroin, last used 09/02/2020, ½ gram
Protocol: Clonidine 0.1 mg po bid x 3 days 09-03 to 09-06, then Clonidine 0.1 mg qd x 3 days 09-06 to 09-09.
Reglan 10 mg po bid x 5 days for N/V 09/03 to 09/08
Imodium 2 mg: 2 caps po prn diarrhea x 1, then 1 cap po q loose stool.  Do Not Exceed 16 mg (8 caps) in 24h 09/03 to 09/08.
Patient may go to General Population unless coexisting morbidity requires Infirmary/SNU
Refer to MH Team
Place on Sick Call list 48-72 hrs. after protocol initiated
Vital Signs (BP, P, R) qd x 7 days after protocol initiated


**Medical Clearance**
**09/03/20 @ 12:12 PM**
**A. Anderson, RN**

Negative for altered LOC, confusion, disorientation, resp. disease, abnormal V/S, hypo/hyperglycemia, fever, chills, night sweats, weight loss, fatigue, lethargy, anorexia, respiratory distress, productive cough > 3 weeks, hemoptysis, recent exposure to TB or any s/s infectious disease. Negative for jaundice, rashes, open or draining lesions, infestations or manifestations of infectious/communicable skin condition. Negative for SI, HI, self-harm or hx of suicidal behavior.

No: symptoms of withdrawal from drugs or alcohol
No: I evidence of sweating, tremors, agitation or self-neglect
No: acute disturbance in mood or behavior
No: any other s/s that require immediate medical intervention such as severe pain, unsteady gait, unaddressed pre-arrest injuries, recent CHI with LOC
No: Advanced Directive
V/S: 180 lbs. 69 inches (BP 121/84 sitting, *Pulse rate is in error and is documented as 16*, Respirations 16, Temp 98.2 temporal, O2 sats 98 room air)

**Document - Booking**
**09/03/20**
2020090033

**Nurse Intake Overview**
**09/03/20 @ 03:21 PM**
**A. Anderson, RN**
34 years old
Denies arrest injuries, denies physical limitations or disabilities, denies travel outside US last 30 days, no known allergies.
Reports medications: Xanax 1 mg bid (Gordon's pharmacy Savannah)
Weight 180, Height 69 inches
Denies Pain
Denies Insurance coverage
PCP: Dr. Aduji
Yes: Chickenpox remote hx
No: does not see a medical provider or psychiatrist and has no surgeries or procedure pending
No: Past psychiatric hospitalization
Yes: Residential Treatment, Gateway, Washington, PA, date unknown, reports was not helpful
Past Medications: Klonopin and Xanax
Trauma Hx: subdural hematoma due to a fight 10 years ago
No: controlling thoughts or someone trying to read mind, etc.
Denies weight loss, feeling useless or sinful, moving or talking more slowly than usual
Denies taking medication for emotional or mental health problems or hospitalization for such
Suicide Screening Negative
PREA assessment Negative, Score = 0
TB Screen:  Last PPD placed 3/2019.  Current PPD placement 9/3/20 Left forearm, no s/s
Review of Systems: Negative with the exception of reported anxiety
Oral Hygiene: Good
Substance Use History: Yes: Tobacco, Opioid, Benzo.  Denies ETOH.  Denies outpatient/inpatient treatment for substance use

Substance Use: Benzodiazepine. Xanax. Used 20+ days out of the past 30 days, 4 years duration, last use on 09/02/20, 1mg bid orally
Substance Use: Heroin. Used 20+ days out of the past 30 days, 1 year duration, last used on 09/02/20, ½ gram daily IV injection.
Other: Subtex. Since 2006. Last use 03/10/2019, 8 mg (1/2 tab) bid
Substance Use: Tobacco. 20+ days out of the past 30 days, 1pack per day, since age 13, last use 09/03/20, frequency daily.
Yes: Multiple sex partners, unprotected sex, self or partners who used IV drugs
Denies: HIV, AIDS, STDs, Hep A, B, C, herpes
Provider Initial: Priority Level 4 (no referral)
Because of methadone and Xanax reporting, the PA was notified and orders were written. Education provided on nutrition, exercise, smoking and substance abuse.
Disposition: Intake housing
MH referral: routine, detox protocols

**Clinical Lists Changes**
**09/03/20 @ 03:34 PM by A. Anderson RN**
Added new problems of: Benzodiazepine dependence and Heroin abuse

**Clinical Lists Changes**
**09/03/2020 @ 03:43 PM by A. Anderson, RN**
Added new order of Sick call to provider (1) 2 days *(The record shows order status as In Process, indicating the order was not completed before the time of death.)*
Vital Signs ordered qd x 7 days. *(The record shows order status as In Process, indicating the order was not completed before the time of death. The Flow sheet documents BP recorded on 9/4 only)*

**Clinical Lists Changes**
**09/03/20 @ 03:51 PM A. Anderson, RN**
**09/03/20 @ 05:13 PM P. Sakariasen, PA**
New Medications: Clonidine HCL 0.1 mg Oral tablet, one po bid; Clonidine HCL 0.1 mg oral tables, one po daily; Reglan 10 mg oral tablet, one by mouth bid x 5 days; Imodium A-D 2 mg oral – give 2 tabs po prn diarrhea x 1, then 1 tab po q loose stool, not to exceed 16 mg in 24 hours; Klonopin 1 mg oral tablet, one po bid; Klonopin 1 mg oral tablet, one po qhs

**Housing Location Change**
**09/03/20 @ 06:30 PM**
Location changed from Booking to 2B

**Psych SOAP Note**
**09/04/20 @ 08:49 AM**
**Electronically signed off by B. Theodore, LPC @ 02:14 PM**
**Beverley V. Theodore, LPC**
Age 34
Medications: KLONOPIN 1 MG ORAL TABLET one by mouth qhs; Route: ORAL, KLONOPIN 1 MG ORAL TABLET one by mouth twice daily; Route: ORAL, IMODIUM A-D 2 MG ORAL (LOPERAMIDE HCL) Give 2 tabs po PRN diarrhea x 1, then 1 tab po q loose stool. Do not exceed

16 mg in 24 hours., REGLAN 10 MG ORAL TABLET one by mouth twice daily x 5 days; Route: ORAL, CLONIDINE HCL 0.1 MG ORAL TABS one by mouth daily; Route: ORAL, CLONIDINE HCL 0.1 MG ORAL TABLET one by mouth twice daily; Route: ORAL.

**Objective:** "Met with I/M on a mental health initial in 2B. I/M was now returning from court, did not appear to pleased. He is not married, 2 children; some college, family support no drug or mental health hx. No prison time nor does he want to see the psychiatrist." *("no drug history" does not match previously reported substance use history)*

SI/HI: Absent

Assessment: Active problems: Benzodiazepine dependent and history of Hepatitis *(history of Hepatitis does not match previous reported denial of hep A, B or C)*

Groomed, normal motor behavior, speech, affect, mood. Linear thought content, coherent, logical, alert, fully oriented memory normal and insight and judgment intact.

**PLAN:** MH designation – none. PRN was explained to the inmate and the MH services provided. Instructed in kiosk use to retain services.

**CIWA Benzodiazepine**
**09/04/20 @ 11:07 AM**
**Jackie L. Harned, LPN**
**Electronically signed by J. Harned 09/08/20 @ 07:09 AM**
Age 34
Ht 69, Wt 180 (taken previously on 09/03/20)
BP 142/74 standing, Temp 98, pulse 88 and regular, respirations 20
CIWA Benzo Withdrawal Scale Total Score: 0
*(BP and respirations are higher than reported at intake (121/84 sitting and 16). Since there was an error in the pulse measurement at intake there is nothing with which to compare. This entry was not electronically signed until 2 days after death and 4 days after the note was authored).*

**TB Skin Test Results**
**09/05/20 @ 08:27 AM**
**L. Florence, MA**
PPD results: Negative

**General Note**
**09/06/20 @ 11:38 PM**
**Susan Rivers, RN**
Code Black: "At approx. 2223 a code black was called for this IM. I arrived at approx. 2225 and noted the IM on the floor, unresponsive, with CPR in progress by officers. Nurse Roberts was standing next to the IM attempting to set up the AED. Nurse Sigman was in the day area with the medical cart and O2 tank. She informed me that CPR was in progress. I entered the room at that time and noted dark, foul smelling fluid on cell floor, commode and IM's face. I asked for the BVM, attached it to the O2 tank, and began bagging the IM while compressions continued. AED was placed and over the course of the code black it repeatedly advised "No Shock". BVM Seal was maintained throughout code with good rise and fall of chest. EMS arrived and assessed the IM, verbally noting "rigor" to upper extremities. Reportedly, EMS contacted medical control to inform the provider of the situation and it was determined that field termination was appropriate at this time. CPR ceased and the officers who were doing compressions and I exited the cell."

*(rigor mortis begins to form in the muscles of the jaw and neck downward upon death. Rigor begins between 2 and 6 hours after death and is complete within 6-12 hours)*

**Emergency Code Response**
**09/06/20 @ 11:30 PM**
**L. Roberts, RN**
**Electronically signed by L. Roberts, RN on 09/07/20 @ 04:00 AM**
Time the Code Called: 2221
Location: 2B
RN code leader: Roberts, RN
RN/LPN: Rivera, RN
**Reason for Code:** Unresponsive
ALP Notified: No
"On arrival black -to green substance noted on and around toilet area as well as on wall, bed, and inmate's face/nose. Inmate in jumpsuit that was soiled. Inmate lying on left side on bed facing wall with no rise or fall of chest. no Spontaneous breathing. No Pulse. RN and officers assisted inmate onto floor. Inmate was stiffed, with both hands in fist, with skin warm to touch. Cyanosis of hands and face. eye open with looking upward. CPR was initiated and EMS called."
**Intervention:** CPR initiated 2227 *(does not list who initiated the code although the question asks who initiated the code)* Code cleared at 2318. AED, 100% oxygen via mask and bag, chest compressions. Vital Signs taken = 0 Pulse, 0 Resp
**General Note:** "Arrival to 2B with Inmate lying on bed facing wall with no fall or rise of chest, no breathing, and no pulse. CPR was done until EMS arrived at 2318." *(note was electronically signed by Nurse Roberts 7+ hours after note open/event)*
**Chatham County Coroner Request to CCDC**
**Fax: 09/10/20 @ 13:59**
Subpoena for the production of medical records related to L. Creely including demographic information, H&P Diagnosis and any incident reports

**Summary**

1. No CIWA documents found other than the initial guidelines for Benzo and narcotic withdrawal along with customized start and stop dates and a change in how often the vitals need to be taken (daily for 7 days). (Historically, the inmate's previous incarceration in March of 2019 does document he was placed on CIWA protocol for substance use, and there are 3 CIWA Rating Scale documents from the date of booking 3/11, again on 3/12 and another on 3/15. It is not clear why CIWA rating scales were not present in the 2020 incarceration.

2. In review of the flowsheet, there was no indication that vitals were taken beyond 09/04. BP and respirations were slightly elevated on 09/04. A second set of vitals would have been prudent, even though the order was for one set daily for 7 days, particularly since the inmate was complaining of abdominal pain and nausea at booking. The error in recording the pulse at intake did not give a baseline of comparison for the pulse of 88 on 09/04. Elevated vitals could signal subtle signs of distress and merited further investigation.

3. The only activity reported in the chart for the day of 09/05 was the reading of the tuberculin skin test where the ppd was placed at intake. Since the order for vital signs was for daily checks x 7 days, I would have expected to see this recorded in the flowsheet (was not documented) or on a separate document but did not locate in the record.

4. Subsequently, the only activity reported in the chart for the day of 09/06 was the CPR event, which occurred near midnight. Since vital signs checks were ordered daily for 7 days, I would have expected to see these values recorded and in the record (none found on 09/06)

5. The eMAR indicates that ordered medications were not administered beyond 09/04/20. A review of the detailed list of meds in the MAR for this inmate reveals that meds due for all doses on 09/05 and 09/06 are labeled as "pending". It is unclear what this signifies. Because there were 2 days of medications labeled pending, it may be important to trace the path from order to pharmacy to patient to see if there is a process improvement opportunity. Of note, because medications were not administered the day before and the day of the inmate's death, opportunities were missed for observation of and communication about the inmate's state of health.

6. Although the patient denied Hep A, B or C, it was reported in a problem list later that he has a history of Hepatitis (did not specify A, B, or C). A review of historical information revealed lab reports performed in a 2018 incarceration reported antibodies for Hep C. An HCV antibody reflex to NAA was also performed and results indicate that the patient had either had an active case of Hep C in the past and the infection had cleared, or it was a false positive result.

8. Of note, there was no sick call request, no documentation that reported the inmate was in distress or discomfort beyond the nurse intake screen of "anxiety" and the withdrawal protocols for "abdominal pain and nausea".

9. There was no scanned document or documentation of the CPR event by the EMTs.


CCDF Incarceration History / Substance Dependence

Booked 3/11/19
Benzo WD protocol initiated to start 3/12 stop 3/18
Clonazepam ordered 3/11/19
CIWA /11/29 = 0
CIWA 3/12/19 = 2
CIWA 3/15/19 = 0
HP 3/22/19 records no MH HX
Released 04/09/19


Booked 4/9/18
Benzo WD protocol initiated to start 4/10 stop 4/19
Vitals ordered 4/9/18

CIWA 4/10/18 = 0
CIWA 4/12/18 = 3
HP on 4/16/18 records HX schizoaffective disorder, records last CIWA of 4/9/18 of 0 but CIWA on 4/12/18 records score of 3 (anxiety, not enough sleep, tremor).
Released 8/03/18

Booked 3/11/17
Benzo WD protocol initiated to start 3/12 stop 3/18
Clonazepam ordered 3/12/17
3/12/17 Released

# Official Report



**Division of Forensic Sciences**
**Georgia Bureau of Investigation**
**State of Georgia**

**Coastal Regional Lab**
DOFS Case #:    2020-6005368
Report Date:    12/10/2020

Cleveland Miles
Deputy Director



**Requested Service:** Autopsy
  Agency:        Chatham Co. Coroner
  Agency Ref#:
  Requested by:  C. PUGH

**Case Individuals:**
  Victim: Lee Michael Creely

**Evidence:**
    2020-6005368-001        Decedent

**Results and Conclusions:**
  Evidence Submission: 001

      EXTERNAL EXAMINATION:

      Pursuant to the Georgia Death Investigation Act. an autopsy is performed on the above decedent at the Georgia Bureau of Investigation Coastal Regional Crime Lab Medical Examiner Office in Pooler, Georgia. at 0905 hours on September 9, 2020.

      Assisting with the examination are Death Investigation Specialists Shannon Walden and *Sheldon Phillips of the Georgia Bureau of Investigation Crime Laboratory Medical Examiner Office.

      The body is identified by body labels. by photographic identification, and by the Chatham County Coroner's Office.

      The body is received in a zippered black body bag with the zipper pull secured by a plastic tie and with identification tags "Creely, Lee M." affixed to the zipper pulls. The body is received clothed a green jump suit, white T-shirt, white boxer shorts, and white socks.

      The body is that of an adult White male, weighing 168 pounds, measuring 5 feet 9 inches in length, and appearing the stated age of 34 years. The body is cold to touch. Rigor mortis is present to an equal extent in all joints. Postmortem lividity is present over the posterior dependent portions of the body.

      The hair is black, short. and receding anteriorly. Sideburns are present. The eyes are open. The corneas are clear. The irides are brown. The sclerae are without special note. The earlobes are without special note. Hair is present in the auricular canals. Black vomitus is present about the nose and face. The skeleton of the nose is intact. There is a black with gray mustache and beard. The lips and frenula display no abnormalities. The teeth are natural. The lips are drying. The neck is without special note.

      Hair is present over the upper chest and the lower abdomen. On the left upper chest. there is a tattoo of the name "Jessica." The left chest is flattened. The abdomen is without special note. The external genitalia are normal male and circumcised. Fecal soiling is present over the genital area.

      The fingernails are short and dirty. A jail identification band encircles the right wrist. On the lateral right arm, there is a tribal Jesus tattoo with the word "Faith." On the left elbow crease, there is skin slippage.

      The back is without special note. Hair is present over the buttocks. Fecal soiling is present

about the anus.

Hair is present over the lower extremities. On the anteromedial left knee, there is a curved scar, 1.4 by 0.3 inches. The toenails are short and clean.

EVIDENCE OF INJURY:

1. On the left lower chest, there is a slanting, brown abrasion, 6.0 by 1.8 inches.

2. On the posterior right hand, there is a healing scar, 0.3 inches.

3. On the lateral right wrist, there is a vertical needle track, 1.8 inches.

4. On the posterior left hand and wrist, there is a curved needle track, 5.8 inches.

5. On the lateral left wrist, there is a vertical needle track, 3.3 inches.

6. On the left elbow crease, there is a needle track, 0.8 inches.

X-RAY EXAMINATION:

1. An identification bracelet projects over the right wrist.

2. Snap fasteners project over the midline of the chest and abdomen.

3. A dental restoration is present in the right upper teeth.

4. Gas and fecal matter are present in the descending and sigmoid colon.

5. Gas is present in the stomach.

6. The lungs and heart are without special note.

EVIDENCE OF MEDICAL TREATMENT:

1. On the anterior right forearm, there is an electrocardiogram lead.

2. On the medial left ankle, there is an electrocardiogram lead.

3. The lateral 2nd through 7th left ribs are fractured.

INTERNAL EXAMINATION:

BODY CAVITIES: The body is entered by a Y-shaped incision. All organs are present in their usual anatomic positions and present their usual anatomic relationships. No excess fluid is present in any body cavity. The abdominal panniculus measures 4.0 cm.

NECK ORGANS: The anterior muscles of the neck reveal no evidence of hemorrhage. The cartilages of the larynx and epiglottis display no abnormality. The hyoid bone is intact. Examination of the tongue reveals no evidence of injury. The thyroid gland displays no abnormalities.

RESPIRATORY SYSTEM: The right lung weighs 420 grams. The left lung weighs 380 grams. The lungs are tan anteriorly and gray posteriorly. Both lungs are well aerated. Moderate anthracotic pigment is present over the surfaces of the lungs. No thromboemboli are present in the pulmonary arteries. The trachea and bronchi display no abnormalities. On cut section, the

lungs show congestion in their posterior dependent portions.

CARDIOVASCULAR SYSTEM: The heart weighs 340 grams. The coronary arteries pursue their usual anatomic course and display mild atherosclerosis. The proximal left anterior descending coronary artery shows 60% occlusion. The left ventricle measures 0.7 inches beneath the mitral valve. The mitral valve leaflets of the heart show mild myxoid change. Serial sections of the myocardium reveal no focal areas of pathologic change. The aorta is without special note.

HEPATOBILIARY SYSTEM: The liver weighs 1360 grams. The liver is red tan with smooth surfaces and sharp margins. On cut section, the hepatic parenchyma is red brown, congested, and fatty. The gallbladder and biliary track pursue their usual anatomic course and display no pathologic change.

HEMOLYMPHATIC SYSTEM: The spleen weighs 100 grams. The spleen is gray with a smooth surface. On cut section, the splenic parenchyma is red brown with prominent follicles and congested. No lymphadenopathy is noted.

GASTROINTESTINAL SYSTEM: The esophageal and gastric mucosa display marked congestion. The stomach contains 150 cc of dark red brown fluid. The duodenum, small, and large intestine are without special note. The appendix is present.

GENITOURINARY SYSTEM: The right kidney weighs 140 grams. The left kidney weighs 160 grams. The kidneys are red tan with persistent lobulation. On cut section, the renal parenchyma is red tan. The renal pelves, ureters, and urinary bladder are without special note. The prostate gland is without special note. The testicles display no abnormalities.

ENDOCRINE SYSTEM: The pituitary, pancreas, and adrenal glands display no abnormalities.

MUSCULOSKELETAL SYSTEM: There are fractures of the lateral 2nd through 7th left ribs. The skeleton is otherwise intact. Incision of the posterior arms, back, buttocks, and thighs reveals no evidence of hemorrhage.

CENTRAL NERVOUS SYSTEM: The scalp displays no lacerations or hematomas. On reflecting the scalp, there is no subgaleal hemorrhage. The skull is intact. On entering the cranial cavity, there is no evidence of hemorrhage: specifically, there is no subdural or epidural hematoma. The leptomeninges are without special note. The brain weighs 1580 grams. The brain displays edema manifested by flattening of the cortical convolutions, hippocampal gyrus notching, and cerebellar tonsillar herniation. Serial sections of the brain reveal no focal areas of pathologic change. The arteries at the base of the brain display no abnormalities. Fluid blood is present in the dural sinuses.


SPECIMENS:

Femoral blood, aortic blood, and urine are submitted to the Georgia Bureau of Investigation Toxicology Laboratory for analyses for alcohol, drugs of abuse, and therapeutic drugs. A blood card, a fingerprint card, and pulled head hair are submitted to the Georgia Bureau of Investigation Crime Lab. A tissue stock jar and one (1) X-ray are retained.


ANATOMIC DIAGNOSES:

1.  Pulmonary congestion

2.  Moderate anthracotic pigment over surface of both lungs

3.  Mild coronary atherosclerosis with focal 60% occlusion of the left anterior descending coronary atherosclerosis

4.  Mild myxoid change of the mitral valve leaflets of the heart

5.  Hepatic congestion and steatosis

6.  Splenic congestion

7.  Renomegaly (300 grams)

8.  Cerebral edema


TOXICOLOGY EXAMINATION:

Femoral blood: Negative for {LC-HRMS/MS} certain benzodiazepines, common opioids, barbiturates, and cocaine/cocaine metabolites
Femoral blood: Negative for {GC/MS} certain amphetamines
Femoral blood: Negative, certain cannabinoids (marijuana) {LC/MS/MS}
Femoral blood: Positive, fentanyl, 3.0 micrograms/liter {LC/MS/MS, LC-HRMS/MS}
Femoral blood: Ethyl alcohol result by gas chromatography, negative


OPINION:

This 34-year-old White male, LEE CREELY, died of fentanyl intoxication while in custody at the Chatham County Jail.

Cause of Death: Fentanyl Intoxication

Manner of Death: Accident

---

Only those items discussed in the results above were analyzed for this report. The above represents the interpretations/opinions of the undersigned analyst. Unless noted above, evidence analyzed in this report will be returned to the submitting agency. Biological evidence (body fluids and tissues) and proof determination evidence will be destroyed after one year. This report may not be reproduced except in full without written permission of the laboratory.

Technical notes and data supporting the conclusions and findings in this report are maintained within the laboratory case records.

This case may contain evidence that must be preserved in accordance with O.C.G.A. § 17-5-56.


Edmund Donoghue
Regional Medical Examiner
912-921-5900
edmund.donoghue@gbi.ga.gov

Related Agencies:
Chatham Co. District Attorney
GBI-Medical Examiner Coastal
DOC-Internal Affairs - Forsyth
Eastern Judicial Circuit
GBI-Reg. 05-Statesboro
Chatham Co. Coastal State Prison

ACN: DR. DONOGHUE

ACN: 0500410121

**End of Official Report**