UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JESSICA HODGES, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case Number: 4:22-cv-00067-WTM-CLR |
| vs. ) | |
| ) | |
| CHATHAM COUNTY, GEORGIA, et al. ) | |
| ) | |
| Defendants. ) | |

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| JESSICA HODGES, As natural guardian of minor children, L.C. and D.C.; and ESTATE OF LEE MICHAEL CREELY, By and through Warren Ratchford, its Administrator; <br><br> Plaintiffs, <br><br> vs. <br><br> CHATHAM COUNTY, GEORGIA; CORRECTHEALTH CHATHAM LLC; CORRECTHEALTH, LLC; CARLO MUSSO, M.D.; KAREN FORCHETTE; ALFRED NEVELS; SELENA CARDONA; TEANNA FRANCES-HENDERSON; TERENCE JACKSON; DON WHITE; KARLOS MANNING; YVETTE BETHEL-QUINNEY; LOWRETTA FLORENCE; AMBER ANDERSON; JACKIE HARNED; SUSAN RIVERA; and LOUIKISHA ROBERTS; <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case Number: 4:22-CV-00067-WTM-CLR |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS DIRECTED TO DEFENDANTS CHATHAM COUNTY,
GEORGIA, ALFRED NEVELS, DON WHITE, AND KARLOS MANNING**

Plaintiffs, by and through undersigned counsel, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and hereby request that Defendants Chatham County, Georgia ("County"), Alfred Nevels, Don White, and Karlos Manning produce the following documents for inspection and copying to Plaintiffs' attorney within thirty (30) days of service at the offices of

The Claiborne Firm, 410 E. Bay Street, Savannah, GA, 31401, in accordance with the definitions and instructions below.

## INSTRUCTIONS

A.  *Produce paper documents electronically.* Documents that do not exist in a native electronic format or which require redaction of privileged content are hereby requested to be produced in color, 300 dpi, searchable .PDF format with logical unitization preserved. Logical unitization entails that the document breaks and groupings found in the original document format (e.g. paper documents) will be mirrored in the .PDF production. For example, if the original documents consist of a stack of paper with various multipage documents stapled- or paper-clipped together, then each stapled or paper-clipped document shall be produced as a separate .PDF file. Special attention should be paid to ensure that electronically produced copies reflect attachment relationships between documents and information about the file folders within which the document is found. In addition, logical unitization means multi-page documents must be produced as a single document, and not as several single-page documents. Documents should not be shuffled or otherwise rearranged prior to being scanned.

B.  *Produce electronically stored information in native format.* Any documents that exist in electronic form are specifically requested to be produced in native or near-native formats and should not be converted to an imaged format, e.g. .TIFF or .PDF unless the document does not exist within your care, custody, or control in a native electronic format. Native format requires production in the same format in which the information was customarily created, used, and stored by you. The following is a list of native or near-native forms in which specific types of electronically stored information (ESI) should be produced:

1. Microsoft Word documents: .DOC, .DOCX

2. Microsoft Excel spreadsheets: .XLS, .XLSX

3. Microsoft Powerpoint presentations: .PPT, .PPTX

4. Microsoft Access Databases: .MDB

5. Wordperfect documents: .WPD

6. Adobe Acrobat documents: .PDF

7. Photographs: .JPG

8. Email messages: Messages should be produced so as to preserve and supply the source RFC 2822 content of the communication and attachments in a fielded, electronically-searchable format. For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced.

9. Databases (excluding e-mail systems): Unless the entire contents of a database are responsive, extract responsive content to a fielded and electronically searchable format preserving metadata values, keys and field relationships. If doing so is infeasible, please identify the database and supply information concerning the schema and query language of the database, along with a detailed description of its export capabilities, so as to facilitate Plaintiffs crafting a query to extract and export responsive data.

10. Electronic files that reside in file formats other than those specified in sub-paragraphs 1 through 9 above are to be rendered into readable Adobe Acrobat (*.pdf) format and produced in such format.

11. Recorded voice mails, phone calls, audio of disciplinary hearings, and any other audio recordings are to be produced in native or near-native formats.

12. Videos are to be produced in native or near-native formats.

C. *Produce two copies of documents that reside both in electronic form and on paper*. Where Defendant discovers documents that are kept in electronic form but where a paper version has been signed or otherwise annotated by hand, Defendant should produce the electronically-stored copy and also each separately signed or hand annotated version should be produced in .PDF format.

D. *Answer each request for production separately*. List the documents produced in response to each request. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number. These discovery requests are not intended to be duplicative. All requests should be responded to fully and to the extent not covered by other requests. If there are documents that are responsive to more than one request, please note and produce each such document first in response to the request that is more specifically directed to the subject matter of the particular document.

E. *Produce a privilege log*. For each document or other requested information that Defendant asserts is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other ground for exclusion. Defendant shall produce a privilege log which identifies as to each privileged communication or document: its date; its author(s); the title or position of its author(s); its

recipient(s); the title or position of its recipient(s); its number of pages; its stated subject matter; the legal basis upon which any of the Defendants claim privilege; the specific portion of the document to which the communication or document is responsive.

F. *Support any claim of undiscoverability.* For each document that Defendant claims is not discoverable, state (1) the information required by the definition of "document" below; (2) the author's job title and address; (3) the recipient's job title and address; (4) the name and job title of all persons to whom it was circulated or who saw it; (5) the name, job title, and address of the person now in possession of the document; and (6) the document's present location. For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or when it could no longer be located, and state the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

G. *Bates-stamp all production.* Bates numbering should use a consistent format across the entire production. In general, Bates numbers should contain hyphens and no more than three segments: for example, a company identifier, a middle segment (e.g., custodian identifier), and a sequence number of 6-8 digits (the number of digits should be consistent across the entire production). Bates numbers should not contain embedded spaces (" "), slashes ("/"), backslashes ("\"), or underscores ("_"). Native format files should also be assigned a Bates number and documented in the load file; if images have been produced with a native format file, the beginning Bates number of the images should be the native format file's Bates number.

H.  *These requests are limited in scope and proportional to the needs of the case.* The Requests herein which relate to the production of electronic files and other records are to be construed as limited in scope, such that Defendant is requested to search only through active electronic storage media such as personal computer hard drives, network servers, floppy diskettes, CD-ROMs, DVDs, etc. These requests for the production of electronic files and other records should not be construed to require a search of, or restoration of, storage media such as back-up tapes or similar devices which are stored and used primarily for "disaster recovery" of Defendant(s) computer system in the event of a catastrophe. Defendant, nevertheless, is requested to preserve such disaster recovery back-up storage media and data in the event that the need arises, in the course of this litigation, to broaden the scope of electronic discovery. Furthermore, the request does not request or require searching for files that were deleted for reasons unrelated to this lawsuit.

I.  *Consult with Plaintiffs' counsel regarding any technology assisted review.* Before Defendant or its agent uses software or technology to identify or eliminate potentially responsive documents and information produced in response to this Request, including but not limited to search terms, predictive coding or similar technology, near-deduplication, deduplication, and email threading, Defendant must provide a detailed description of the method(s) used to conduct all or any part of the search. If search terms will be used, in whole or in part, to identify documents and information that are responsive to this Request, provide the following: (1) a list of the proposed search terms; (2) a word dictionary or tally list of all the terms that appear in the collection and the frequency with which the terms appear in the collection (both the total number of appearances and the number of documents in which each word appears); (3) a glossary of industry and company

terminology; (4) a description of the search methodology (including the planned use of stem searches and combination (or Boolean) searches); and (5) a description of the applications that will be used to execute the search.

J. *Use a secure and verifiable method of producing native files.* Plaintiffs request that Defendant use the following process for producing native files: (1) Hash the files using the MD5 algorithm. (2) Rename files with a unique document ID (e.g. ABC000001.doc). (3) Verify hash value. (4) Set files to Read Only. (5) Deliver a XML load file that includes fielded data with each volume containing the following information for each file:

   i. Document ID
   ii. Original File Name and path
   iii. Modified filename and path
   iv. MD5 hash value

K. *Document all efforts to deduplicate vertically and horizontally.* Deduplication should occur both vertically within each custodian and horizontally across custodians. Vertical deduplication is crucial with the production of electronic documents from back-up tapes. Horizontal deduplication must be done in a manner to preserve and produce information on blind copy ("bcc") recipients of e-mails and other custodians who have the duplicates that will be eliminated from the production. Provide Plaintiffs with a written description of the method used to deduplicate (including what information is compared and what hash codes are used) and what is considered a duplicate. There can be no deduplication of "loose" electronic documents (e.g., presentation slides located on the custodian's C: drive) against e-mail attachment versions of those same documents; the integrity of any produced e-mail must be maintained except as limited by any claim of privilege. Plaintiffs do not agree to any deduplication of hard-copy documents.

L. *Preserve metadata.* Electronic files are to be produced in a manner so as to preserve all meta-data associated with such files. Notice is hereby given that any attempt to alter or modify such files in connection with production thereof through the use of meta-data scrubber software or similar means will be considered as intentional spoliation of evidence. Where practical, metadata should be extracted and fielded in a production load file.

M. *Deliver production using portable media depending upon production size.* Unless otherwise agreed by counsel following request initiated by counsel for Defendants before the date of response called for herein, productions smaller than 10 gigabytes (GB) should be made using DVD-recordable optical media. Productions larger than 10 GB but smaller than 128 GB should be made using a flash/thumb drive or portable external hard drive. Productions larger than 128 GB should be made using a portable external hard drive. If these storage media are not available to Defendant, Plaintiffs will provide same to Defendants upon request.

N. *Translate all documents into English.* Those documents written in a language other than English must be translated into English; submit the foreign language document, with the English translation attached thereto.

O. *These requests are continuing.* Every Request for Production herein shall be deemed a continuing Request for Production, and Defendant is to supplement its answers promptly if and when defendant obtains responsive documents, which add to or are in any way inconsistent with Defendant's initial production.

## DEFINITIONS

For the purpose of these Requests, the following terms are used as defined immediately below:

1.      The terms "Person," "persons," "people," or "individual" mean any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

2.      The term "Document" or "documents" means all written, recorded, and graphic materials and all electronic data of every kind including electronically stored information in the possession, custody, or control of Defendant, within the full scope of Federal Rule of Procedure 34. The term "documents" includes electronic correspondence, drafts of documents, metadata, embedded, hidden and other bibliographic or historical data describing or relating to documents created, revised, or distributed on computer systems, and all duplicates of documents (whether or not identical) in the files of or in the files maintained on behalf of all directors, officers, managers, or other supervisory employees, duplicates of documents in all other files that are not identical duplicates of the originals, and duplicates of documents the originals of which are not in the possession, custody, or control of the Defendant. The term "documents" includes spreadsheets, as well as underlying cell formulae and other codes. The term "documents" also includes electronic mail messages, audio and video recordings, and other documents and data stored in, or accessible through, computer or other information retrieval systems, such as personal computers, portable computers, workstations, minicomputers, personal data assistants, archival voice storage systems, group and collaborative tools, electronic messaging devices, portable or removable storage media, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of online or offline storage, whether on or off employer premises. Unless otherwise specified, the term "documents" excludes bills of lading, invoices in non-electronic form, purchase orders, customs

declarations, and other similar documents of a purely transactional nature and also excludes architectural plans and engineering blueprints.

3.      "All documents" means every document (as defined above) or electronically stored information known to Defendant and every such document or electronically stored information that can be located or discovered by reasonably diligent efforts.

4.      "Communication" means, without limitation, any oral, written or electronic transmission of information, including but not limited to: (1) any written letter, memorandum, handbill, leaflet, brochure, note, e-mail, telegram, telecopy, facsimile, text message, or other document, including in electronic form; (2) any telephone call by or with you, or between you and two or more persons, or between you and any other person, whether or not such call was by chance or prearranged, formal or informal; and (3) any meeting by or with you, or between you and two or more persons, or between you and any other person, whether or not such contact was by chance or prearranged, formal or informal.

5.      The terms "County" "Defendant," "you," "your," or "yourself" refers to Chatham County, Georgia, the Chatham County Detention Center, Alfred Nevels, Selena Cardona, Teanna Frances-Henderson, Terence Jackson, Don White, Karlos Manning, and Yvette Bethel-Quinney, and shall be deemed to mean each and every legal representative, agent, employee, attorney, accountant, advisor and all other persons acting or purporting to act on behalf of the named Defendants listed in this paragraph or under your/their control to the extent that any of those persons have knowledge of or participated in any of the matters related to the allegations in the Complaint or to any of your defenses.

6.      "Employed" or "employment" means any work or services provided or performed in connection with any direct employment, indirect employment, contract employment, independent

contractor relationship, outsourcing employment, temporary employment and/or staffing services employment.  It also means any volunteer work.

7. "Meeting" and "meetings" mean, unless otherwise specified, any coincidence of presence of two or more persons whether or not such coincidence of presence was by chance or prearranged, formal or informal.

8. "Jail" means the Chatham County Detention Center located at 1050 Carl Griffin Drive, Savannah, GA 31405.

9. "Mr. Creely" refers to Lee Michael Creely, who was booked into the jail on September 3, 2020.

10. "Any," "all," "each" and "every" should be understood in either their most or least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of their scope.

11. "Or" shall be understood to include "and;" and "and" shall be understood to include "or."

12. Terms in the singular shall be deemed to include the plural and terms in the plural shall be deemed to include the singular.

13. The terms "and" and "or" have both conjunctive and disjunctive meanings.

14. The term "relating to" means in whole or in part constituting, containing, concerning, discussing, describing, analyzing, identifying, or stating.

## DOCUMENT REQUESTS

1. All records of incident reports, disciplinary reports, use of force reports, memos or emails relating to Mr. Creely, including but not limited to information reports.

2. All documents, log entries, unit logs or individual officer records relating to cell checks or rounds from April 9, 2018 to September 7, 2020 for all living units on which Mr. Creely was housed.

3. All medical and mental health records for Mr. Creely from April 9, 2018 to September 7, 2020.

4. All information reports relating to Mr. Creely from April 9, 2018 to September 7, 2020.

5. All information reports relating to Mr. Creely's death.

6. All information reports relating to Mr. Creely.

7. All records relating to security staffing at the Jail, by shift, from April 9, 2018 to September 7, 2020.

8. All documentation on the amount of money spent on overtime for security staffing at the jail, per month, at the jail from April 9, 2018 to September 7, 2020.

9. All documents relating to the death of any person detained in the Jail (whether death occurred at the Jail or afterwards, at a hospital), from January 1, 2015 through December 31, 2020.

10. Any administrative review, mortality or morbidity investigation or review, psychological autopsy, or similar, relating to Mr. Creely's death.

11. All copies and drafts of the documents described in No. 10.

12. Any administrative review, mortality or morbidity investigation or review, psychological autopsy, or similar, relating to any detainee death from January 1, 2010 through December 31, 2020.

13. Every index of all policies or procedures in effect at the Jail as of (1) April 9, 2018, (2) September 3, 2020, and (3) at present.

14. Every policy or procedure in effect at the Jail as of (1) April 9, 2018, (2) September 3, 2020, and (3) at present.

15. All grievances and all requests for medical or mental health services or other services from Mr. Creely between April 9, 2018 and September 7, 2020.

16. Documentation of all out of cell time, whether for shower, hall time, recreation, etc., for Mr. Creely during his time in the Jail.

17. All records of any training for Jail staff on dealing with detained people withdrawing from drugs from January 1, 2016 through December 31, 2020.

18. All records of any training for Jail staff on dealing with detained people overdosing on drugs from January 1, 2016 through December 31, 2020.

19. All records of any training for jail staff on dealing with mentally ill inmates from January 1, 2016 through December 31, 2020.

20. Any and all contracts, interagency agreements or other formal arrangements, including with any third parties, to provide medical services and/or mental health services to detainees in the Jail that were in force on (1) April 9, 2018, (2) September 3, 2020, and (3) at present.

21. All reviews, audits, annual reports, technical assistance reports, evaluations, assessments, and/or grand jury reports relating to the Jail or on any major components of the Jail (medical services or mental health services, for example) from January 1, 2016 through December 31, 2020.

22. All unit logs for any unit on which Mr. Creely was housed, from April 9, 2018 to September 7, 2020.

23. All booking and/or intake and classification documents for Mr. Creely for April 9, 2018 to September 7, 2020.

24. All documents relating to which cells and dorms Mr. Creely was housed in from April 9, 2018 to September 7, 2020.

25. The names and booking documents for all people detained on housing areas in which Mr. Creely was placed.

26. Any and all documents relating to or reflecting the organizational structure of the Jail in effect from January 1, 2016, through December 31, 2020, including administration, medical and security positions, chain of command, and relationship and communication between various departments and facilities.

27. Any and all bills for medical service provided to Mr. Creely by an outside hospital, medical provider, or emergency medical service or transport between April 9, 2018 and September 7, 2020.

28. Any and all reports, reviews, audits, investigations of any and all facilities comprising the Jail within the last five years including but not limited to:

    a. All letters of finding issued by the Department of Justice (DOJ);

    b. All reviews, investigations, and/or letters of finding by the Department of Homeland Security;

    c. All reviews, audits, and/or technical assistance reports issued by the National Institute of Corrections (NIC);

    d. All reviews, audits, inspections, and/or correspondence regarding same by the Georgia State Department of Public Safety and Corrections (DOC);

    e. All reviews, audits, inspections, and/or accreditation reports by the National

      Commission on Correctional Health Care (NCCHC);

    f. All reviews, audits, inspections, and/or accreditation reports by the American Correctional Association (ACA);

    g. All inspections, reports, correspondence, and/or citations by the Georgia State Fire Marshal;

    h. All reviews, audits, inspections, and/or accreditation reports by the Medical Association of Georgia;

    i. All reviews, audits, inspections, and/or accreditation reports by any agency or entity.

29. Any and all video footage or photographs taken of Mr. Creely at the Jail.

30. Any and all documents relating to policy, procedure and practice for routing people detained in the Jail to the hospital or any other provider for outside medical care.

31. Any and all locations of video cameras in any and all locations where Mr. Creely was housed, located, and/or was placed in restraints, including dormitories, tiers, interlocks, cells, building lobbies and hallways from April 9, 2018 to September 7, 2020.

Respectfully submitted, this 3rd day of May, 2022.

                                            THE CLAIBORNE FIRM, P.C.

                                            WILLIAM R. CLAIBORNE
                                            Georgia Bar Number: 126363
                                            DAVID J. UTTER
                                            Georgia Bar Number: 723144

410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@claibornefirm.com
david@claibornefirm.com                           **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on counsel of record for Defendants Chatham County, Georgia ("County"), Alfred Nevels, Don White, and Karlos Manning via electronic mail.

This 3rd day of May, 2022.

/s/ David Utter
DAVID J. UTTER