UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JESSICA HODGES, et al. )<br>)<br>Plaintiffs, )<br>) <br>vs. )<br>)<br>CHATHAM COUNTY, GEORGIA, et al. )<br>)<br>Defendants. ) | Case Number: 4:22-cv-00067-WTM-CLR |

**PLAINTIFFS' MOTION TO COMPEL AND MEMORANDUM IN SUPPORT**

NOW INTO COURT, through undersigned counsel, come Plaintiffs, pursuant to Rule 37 of the Federal Rules of Civil Procedure,[1] and respectfully request that this Court order the Defendants Chatham County, Georgia, Don White, and Karlos Manning ("County")[2] to provide documents and permit depositions related to the issues and claims made by Plaintiffs in this case. The documents were created for business purposes, i.e. to administer and oversee contracts between the Defendant CorrectHealth Chatham, LLC[3] ("CorrectHealth"), the County, and Chatham County Sheriff John Wilcher ("Sheriff") to ensure constitutionally adequate health care was provided to people, including Lee Creely, in the Chatham County Detention Center ("Jail"). In addition, the documents consist of facts about CorrectHealth's takeover of health care at the

---

[1] On Dec. 13, 2022, the parties attended a discovery conference before Judge Christopher Ray. The Court permitted Plaintiffs to file motions to compel discussed during the conference on or before Jan. 13, 2023. *R. Doc. 71*. On January 30, 2023, the Court met again with all counsel and reset filing deadlines to permit Plaintiffs to file this motion on or before Feb. 6, 2023. *R. Doc. 87*.

[2] On November 29, 2022, pursuant to stipulation agreed to by all parties, this Court dismissed without prejudice Alfred Nevels, who was originally a named defendant. *R. Doc. 64*.

[3] CorrectHealth Chatham, LLC is wholly controlled by the Defendants CorrectHealth LLC and Carlo Musso, M.D. *See, Exhibit 1* (deposition testimony of Dr. Musso, explaining the corporate structure of his various business entities and his role).

Jail, with a handful of warnings about liability to the County due to CorrectHealth's failure to comply with the terms of the health care contract by providing inadequate staffing, among other shortcomings. They are not written by lawyers and contain no legal advice.

In the alternative, should this Court find any privilege attaches, such privileges for documents already possessed by Plaintiffs have been waived.[4] All but one of the documents have been public for years, and all of the documents were released by the County's lawyers as a result of public records' requests. Any claim of privilege for the documents already possessed by Plaintiffs has been waived.

In support, undersigned counsel states as follows:

## INTRODUCTION AND STATEMENT OF FACTS

This action is a conditions of confinement case against the County and other defendants for their deliberate indifference to Mr. Creely's serious medical needs and systemic failures to comply with the requirements of the United States Constitution at the Jail. *Doc. 8-1*. In early September of 2020, Lee Creely ("Mr. Creely") was a thirty-four (34) year old man with two children when he was arrested for violating his probation. The alleged violation was technical—

---

[4] The documents known to Plaintiffs are all public, having been previously been produced by the County and Sheriff through public records requests made by both Plaintiffs and an international news agency, Reuters. *Infra. pp. 4-6.* Per this Court's Order of Jan. 30, 2023, Plaintiffs provide all of the documents known to them to the Court for an *in camera* inspection. *See, Exhibit 2* (12 reports by independent monitors, provided to the Court and filed simultaneously with a motion to seal). The County's privilege log is missing dates for some of the documents, making it impossible to discern exactly what documents they seek to withhold that are already public. It seems, however, there are at least 16 documents the County seeks to withhold that have not, to Plaintiffs' counsel's knowledge, been made public. *See, Doc. 68-3* (14 documents on the 1st page of the Chatham County Privilege Log titled "Inmate Health Compliance Monitoring Report" and 2 documents on the 3rd page of the log titled "Inmate Mortality Chart" have not been made public pursuant to public records' requests). The first five health care monitoring reports by Community Oriented Correctional Health Services nor Dr. Ray's review of Mr. Creely's death at the Jail are listed in the County's privilege log. *Id.*, pp. 2-3. The County has waived their right to object to the production and use of the unlisted documents in this litigation. *See, Meade v. General Motors, LLC*, 250 F.Supp.3d 1387, 1394-95 (N.D. Ga. 2017) (court may impose as a sanction the waiver of any privilege for failure to list documents on privilege log) (citing *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007)). In addition, the County's privilege log fails to comply with Fed. R. Civ. P. 26(b)(5) because it fails to "describe the nature of the documents" not disclosed "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Meade v. General Motors, LLC*, 250 F.Supp.3d at 1393 (citing Fed. R. Civ. P. 26(b)(5)).

failing to report his change of address—and the underlying conviction was for drugs and other non-violent crimes.

On September 3, 2020, at approximately 12:54 a.m., Mr. Creely entered the Jail and was booked. During his initial health screening he admitted to an extensive history of drug addiction, including current use of Xanax and heroin. Even though staff for CorrectHealth, a private, for-profit medical provider hired by the County, prescribed treatment for withdrawal from both drugs, people who worked at the Jail—including County staff—essentially ignored Mr. Creely as he died in his cell. *Id.*, pp. 18-20.

Generally, Plaintiffs allege that "Mr. Creely died as a result of both explicit and *de facto* policies and practices by the Defendants with responsibility for the health care and security provided to people detained in the Jail." *Id.*, pp. 9-10. In addition, Plaintiffs allege that "the Jail and its health care system are managed and operated in an unconstitutionally dangerous manner, with the health care system prioritizing profit over the health and safety of detainees." *Id*. Finally, Plaintiffs' claim that individual staff at the Jail were deliberately indifferent to Mr. Creely's suffering and that the Defendants established and maintained policies, patterns, and practices that provided inadequate health care to individuals in the Jail. *Id.*, pp. 33-38.

Plaintiffs further allege that the unconstitutional conditions stem from the County's decision in 2016 to hire CorrectHealth, and the County had knowledge of CorrectHealth's failings to deliver health care to people in the Jail within a month after the contract's start date of August 1, 2016. *See, e.g., id.*, p. 21, ¶ 40 (CorrectHealth assumes responsibility for health care at the Jail) and p. 24, ¶ 50 (independent report by Community Oriented Correctional Health Services ("COCHS") identifies serious problems with CorrectHealth's provision of health care on August 28, 2016). According to public reporting, the problems continued unabated until at least 2019.

*See, e.g., Exhibit 3*, Plaintiff's Bates No. 1803-04 (Copy of "Death and politics roil a Georgia jail," Parker, N., Szep, J., and So, L., Reuters, Sept. 4, 2019, noting internal Jail documents from 2019 admitting that the Jail "does not have adequate mental health professionals to deal with the volume of mental health requirements."). Plaintiffs allege that the problems continued through Mr. Creely's booking in September 2020 and that the unconstitutional health care provided to him caused his death. *Doc. 8-1*, pp. 33-36.

Finally, Plaintiffs allege that the unconstitutional health care at the Jail was part of a for-profit scheme by CorrectHealth and Defendant Carlo Musso, M.D. ("Musso"), and that for every "dollar not spent on medicine, supplies, and staff" at the Jail is a dollar of profit to Musso. *Id.*, p. 29, ¶ 67. The COCHS reports are cited throughout Plaintiffs' Complaint, *id.*, pp. 24-27, and they detail numerous facts told to the Sheriff and County officials about CorrectHealth's failures to fulfill its contractual duties, which endangered patient care. *Exhibit 2*, Plaintiff's Bates No. 1216-18. In addition, the COCHS reports provide detail of Musso's direct participation in efforts to conceal the extent of CorrectHealth's failings, including downplaying the full extent of patients in the Jail with mental illness in an effort to reduce the numbers of staff needed. *Id.*, Plaintiff's Bates No. 1233.

The documents the County seeks to shield by invoking attorney-client privilege were produced pursuant to open records requests. *See, Exhibit 3*, Plaintiff's Bates No. 1800 (Reuters article notes it received the "confidential" COCHS reports "through an open records request."). Although not listed on the County's privilege log, the report by Dr. Ray specific to Mr. Creely was produced to counsel for Plaintiffs the same way. *See, Exhibit 4* (affidavit of Kimberly Griffin, paralegal with the Claiborne Firm, attaching open records correspondence with sheriff's counsel,

and redacted Ray report). As noted by Ms. Griffin, the office that processes open records requests to both the County and Sheriff are the offices of undersigned counsel. *Id.*

In addition to these documents losing any privilege by their lawyers' previous disclosure pursuant to Georgia's open records act, it is clear the documents have a clear business purpose and were created to facilitate the County's public duty to adequately monitor public contracts. They were not seeking or receiving legal advice. Under the terms of the contracts with CorrectHealth, it is the County who manages the contracts. *See, Exhibit 5*, Plaintiffs' Bates p. 1345 (contracts between the County, Sheriff, and CorrectHealth). The County assigned assistant county manager Michael Kaigler as the Project Manager. *Id.* The contracts provide that "[a]uthorized representatives of the County may at all reasonable times review and inspect the activities required under" the contract. *Id.*, Plaintiffs' Bates p. 1346.

According to public reports, the County delegated at least some of its responsibility to administer and oversee the CorrectHealth contract to ensure the provision of health care to people detained in the Jail, including Mr. Creely, to COCHS. *See, Exhibit 3*, Plaintiffs' Bates No. 1796 (Reuters notes that COCHS was hired to "scrutinize the county jail's healthcare services after a string of deaths."). As part of their work, COCHS issued eleven (11) written reports, *Exhibit 2*, Plaintiffs' Bates No. 1214-1304, which were released to Reuters via public records request, *Exhibit 3*, Plaintiffs' Bates No. 1800, and made available to the public by Reuters. *Id.*, Plaintiffs' Bates No. 1801. The reports are entirely factual or opinions based on fact, and offer no legal advice or legal opinions. *Exhibit 2*. According to Reuters, around October of 2017, COCHS was fired at the direction of the Sheriff. *Exhibit 3*, Plaintiffs' Bates No. 1802.

According to the County's privilege log, late in the summer of 2018 COCHS was replaced by Dr. Kenneth Ray to help monitor the CorrectHealth contract. *See, e.g.*, *R. Doc. 68-3* (County's

privilege log, beginning with a report by Dr. Ray dated Aug. 14, 2018). The privilege log only claims attorney-client privilege, and no work product privilege, for the documents listed; only lists six (6) of the COCHS reports; and does not claim any privilege for Dr. Ray's September 29, 2020, medical chart review of Mr. Creely's CorrectHealth records. *Id.* Similar to the County attorney's office's production of the COCHS reports to Reuters via Georgia's open records law, Dr. Ray's report on Mr. Creely's death was released by the County attorney's office pursuant to an open records request. *Exhibit 4*.

### The Discovery Requests and Responses

On May 3, 2022, Plaintiffs submitted Requests for Production of Documents to the County. *Exhibit 6*. On June 2, 2022, Defendant submitted their responses. *Exhibit 7*. On October 18, 2022, Plaintiff narrowed one of the requests for documents. *Exhibit 8*. On December 7, 2022, the parties met and conferred, *see Exhibit 9* (Utter email to the County's counsel), and agreed that the requests that form the basis of this motion are based on Plaintiff's 1st Request for Production of Documents, as modified by the parties' communications:

**No. 12:** Any administrative review, mortality or morbidity investigation or review, psychological autopsy, or similar, relating to any detainee death from January 1, 2017, through December 31, 2020.

**No. 21:** All reviews, audits, annual reports, technical assistance reports, evaluations, assessments, and/or grand jury reports relating to the Jail or on any major components of the Jail (medical services or mental health services, for example) from January 1, 2016, through December 31, 2020.

In addition, the County objects to the following 30(b)(6) deposition topics:

- Contract negotiations and budget preparation, including staffing levels, for the contract(s) with Community Oriented Correctional Health Services; and

- Contract negotiations and budget preparations, including staffing levels, for the contract(s) with Dr. Kenneth Ray.

Finally, the County seeks a protective order barring the deposition of Dr. Ray about his work with the County. *R. Doc. 68.*[5] On December 12, 2022, the County produced a privilege log. *R. Doc. 68-3.* The parties met and conferred but were unable to resolve this discovery dispute. *Exhibit 9.* Pursuant to LR26.5, Plaintiffs' counsel certifies that a good faith effort has been made to resolve the dispute before coming to court. *Exhibit 10.*

## LEGAL ARGUMENT

### I.   Standard of Review

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985). "Parties may obtain discovery of 'any nonprivileged matter that is relevant to any party's claim or defense . . . .'" *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Medical Center*, Case No. 6:09–cv–1002–Orl–31TBS, 2012 WL 5415108, at *2 (M.D. Fl. Nov. 6, 2012) (citation omitted). The attorney-client privilege protects confidential communications between the client and the attorney for the purpose of obtaining legal advice, and the "ultimate touchstone for application of the privilege . . . is whether the communication revealed advice from, or a request for advice made to, an attorney in some fashion." *United States v. Davita*, 301 F.R.D. 676, 682 (N.D. Ga. 2014). "The party invoking the attorney-client privilege has [1] the burden of proving that an attorney-client relationship existed and [2] that the particular communications were confidential." *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991).

To be protected by privilege, the "privilege holder must prove the communication was (1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and

---

[5] Even though the request for a protective order is no longer pending, *R. Doc. 72*, at the Dec. 13, 2022, discovery conference counsel for the County indicated they intended to object to Dr. Ray's deposition being taken based on privilege. Plaintiffs file this motion to compel in accordance with the agreements reached at the discovery conference.

understood to be confidential." *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003) (internal quotations omitted) (emphasis in original). "To carry its burden, a party must show 'that the primary purpose of the communication was to relay, request or transmit legal advice.'" *Gibson-Carter v. Rape Crisis Ctr.*, 4:19-cv-122, 2020 WL 2815122, at *9 (S.D. Ga. May 29, 2020) (quoting *United States v. Davita*, 301 F.R.D. 676 at 682). "Neither the existence of an attorney-client relationship nor the mere exchange of information with an attorney make out a presumptive claim." *Covey v. Colonial Pipeline Company*, 336 F.R.D. 514, 519 (N.D. Ala. 2020) (citations omitted); *see also In re Vioxx Products Liab. Litig.*, 501 F. Supp. 2d 789, 799 (E.D. La. 2007) (same); *Meade*, 250 F. Supp. 3d at 1393 ("[O]ne cannot properly claim the protection of the attorney-client privilege by simply copying an attorney on an email.").

The attorney work product doctrine "offers qualified protection for materials that are: (1) a document or a tangible thing, (2) prepared in anticipation of litigation, and (3) by or for a party, or for his representatives." *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011). "The law is clear that if documents are prepared for a business purpose, or for some other non-litigation purpose, they fall outside the protection of the work product doctrine." *Id.* at 641; *see also Meade*, 250 F. Supp. 3d at 1392 ("It is generally recognized that the communication of factual information is not protected by attorney-client privilege. For example, reports reflecting the status of litigation and containing purely factual information are not privileged." (citing numerous federal district court decisions from around the United States)).

Whether a party asserts attorney-client privilege or work-product privilege, the "burden of sustaining a claim of privilege is a '*heavy one*.'" *Gibson-Carter*, 2020 WL 2815122, at *10 (quoting *Bridgewater.*, 286 F.R.D. at 639) (emphasis added). "Plainly, 'the burden is not . . . discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose

meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *Id.*

## II. The COCHS Reports Are Not Shielded by Attorney-Client Privilege[6]

### A. The COCHS Reports Do Not Constitute Confidential Legal Advice under Precedent

#### 1. *The County Clearly Hired COCHS to Monitor the CorrectHealth Contract*

Rather than being a communication seeking legal advice about a particular situation at the Jail, the COCHS reports were created due to its duty to review the provision of health care at the Jail. *See, e.g.,* https://www.savannahnow.com/story/news/2017/03/25/monitors-suggest-3-million-penalties-against-chatham-jail-health-care-provider/13890487007/ (Mar. 25, 2017 news coverage noting COCHS' role as a monitor of the CorrectHealth contract and its recommendation to the County that CorrectHealth be assessed over $3 million in penalties under the contract for failing to provide adequate staffing and other deficiencies) (last visited Feb. 6, 2023). Without the benefit of the contract between COCHS and the County, Plaintiffs are left to rely on information that is publicly available—which clearly notes that the purpose of COCHS' monitoring is to assist the County improve health care at the Jail. *See, e.g.,* https://www.wtoc.com/story/35007234/firm-criticizes-new-chatham-county-jail-health-care-provider/ (COCHS "monitoring health services" at the Jail after being hired "when the county switched health care providers from Corizon Health to CorrectHealth" and praise for Sheriff Wilcher's willingness to heed COCHS' recommendations to improve health care) (last visited Feb. 6, 2023). In addition to monitoring staffing levels, COCHS focused on the development, and lack thereof, of policies and procedures to oversee the entire health care system at the Jail. *Exhibit 2*, Plaintiffs' Bates p. 1261-65. The County's work

---

[6] The County only claims attorney client privilege on six (6) of the eleven (11) COCHS reports. *R. Doc. 68-3*, p. 2.

with COCHS was clearly not done for "the purpose of securing legal advice or assistance." *United States v. Schaltenbrand*, 930 F.2d at 1562.

### 2. The Mere Fact that A Document is Labeled as Privileged Does Not Create Any Privilege

The COCHS reports are watermarked "Preparation for Litigation." *Exhibit 2*, Plaintiffs' Bates No. 1214-1304.  "Simply labeling a document [as privileged] . . . is not 'a sufficient basis for legally presuming or even logically assuming a primary legal purpose.'" *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Medical Center*, 2012 WL 5415108, at *3 (citation omitted); *see also Meade*, 250 F. Supp at 1393-96 (ordering documents produced and privilege waived due to attorney merely asserting privilege without a thorough enough description for the plaintiff and court to review).  In addition, "simply funneling non-privileged information through an attorney does not automatically encase the document in the privilege." *U.S. ex rel. Baklid-Kunz*, 2012 WL 5415108, at *3 (citation omitted).  Regardless of the label, the party asserting privilege must show "irrespective of whether one or more lawyers sent or received the communication, that the communication was confidential and that the primary purpose of the communication was to relay, request or transmit legal advice." *Id.* at *4.

Here, as discussed above, the COCHS documents provided monitors' reports of facts and circumstances in the Jail and were created to review whether CorrectHealth was fulfilling its contractual duties to provide adequate health care. *Supra*, p. 5.  These reviews were compiled by interviewing Jail staff, watching pill call and intake, reviewing policies and staffing assignments, and other factual inquiries.  *Exhibit 2,* Plaintiffs' Bates p. 1261.  These typify factual information not covered by privilege. *See Meade*, 250 F. Supp. 3d at 1392 ("[F]or investigations, communication, and the like that are 'of a nature that the business would ordinarily have conducted in all events,' privilege does not attach." (quoting *Universal City Dev. Partners, Ltd. V. Ride &*

*Show Eng'g Inc.*, 230 F.R.D. 688, 690-91 (M.D. Fla. 2005) (internal citations omitted)); *see also United States v. Freeman*, 619 F.2d 1112, 1119-20 (5th Cir. 1980) ("An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction."). The mere fact that the documents were labeled for litigation does not protect them. The reports are entirely factual, and any opinions are related to the facts on the ground, not legal opinions. *Exhibit 2*, Plaintiffs' Bates No. 1214-1304.

In analogous circumstances, Judge Baker in this district found that a review of facts that was written by an attorney was not privileged. *See Gibson-Carter*, 2020 WL 2815122, at *9-11. There, a former employee sued for racial discrimination and retaliatory firing. *Id*., at *1. Prior to her termination, the defendants hired a law firm who conducted an "independent investigation" into various issues regarding plaintiff's employment. *Id*., at *6-7. An attorney wrote a summary of the law firm's investigation and distributed it to defendants, which was subsequently forwarded to plaintiff. *Id*., at *6-8. Plaintiff included portions of the summary in her Complaint, which the defendants moved to strike as violating attorney-client privilege and as "immaterial and impertinent references to confidential and privileged information." *Id*., at *8.

Rejecting this argument, Judge Baker reasoned "the fact that [the attorney] provided the email and report to Defendants does not necessarily prove that communications were privileged; rather the Court must examine the work performed by [the attorney] and the substance of at-issue documents to determine whether attorney-client privilege applies." *Id*, at *10. After reviewing the contract between the attorney and defendants, Judge Baker stated that the attorney's work "appears to be more akin to personnel or human resources investigation . . . and less akin to advice on legal issues." *Id*. Judge Baker ultimately held that such a document is not privileged. *Id*., at *9-11 (citing *Jackson v. Deen*, 4:12-cv-139, 2013 WL 3863889, at *5 (S.D. Ga. July 25, 2013)

(for the proposition that privilege does not apply where an attorney is employed as more than a legal advisor such as "in oversight and investigatory activities").

The COCHS reports are analogous. They are based on the investigators time at the Jail, interviews with Jail health care staff, and reviews of documents created by health care staff to determine if CorrectHealth was doing its job properly. They contain descriptions of factual incidents. They describe health care staffing, the lack of policies and procedures, various incidents at the Jail, and the impacts those facts had on medical care at the Jail. The COCHS reports are clearly designed to be investigative in nature and provide oversight into the health care operations at the Jail. *Exhibit 2*, Plaintiffs' Bates No. 1214-1304. They were written regardless of litigation and well in advance of the instant case. As discussed above, having lawyers receive them and labels regarding litigation cannot create an automatic shield as the County claims.

> B. The Documents Have Been Part of the Public Domain for Years and Any Privilege Has Been Waived

Disclosure of at least the first COCHS report was reported by media as far back as May of 2017. *See, e.g.*, https://www.savannahnow.com/story/news/crime/2017/05/06/documents-reveal-conflict-between-chatham-county-jail-health-provider/13884334007/ (Savannah Morning News notes that it had "previously reported" COCHS' findings from "the first report of [COCHS'] findings). In 2019, after receiving the reports via public records request from the County and Sheriff's lawyers, Reuters disclosed what Plaintiffs assume to be the totality of the reports to the public. *See, Exhibit 3*, Plaintiffs' Bates No. 1801 (list of COCHS reports on right hand side of page, with hyper links to read and download).

It is the party seeking to assert privilege who must show it exists. *See Bogle*, 332 F.3d at 1358. A party who causes the "publication or release of an otherwise privileged document causes the privilege to lapse." *See Moecker v. Greenspoon, Marder, Hirschfeld, Rafkin, Ross,*

*Berger & Abrams Anton, P.A (In re Lentek Int'l, Inc.)*, Nos. 6:03-bk-08035-KSJ, 6:05-ap-190, 2006 WL 2987001, at *3 (Bankr. M.D. Fla. Sep. 12, 2006).

As noted above, the COCHS reports were provided to Reuters pursuant to an open records request. *Exhibit 3*, Plaintiffs' Bates No. 1800. The pattern and practice within the County attorney's office is for the lawyers and their staff to respond to all open records requests. *Exhibit 4*. If the documents were actually privileged, they would not be subject to disclosure under public records law. Just as it was the County attorneys who responded to Plaintiffs' open records request for Dr. Ray's reports, it is more than likely that the same lawyers defending the County in this litigation provided the COCHS reports to Reuters. As experienced lawyers, they knew or should have known that the documents would be published, thus waiving privilege.

Judge Baker faced a similar set of facts in *Gibson-Carter*. There, the lawyer-produced report was forwarded to the plaintiff by one of her board members. *Gibson-Carter*, at *11. Judge Baker noted that "even if [the attorney]'s email and report were subject to and protected by the attorney-client privilege when they were initially transmitted, the Court finds that such privilege was waived" when the plaintiff's board member forwarded the document to the plaintiff. *Id.* Any privilege the COCHS reports may have had was waived years ago.

### III. The Medical Chart Review by Dr. Kenneth Ray of Lee Creely's Medical Records is Not Shielded by Any Privilege, Nor is His Deposition Regarding Same[7]

Again, the onus is on the party asserting privilege to "prove the communication was (1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and

---

[7] The County does not include the medical chart review of Mr. Creely's records on its privilege log, *R. Doc. 68-3*, and does not object to Plaintiffs' deposition of Dr. Ray related to his review of those records. *R. Doc. 68*. Plaintiffs provide arguments to compel his testimony out of an abundance of caution and to be permitted to proceed with their 30(b)(6) deposition of the County regarding their contracts with COCHS and Dr. Ray, among other topics. In addition, this Court may deem any objections to Plaintiffs' use of Dr. Ray's report to be waived as a result of the insufficient privilege log. *Meade v. General Motors, LLC*, 250 F.Supp.3d at 1394-95.

understood to be confidential." *Bogle*, 332 F.3d at 1358 (emphasis in original). Voluntary release or publication causes a document's privilege to be lost. *See Moecker v. Greenspoon, Marder, Hirschfeld, Rafkin, Ross, Berger & Abrams Anton, P.A (In re Lentek Int'l, Inc.)*, 2006 WL 2987001, at *3; *see also, Harding v. Rosewell*, 22 F.Supp.2d 806, 814, n. 11 (N.D. Ill. 1998) (voluntary disclosure of privileged information waives the privilege).

Given the voluntarily disclosure by the Sheriff's lawyers, who also represent the County in this action, via public records request of Dr. Ray's report, plainly: (1) there is no anticipation that the document or the subjects covered in the report were going to remain confidential; (2) there was no reasonable expectation that they would be understood to be confidential; and (3) assuming *arguendo* either of those prongs were ever met, the Sheriff voluntarily waived them by releasing the documents. With regards to prongs one and two, as argued in Points II.A.1&2, *supra*, such reviews of death are made to evaluate and review medical care, as well as outline future improvement. The language of the report is clear that Dr. Ray is critiquing what went wrong for the otherwise avoidable death of Mr. Creely. *Exhibit 2*, Plaintiffs' Bates No. 463-480. Based on the cases cited above, there is no expectation this report would remain confidential, nor have similar reports in litigation in this very district. *Supra*, pp. 9-12.

With regards to waiver, the party with the privilege possesses the right to either assert or waive that privilege. It is clear that, as with the COCHS reports, the County's attorneys waived any claimed privilege for Dr. Ray's report. *Gibson-Carter*, at *11. The sheriff's lawyers voluntarily provided Dr. Ray's report to a third party—namely the paralegal of undersigned counsel—via Georgia's public records act, thereby vitiating any notion that the report or the contents discussed therein (and those which would be discussed at Dr. Ray's deposition) are privileged. *Arguendo* if privilege ever applied, it surely cannot now. Public record requests cannot

have more power than discovery rights when someone dies. The County waived all privilege with respect to Dr. Ray's report and the topics therein, and Plaintiffs have a right to depose Dr. Ray.

### IV. Work Product Privilege Does Not Apply to the COCHS Reports or the Document Created By Dr. Ray

The first question to be determined is whether the documents were created for a business purpose. "The law is clear that if documents are prepared for a business purpose, or for some other non-litigation purpose, they fall outside the protection of the work product doctrine." *Bridgewater*, 286 F.R.D. at 641. Again, both COCHS and Dr. Ray were hired to assist in the monitoring of the contract with CorrectHealth, an important public service function and business purpose, not related to any pending litigation. *Supra*, pp. 5-6.

If litigation is the "primary motivating purpose behind the creation of the document" then the attorney work product doctrine applies. *U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). In *Davis*, attorneys challenged subpoenas for documents related to their work preparing tax returns and business documents for their client, an accused drug dealer. *U.S. v. Davis*, 636 F.2d at 1032. The lawyers claimed the documents were attorney work product. The Fifth Circuit disagreed, noting "papers generated by an attorney who prepares a tax return are not within the work product privilege simply because there is always a possibility that the IRS might challenge a given return." *Davis*, 636 F.2d at 1040. Plaintiffs allege that at least four (4) people died in the jail under CorrectHealth's watch prior to Mr. Creely's death. *R. Doc. 8-1, p. 30*. How they died and whether CorrectHealth's refusal to adequately staff the jail played a role are important public policy questions and a legitimate business purpose, unrelated to any pending litigation. In addition, Plaintiffs filed their lawsuit over a year and a half after Mr. Creely's death and Dr. Ray's report. *R. Doc. 8-1*. The COCHS reports and documents created by Dr. Ray were not "even colorably prepared in anticipation of this or any other litigation." *Davis*, 636 F.2d at 1040.

### IV. CONCLUSION.

For the reasons stated above, Plaintiffs respectfully seek this Court to enforce the motion to compel in this matter.

Respectfully submitted, this 6th day of February, 2023.

/s/ *David J. Utter*
DAVID J. UTTER
Bar Number: 723144
WILLIAM R. CLAIBORNE
Bar Number: 126363
THE CLAIBORNE FIRM, P.C.
410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com
will@claibornefirm.com

/s/ *Christopher J. Murell*
CHRISTOPHER J. MURELL
Bar Number: 195116
MURELL LAW FIRM
2831 St. Claude Ave.
New Orleans, LA 70117
(504) 717-1297 Telephone
chris@murell.law

Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all counsel of record and filed electronically with the Clerk of Court's CM/ECF system.

This 6th day of February, 2023.

/s/ *William R. Claiborne*
WILLIAM R. CLAIBORNE