UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JESSICA HODGES, et al.            )
                                  )
        Plaintiffs,               )
                                  )        Case Number: 4:22-cv-00067-WTM-CLR
vs.                               )
                                  )
CHATHAM COUNTY, GEORGIA, et al.   )
                                  )
        Defendants.               )

# EXHIBIT 5

SERVICES CONTRACT

BETWEEN

CHATHAM COUNTY, GEORGIA

AND

**CORRECTHEALTH CHATHAM, LLC**
**3384 Peachtree Road, NE, Suite 700**
**Atlanta, GA 30326**

INMATE HEALTH CARE SEVICES
FOR CHATHAM COUNTY DETENTION CENTER
(Annual Contract)
Contract No. 15-0089-1

Board of County Commissioners
Chatham County Courthouse
124 Bull Street
Post Office Box 8161
Savannah, Georgia 31412

Plaintiff Creely- 001305

**DETENTION CENTER HEALTH CARE SERVICES CONTRACT AGREEMENT**
**With**
**CORRECTHEALTH CHATHAM, LLC**

This agreement made and entered in to this _1ST_ day of _SEPTEMBER_, 2016, by and between CorrectHealth Chatham, LLC, hereinafter referred to as "Provider" and the Board of Commissioners of Chatham County, Georgia, both hereinafter referred to as "Client."

## I.    RECITALS

A. The Provider is a qualified health care Provider and Georgia LLC, licensed under the laws of the State of Georgia, engaged in the business of providing qualified health care services and staffing for Clients. The Chatham County Sheriff has the constitutional duty and responsibility to operate the Chatham County Detention Center (CCDC) and to ensure that inmates housing in said facility are provided health care services at a standard of care that meets or exceeds constitutional requirement and provide reasonable needed health care. The Client, therefore, enters in to this agreement for the purposes of ensuring that said inmates are provided such care while incarcerated in the Detention center. The Client desires to retain Provider as an independent contractor to deliver the detention center health care services accordingly, and to provide qualified and competent health care professionals for above stated purposes.

B. Provider hereby agrees to provide qualified health care professionals at adequate staffing levels shown on the included staffing matrix to meet the health care needs of detention center inmates and the detention center health care program and other qualified staff as mutually determined and agreed are needed by the parties after consultation with the Sheriff in accordance with Section III (c) to meet required health care standards of care.

C. Therefore, it is mutually agreed by the parties of this agreement that the Provider will provide services to the Client under the following terms and conditions specifically set forth herein.

## II.    TERM OF AGREEMENT

The term of this agreement shall be for one year terms beginning on August 1, 2016, ("Begin Date") and shall automatically renew for 4 additional consecutive one year terms   unless Client exercises their right to terminate for convenience by providing notice pursuant   to paragraph IX of this agreement. It is also understood that a reasonable implementation transition period is required in this transition to the Provider. Therefore, the current medical Provider will continue provide contracted services until August 1, 2016 which provides     the new Provider sufficient time to implement the contracted levels of services.
Should this Provider begin to provide services earlier than the effective date of the first one year term, the Provider will be compensated on a pro rata basis based on the number of days the services is provided prior to the begin date.

Page 1

Plaintiff Creely- 001306

### III.   PROVIDER FURNISHED SERVICES

A. Client hereby contracts with Provider to provide health care services to inmates in the physical custody and control of the Detention center. Provider enters into this Agreement according to the terms and provisions herein and as set forth Exhibit A. The responsibility of Provider for health care of an inmate commences with the commitment of an inmate to the custody of the DETENTION CENTER. No person shall be accepted in custody unless Provider determines said person is medically stable. Provider shall be responsible to have adequate staffing available to immediately make a medical determination at all times including holidays, nights and weekends. At no time shall Provider fail to adequately staff the intake area.  Provider shall provide health care services for all persons committed to the custody of the DETENTION CENTER from moment of arrival at the facility irrespective of booking process and may elect to use a triage area for screening persons upon arrival at the detention center to determine if the inmate is medically stable for acceptance into the Detention center or not.  Should that person not be medically stable for acceptance, then the arresting agency shall divert that arrestee to a hospital where the inmate will not be considered to be "in the custody of the Detention center." Custody for the purposes of this contract shall begin when the Sheriff accepts the arrestee after a determination of medically stability.

B. The Provider shall provide qualified staff to deliver adequate detention center health care services consistent with Chatham County Sheriff policies, operational procedures, and protocols, and provide health care and in accordance with the appropriate national standards, constitutional requirements, and in compliance with state and federal law and in accordance with the U.S. Constitution. The number of staff in specific designations and staff work hours of health care staff has been determined to be adequate by Provider and in a manner consistent with needs of the detention center health care program and with the intent to comply with healthcare standards customarily provided by a constitutional compliance detention center. These staffing and staff levels of services are outlined in Exhibit B attached hereto, which shall provide services to include medical, dental, mental health, sick call, nursing care, regular physician care, onsite emergency care, behavioral care, medical records retention and completion, pharmacy/prescription supply, and other services required by Exhibit A. Any vacant position listed in Exhibit B for more than 14 days shall trigger the staffing performance guarantees listed in Exhibit C.

C. Upon mutual consent of the parties which shall not unreasonably be withheld, the Client may increase or decrease the staffing requirements as necessary to best meet the medical services needs of the detention center and inmates. Client will do so only after consultation with the Sheriff. If the Sheriff determines staffing levels need to be increased or decreased, then contract shall be amended upon Sheriff's written request to the County.  Both the Client and Provider understand that any increase or decrease in staffing levels could result in an increase or decrease in compensation paid to the Provider as mutually agreed.  Without limiting the proceeding, if either party deems an increase in

Page 2

Plaintiff Creely- 001307

staff necessary to maintain minimum health care within the facility, then that level of care shall be provided during the negotiation phase.

D. Provider understands that all Provider staff working at the detention center may be barred by the Sheriff from entering the detention center if their performance and/or behavior does or could cause risk or harm to the health care program. The Provider will provide a substitute staff member that meets the medical needs of the Detention center and is acceptable to Sheriff as soon as possible.

If the Sheriff or his designee is dissatisfied with any health care personnel provided by Provider hereunder, or by any independent contractor, subcontractor or assignee, Provider, in recognition of the sensitive nature of correctional services, shall, following receipt of written notice from the Sheriff or his designee of the grounds for such dissatisfaction and in consideration of the reasons therefore, exercise its best efforts to resolve the problem. If the problem is not resolved satisfactorily to the Sheriff or his designee, Provider shall immediately remove or shall cause any independent contractor, subcontractor, or assignee to remove the individual about whom the Sheriff has expressed dissatisfaction. Should removal of an individual become necessary, Provider shall provide a replacement as soon as possible under the circumstances. If Sheriff elects to have such an individual removed, Sheriff will notify Provider in writing and Provider will respond in writing to Sheriff within 24 hours specifically including the anticipated time to replace that position so that Sheriff may make an informed decision about appropriate course of action.

E. CLIENT personnel and/or inmates shall not be employed or otherwise engaged by either Provider or CLIENT in the direct rendering of any health care services. Additionally, no employee, agent or deputy of Sheriff shall be employed or otherwise engaged by either Provider or Client in the direct rendering of any health care services.

F. Provider will also participate and assist Sheriff in the development of above said procedures and protocols, as needed to ensure effective and efficient delivery of detention center health services. Provider will also provide necessary assistance, services and management needed to achieve accreditation by the National Commission on Correctional Health Services (NCCHC). Provider will collaborate with Client in the development and reporting of appropriate contract performance measures, and sustaining targeted thresholds for said measures to whomever the Client elects such information be given to for this stated purpose.

G. Provider shall maintain personnel files on-site for all staff that contains current licensures, certifications, resume, records of continuing education, mandatory training. Mandatory training includes: CPR/First Aid, AED, Suicide Prevention Course provided by Client, blood borne pathogen training, correctional orientation training. All staff shall complete mandatory training sufficient to have working knowledge of Provider health care

Page 3

Plaintiff Creely- 001308

procedures and the protocols of Chatham County Detention Center Standard Operating Procedures as relates to providing of health care.

H. The Provider agrees to provide appropriately trained and qualified infectious disease and chronic disease programs. The positions shall  be credentialed at the  RN level at  a minimum.

I. Provider agrees that inmates entering the detention center will be expeditiously triaged upon arrival. Additionally, the Provider agrees to provide sufficient number of RNs to conduct timely and complete detention center intake health screenings on all inmates entering the detention center. Other medically trained professionals may be utilized by Provider to assist the assigned RNs. Should additional RNs be needed during peak time frames, Provider shall staff to that level necessary for demand.  At no time, shall the intake process be staffed without an RN and the support staff contemplated in this paragraph.

J. Provider, in collaboration with Client, shall develop and maintain an appropriate and adequate professional development and ongoing detention center health care training program for Provider's staff. Provider will timely and expeditiously fill vacancies in employment staff to ensure coverage as contemplated by the staffing matrix. Provider will likewise furnish all training materials and standard operating procedure manual to Sheriff for coordination. Provider shall ensure that Sheriff is consulted and assist in developing the appropriate professional development and training necessary for all staff.

K. The Provider shall, in conjunction with this Agreement, provide those medical services requested by the Client from time to time. The Client's request shall not be outside the services promised in the RFQ scope of work. The Sheriff shall provide any additional request to Client in writing before Provider shall administer such services.

L. The Chatham County Sheriff's Office shall provide adequate work space. Client shall provider equipment, computers, electronic health records systems, and supplies required for the delivery of said contracted services. Additionally, the Chatham County Sheriff's Office shall provide sufficient security as needed to accomplish required and contracted responsibilities of the Provider. The Client shall also provide other resources required as mutually agreed.

M. Provider shall provide on-site emergency medical care and obtain arrangements for medical transport, if necessary. Chatham County Sheriff's Office is responsible for  security arrangements during such transport.

N. Provider shall be responsible for all associated hospital costs should an inmate be sent to hospital, other special care facility, or any other outside facility other than the detention center, unless otherwise exempted by a provision of this agreement.

Plaintiff Creely- 001309

O. Provider will provide Client and Chatham County Sheriff's Office cooperation and assistance in responding to all Georgia Open Records Act requests as required by law.

P. Provider shall provide all Tuberculous/ Infectious Disease testing necessary to maintain the standard of health at the Chatham County Detention Center as required by federal law, state law, and the Chatham County Health Department. Provider will ensure that all staff of both Provider, Sheriff and Client where requested, be tested yearly for Tuberculous. Sheriff will provide PPD for testing of employees and deputies of the department though Provider will administer the test.

Q. Provider shall provide all physicals needed to gain employment to those tendered by the Sheriff for prospective employee pending the physical assessment of the candidate.

R. Provider shall keep Chatham County Detention Center in compliance with at NCCHC regulations and maintain compliance with all Medical Association of Georgia regulations. It is the expectation of this Contract that Provider will keep CCDC at all time up to current MAG standards and maintain the facility in a manner in which MAG accreditation remains throughout the pendency of this contract.

S. Provider shall avail Chatham County of all funding sources available to assist with health care cost should any such program become available to County. Such programs as the Affordable Care Act, but not limited to that sole program, are not currently available under Georgia law. Should any change in federal or state law make such funds for indigent care available to DETENTION CENTER or county then Provider agrees to cooperate fully in securing those funds through grant or application process. Provider may provide 340B pricing in accordance with the Client's approved subcontractors at his sole discretion.

T. Penalties for Non-Compliance shall be as outlined in Exhibit C and referenced in the Section III(A) of this agreement.

U. Provider shall utilize Client's license from Centricity the Centricity electronic health records system for creating and maintaining inmate health records. Provider further agrees and acknowledges that all health records established shall be the sole and proprietary of Chatham County and shall in no way be construed as the property of the Provider or any of its staff or employees. Client shall bear the cost of the software, data migration, training (by Centricity Staff), installing, implementing, maintaining, customizing, support, hosting fees, and adapting all necessary parts of Centricity and related systems in alignment with requirements in section III(T) below, and after consultation with quality assessors. This process shall be utilized in accordance with Exhibit D.

Page 5

Plaintiff Creely- 001310

## IV.    LIMITATION AS TO PROVIDER SERVICES

A. Injuries Incurred Prior to Incarceration; Pregnancy. Provider will not be financially responsible for the cost of any medical treatment for health care services provided to any inmate prior to the inmate's commitment into the custody of the DETENTION CENTER. For purposes of this section, commitment is defined as when an individual is deemed medically stable to enter the facility by Provider. Furthermore, Provider is not financially responsible for the cost of services outside the DETENTION CENTER for any medical treatment or health care services provided to medically stabilize any inmate presented at booking by an agency, other than the CLIENT, with a life threatening injury or illness or in immediate need of emergency medical care.

Once it has been determined by intake medical personnel that the inmate has been medically stabilized, and accepted by DETENTION CENTER personnel into the custody of the DETENTION CENTER, Provider will, commencing at that point, then become financially responsible for the cost of medical treatment for health care services regardless of the nature of the illness or injury or whether or not the illness or injury occurred prior or subsequent to the individual's incarceration at the DETENTION CENTER. An inmate shall be considered medically stabilized when the patient's medical condition no longer requires immediate emergency medical care or outside hospitalization, and when any and/or all applicable medical clearances have been provided to the Provider's personnel and transmitted to DETENTION CENTER staff, so that the inmate can reasonably be housed inside the DETENTION CENTER.

It is expressly understood that Provider shall not be responsible for medical costs associated with the medical care of any infants born to inmates. Provider shall provide health care services to inmates up to, through, and after the birth process, but health care services provided to an infant following birth, other than those services that may be delivered in the DETENTION CENTER prior to transport to a hospital, will not be the financial responsibility of Provider. In any event, Provider shall not be responsible for the costs associated with the performing or furnishing of abortions of any kind. Provider shall cooperate fully with any other government agency that is providing health care or placement assistance with such infants to include Department of Family and Children Services or any other state or federally funded program.

B. Inmates outside the Facility. The health care services contracted in the Agreement are intended only for those inmates in the actual physical custody of the DETENTION CENTER. This does not include inmates who are under guard in detention centers or prisons outside of COUNTY unless court ordered. Such inmates are not to be included in the daily population count. No person(s), including those who are in any outside hospitals who are not under guard, shall be the financial responsibility of Provider with respect to the payment or the furnishing of their health care services. All cost for inmates transported

Page 6

Plaintiff Creely- 001311

to hospital or other health care provider after being accepted into custody as medically stable and until such time as they are released from being under guard or are returned to DETENTION CENTER shall be responsibility of Provider.

The cost of medical services provided to inmates who become ill or are injured while on escape status will not be the responsibility of Provider. The cost of medical services provided to inmates who become ill or are injured while on approved work release shall be the responsibility of provider except where the inmate's injury occurred after a point in time when he should have been in the facility. Such coverage shall extend to any injury or illness by an inmate participating in the New Hope Program within the DETENTION CENTER.

Persons in the physical custody of other public safety or other law enforcement/penal jurisdictions at the request of Chatham County Sheriff's Office or by court order are likewise excluded from the population count and are not the responsibility of Provider for the furnishing or payment of health care services.

Persons in federal custody being housed at the DETENTION CENTER pursuant to a valid contract between the Sheriff and the Federal Bureau of Prisons are included in the daily population count and shall be provided health care like every other inmate at the detention center.

C. <u>Elective Medical Care</u>. Provider is not responsible for providing elective medical care to inmates, unless expressly contracted for by the CLIENT. For purposes of the Agreement, "elective medical care" means medical care, which, if not provided, would not cause definite harm to the inmate's well-being. CLIENT must review any referral of inmates for elective medical care prior to provision of such services.

D. The Client shall budget sufficient funds for the adequate program assessment by qualified outside experts to be selected at the sole discretion of the Client. Provider will cooperate fully with the outside experts once identified. All information as to program assistance for qualified experts shall be shared with the Sheriff or his designated staff through the County Attorney's Office.

### V.   COMPENSATION AND BILLING

A. <u>Provider Responsibilities</u>: The Provider shall be responsible for the following in regards to compensation and billing:

1. Provider agrees to provide the services to the Client pursuant to the staffing plan and compensation schedule attached hereto and incorporated herein as "Exhibit B".

Page 7

Plaintiff Creely- 001312

2. <u>Base Compensation & Per Diem Compensation</u>. Client will pay Provider as specified herein. For all years, the contract assumes a maximum inmate population of 1800 inmates. Provider will invoice CLIENT during the month prior to the month of service. CLIENT agrees to pay Provider within thirty (30) days of the invoice. In the event this Agreement should terminate on a date other than the end of a calendar month, compensation to Provider will be prorated accordingly for the shortened month.

3. <u>Per Diem</u>. Provider will charge a per diem rate, as specified in Section IV (14)(a) when the combined daily census is greater than 1,800 inmates at the Detention center.

4. <u>6 month examination</u>. Provider and Client agree that after 6 months, or on or about February 1, 2017, each side will meet with Chatham County Sheriff's Office and any other relevant persons to discuss the delivery of services, quality of care and cost for providing the same. While all parties are bound to the terms of this agreement, the parties further agree that should be cost or quality of care be less or more than expected the terms of this agreement could be renegotiated within thirty (30) days of that meeting.

5. <u>Inmates from Other Jurisdictions</u>. Medical care rendered within the Detention center to inmates from jurisdictions outside Chatham County, and housed in the Detention center will be the responsibility of Provider but as limited by Section IX. Medical care that cannot be rendered within the Detention center will be arranged by Provider and the costs of such care subject to reimbursement by the other jurisdiction or the State of Georgia. In the event that the other jurisdiction reimburses the CLIENT, the CLIENT agrees to reimburse Provider for such care. This Section does not apply to sentenced felons awaiting transfer to State facilities or inmates housed in the DETENTION CENTER on ex parte orders or other probation violations pending in the Recorder's, State, Magistrate, and Superior Courts of Chatham County or any municipal court within Chatham County. Provider may directly bill other counties for onsite professional medical fees, supplies, tests and medications. Provider will forward other bills for offsite healthcare and program support services provided to other jurisdictions housing inmates in the DETENTION CENTER. The per diem rate for inmates contained in this contract shall be utilized for such inmates. CLIENT agrees to assist Provider with these billing activities. Both parties agree to full audit of their procedure upon request of either party.

6. <u>Costs for On-Site and Off-Site Specialty Care (risk to CH)</u>. Provider will manage scheduling, claims processing and accounting for off-site healthcare services. Provider will be financially responsible for the actual costs of these specialty and off-site services, including, but not limited to, hospitalization and off-site emergency services costs, specialty diagnostics and specialty provider fees.

Plaintiff Creely- 001313

7. <u>Change in Standard of Care or Scope in Services</u>. The price referred to in this Agreement reflects the scope of services as outlined herein and the current community standard of care with regard to correctional healthcare services. If there is any change in or modification of the local, national (e.g. NCCHC, MAG) or community standards of care or scope of services, court order, ruling or interpretation, state or federal law or statute or interpretation thereof that results in sustained and material increase in costs (e.g. treatment of Hepatitis C, TB, HIV/AIOS, etc.), coverage of costs related to such changes are not included in this Contract and would need to be negotiated with the CLIENT. Further, if the mission and/or purpose of the CLIENT or the Sheriff's Office changes substantially, the CLIENT agrees to negotiate with Provider in good faith for any necessary change in services. During such negotiations, Provider shall not withhold the necessary care to comply with requirements as outlined in this paragraph.

8. <u>Monthly Statement of Services Rendered</u>. Preparing and submitting a monthly statement that includes key contract expenditures, both staffing and non-staffing incurred within the billing period, and to cooperate with designated Client and Chatham County Sheriff's Office staff. In order to ensure transparency, the statement shall include an itemized detailed list of all costs incurred by Provider for the billing period. Additional details of any expenditure shall be provided by Provider to Client upon request of Client or their representative. Provider shall track what portion of key contract expenditures are consumed or otherwise used for Client's benefit.

9. Provider shall punctually complete and submit all payment forms required by the Client and those prescribed or approved by the United States of America or any subdivision thereof, State of Georgia or any subdivision thereof, Chatham County Finance Department and Chatham County Board of Commissioners prior to any pre or post payment being provided to Provider.

10. The Provider shall make no additional charges to Client's detainees for services rendered during regularly scheduled hours or for services for which the Client has paid the Provider.

11. The Provider understands and agrees that the staffing levels attached to this Contract are to be maintained in accordance with NCCHC and MAG guidelines. Specifications regarding the necessary time off for staff and all other procedures for regulating the employment of health care workers or independent contractors within the facility are in accordance with the Department of Labor.

12. Provider also understands that it shall deduct all appropriate costs for unfilled positions if the position remains unfilled for more than 30 days as determined by contract assessors from each invoice. The Client shall not compensate Provider for unfilled positions or appropriate cost that shall include salaries and related benefits.

Plaintiff Creely- 001314

While this provision is enforceable, the Provider agrees that the staffing levels attached hereto will be maintained and the penalties for failure to do so will be enforced according to RFP response from Provider in Section 2 of that document. This section does not eliminate any other performance guarantees.

13. All personnel furnished by the Provider are considered employees and independent contractors of the Provider and not the employees or agents of Client of Chatham County Sheriff's Office. The Provider will have the sole responsibility of paying the salaries, social security, insurance, other taxes, and all other expenses and employee benefits related to such employees, including personnel issues, of the Provider unless otherwise stated herein.

14. Provider understands that it is responsible for cooperating with contract compliance assessors and program performance assessments by outside qualified professionals selected at the sole discretion of the County. Provider shall release all requested information, documents, data, etc. as requested for this work.  The Provider agrees to fully cooperate with all assessments by qualified experts within the first year of this contract through ongoing chart abstraction and drill down work by a qualified expert.  Client retains to the right to ask for an additional two (2) assessments during the subsequent years of this contract.  All information and reports produced from this work shall be the property of the Client but will be shared with the Provider and Sheriff for the sole purpose of ensuring compliance, quality and cost effective detention center health care services. All information and reports produced from this work shall be the distributed only in the manner and method outlined by the County in writing and shall not otherwise be distributed.  The cost of such contract compliance shall be borne by the County and the County maintains the right to ask for less assessments than are outlined herein upon it sole discretion.

A. <u>Client Responsibilities</u>:

1. Except as otherwise authorized in this agreement, the Client agrees to pay the amount as shown in the Payment Schedule shown below. Client agrees to compensate Provider on a monthly basis, or as otherwise mutually agreed.

**Payment Schedule**
**August 1, 2016 to July 31, 2017**

| | |
|---|---|
| **Total Compensation** | **$6,973,724.56** |
| **Monthly amount** | **$581,143.71** |
| **Per Diem Rate** | **$3.62** |

**August 1, 2017 to July 31, 2018**

| | |
|---|---|
| **Total Compensation** | **$7,148,067.67** |
| **Monthly amount** | **$595,672.31** |
| **Per Diem** | **$3.71** |

Plaintiff Creely- 001315

**August 1, 2018 to July 31, 2019**

|  |  |
|---|---|
| **Total Compensation** | **$7,326,769.37** |
| **Monthly amount** | **$610,564.11** |
| **Per Diem** | **$3.81** |

2. Client shall make payments due hereunder, notwithstanding any other provision in this agreement, shall be paid to the Provider pursuant to the customary and normal procedures for payment of claims by vendors against a county under Georgia Law.

3. The Client shall accept as complete and accurate all statements subject to Client's audit rights outlined herein. The Client may prescribe payment forms to be used or approved by the United States of America or any subdivision thereof, State of Georgia or any subdivision thereof, Chatham County Finance Department, contract compliance officer, and the Chatham County Board of Commissioners prior to any payment being due, all subject to annual funding appropriation by the County fiscal Body.

4. All payments that become due after July 31, 2019 shall be negotiated between the parties no later than December 31, 2018 and an executed document must be agreed upon by the Board of Commissioners by January 30, 2019. A returned, fully executed document must be presented by PROVIDER no later than February 15, 2019. In no case shall the negotiated amount for base compensation for 1800 inmates increase by more than three (3) percent from that of the last contract price listed in Subsection A (1) herein.

## VI.   HIRING AND MANAGING PROVIDER STAFF AND EMPLOYEES

A. The Client acknowledges the need for a close working relationship that exists between the Provider and the staff and employees that the Provider will recruit, employ and retain to meet the conditions of this agreement. The Client also acknowledges that the recruitment, training, supervision, management, administration and maintenance of staff and staffing is the primary responsibility of the Provider but the Client agrees to provide mutually agreed levels of support as needed to ensure program success.

B. Provider understands that all applicants, before working in the detention center, shall successfully complete all selection requirements and processes prior to working in the detention center. At no time shall the Provider authorize its employees to enter and/or work in the detention center without written authorization by the sheriff or his designee. Sheriff may utilize means and methods of back ground checks to include certified polygraph testing and other such investigations to determine if an applicant can be authorized to enter into and work within the detention center.

Page 11

Plaintiff Creely- 001316

C. The Provider herby affirms that all of its employees are properly licensed and credentialed by the State of Georgia in their respective scope of practice and have taken and successfully completed a pre-employment drug screen and other test or screen as may be requested by Sheriff. Provider also affirms that all of its employees have sufficient experience to perform the duties required under this agreement in accordance with NCHCC and MAG standards.

D. The Provider also affirms that all medical and health care providers supplied by Provider shall meet all local, state, and federal laws, rules, and regulations related to personnel supplying medical services and care to inmates of a county detention center.

E. At no time shall the Client unreasonably interfere with, impair, or otherwise inhibit the recruiting or management relationships between the Provider and its employees.

## VII.   **INSURANCE**

A. The Provider shall furnish at its own expense and will maintain in full force and effect at all times during the term of this agreement the following insurance:

1. General Liability Insurance with a 4 million dollar aggregate coverage
2. Medical Malpractice Insurance with coverage of 2 million dollars per occurrence and  a 4 million dollar aggregate coverage.
3. Worker's Compensation Insurance as provided or required by the State of Georgia
4. The Provider shall provide, maintain and keep current a certificate and proof of insurance by filing same with the sheriff of Chatham County or his designee and the Chatham County Finance Department or contract compliance officer.

B. The Provider shall notify the County, and contract compliance staff hired by County, and the Sheriff or his designee of any changes to its insurer, policy limits and all notices of cancellation of any required policy of insurance. All policies of insurance obtained or maintained by the Provider.

## VII.   INDEPENDENT CONTRACTOR

A. This agreement shall not prohibit the Provider from performing services for others and the Provider shall be paid only on the basis of services the Provider actually performs and provides to the Client.

B. It is expressly acknowledged by the parties that the Provider is an "independent contractor" and nothing in this agreement is intended nor shall be construed to create an employer/employee relationship, a joint venture relationship or to allow the Client to exercise control or direction over the Provider's business operations or outside business opportunities or relationships.

Page 12

Plaintiff Creely- 001317

C.  The Provider and its staff and personnel understand that they shall not be treated as an employee of the Client or Sheriff for the purposes of federal taxes, Social Security, unemployment insurance, health insurance or any other withholding pursuant to any law or requirement of any governmental body related to the employees of the Provider or make available any of the benefits afforded to employees of the Client, all of such payments, withholdings and any other benefits, if any, are the sole responsibility of the Provider and the Provider shall indemnify and hold the Client harmless of any and all loss or liability arising with respect to such payments and benefits, if any.

D.  In the event that the state or federal Internal Revenue Service or any other government agency should question or challenge the independent Provider status of the Provider or its employees with respect to the Client, the parties hereby mutually agree that both the Provider and the Client shall have the right to participate in any discussions or negotiations occurring with such agency or agencies, irrespective of whom or by who such discussions or negotiations are initiated. The Provider shall provide all documentations showing the appropriate withholdings have been made and paid to the appropriate governmental agencies upon request of the Client.

## VIII.    COMPLIANCE WITH APPLICABLE STATUTES, ORDINANCES AND REGULATIONS

A.  The Client and the Provider shall operate their respective services at all times in compliance with applicable federal, state, and local laws, rules and regulations, the policies, rules, and professional standards of care, Provider bylaws, applicable standards of NCCHC and MAG, and all currently accepted and approved methods and practices of each area of service. Notwithstanding any unanticipated effect of any provision of the Agreement, neither party will intentionally conduct itself in such a manner as to violate prohibition against fraud and abuse in connection with the Medicare and Medicaid programs (42 USC Sec. 1395 (b) and 1396 (b) or any subsequent revisions or amendments.

B.  The Provider agrees and warrants the medical services and levels thereof provided to the Client will meet and continue to meet all minimum federal and state laws or regulations related to the delivery of medical services and to medical services provided to Detention center inmates.

C.  All health care records and patient information shall be and remain confidential in accordance with HIPAA regulations and ethical standards of patient care. All said information shall be the property of the Client and the Provider and its staff and employees shall each execute confidentiality agreements and comply with all state, federal, and HIPAA laws and regulations concerning or related to the collection, recording, storage, and release of any and all health care records and/or information.

Page 13

Plaintiff Creely- 001318

D.  Equal Opportunity and Affirmative Action. The Provider agrees by the execution of this agreement that in regards to its operations:

1.  No person shall, on the grounds of race, color, national origin or sex, be excluded from participation, be denied the benefits of, or be subject to discrimination.

2.  The principles of equal opportunity in employment of delivery of services are applicable and commits to a policy and practice of nondiscrimination and affirmative action based upon age, military service, ancestry, color, national origin, physical handicap, political affiliation, race, religion, and sex.

3.  The provisions of all Federal Civil Rights laws and the Georgia Civil Rights law as applicable are incorporated by reference as part of this agreement.

4.  Breach of any of the equal opportunity and/or nondiscrimination provisions of the agreement may result in any remedy available to the County in respect to such breach or default.

5.  Where applicable, non-discriminatory clauses and affirmative action clauses shall be made a part of any agreement, contract, or lease between the Consultant and any organization, corporation, subcontractor, or other legal entity that benefits from the funds paid to the Consultant by this agreement.

E.  Information that is the property of Chatham County shall be made available in accordance with the Georgia Open Records Act. The Client recognizes and acknowledges that in some course of performing the services provided hereunder it may have access to certain confidential or proprietary information of the Provider and the Provider's business and computer operations. The Client hereby agrees that it will not; at any time during or after the term of this agreement disclose any such confidential or proprietary information to any person unless required by law upon obtaining the prior written consent of the Provider.

## IX.   EXECUTION AND APPLICABLE LAW

This Contract Agreement has been executed in Georgia and shall be governed in accordance with the laws of the State of Georgia in every respect. In the event a dispute over any term and/or condition herein, the issue shall be first mediated before a mediator selected by agreement of the parties prior to any court proceeding being initiated or filed. If any portion of said Contract is found legally unenforceable, the balance of said Contract shall remain in full force and effect. The parties hereby agree that jurisdiction and Venue of any and all disputes that may arise under this agreement is and shall be in the Superior Court of Chatham County.

## X.   NOTICE REQUIREMENTS

Plaintiff Creely- 001319

Any notices required hereunder many be sent or delivered to the Provider's authorized representative, Carlo Musso, as set forth in Section XIV(C ) . Other normal means of written communication such as certified mail, telegram, fax, in-hand personal delivery, and/or electronic mail (EMAIL) shall also constitute an acceptable method of giving notice or communicating official information. All notices to Chatham County shall be given to both the Sheriff and County Manager, as set forth in Section XIV (C ) below, or the County designated contact.

## XI.    TERMINATION

A.  This agreement shall terminate upon any material breach or default by either party in the performance of any obligation hereunder which is not or cannot be cured within sixty (60) days after written notice to the breaching or defaulting party if the existence of such breach or default

B.  Either party may terminate this Agreement without cause, and at the convenience of either party, by providing written notice served upon the other party as described herein. The Agreement shall terminate ninety (90) days after service of said notice. Should Provider given notice of termination, it shall continue to provide services at the contract level for the ninety (90) day period and shall fully cooperative with Client to transition to a new provider.

C.  Upon termination of this agreement as hereinabove provided, neither party shall have any further obligation hereunder, except of obligations accruing prior to the date of the termination and obligations, promises or covenants contained herein which are expressly made to extend beyond the term of this Agreement including, without limitation to confidentiality of information, indemnities and releases.

## XII.    INDEMNIFICATION

The Provider agrees to protect, defend, indemnify and hold harmless the Client, Sheriff, Chatham County Sheriff's Office employees, Commissioners, officers, agents and employees, on any and all claims, causes of action, costs, attorney fees and any other expenses relating to the medical, mental health and other services provided to the Client by its agents, servants, staff, personnel, or employees. It is agreed that Sheriff and his deputies, agents, servants, staff, personnel, independent contractors or employees shall be responsible for their own acts and/or omissions. Each party is not responsible for the acts and/or omissions of the other party. Each party shall immediately notify the other of any causes of action initiated or commenced by any third party that may relate to the services provided by the Provider to any inmate and the parties further agree to cooperate and assist the other in defending causes of actions related to the services provided herein.

## XIII.    AGENCY INFORMATION

Page 15

Plaintiff Creely- 001320

A. The Provider shall provide and keep current a listing of the name and necessary contact information of all health care providers of the Provider who provide health care services to the Client for the purpose of contacting each if required to provide any information relating to the health care of any inmate.

B. The Provider and its staff, personnel, and employees shall adhere to and be bound by all rules and regulations and policies and procedures of the the Sheriff as relates to its operation of the Chatham County Detention Center and included by not limited to health care services shall keep confidential and secure any and all passwords, security information and protocols related to the security of the Chatham County Detention Center.

C. All staff, personnel, and employees of the Provider shall agree to and be subject to random drug screen and alcohol testing conducted by the Provider in compliance with Georgia's Certified Drug-Free Workplace Program, and shall be subject to criminal background checks by the Client/Chatham County Sheriff's Office before and during any services to the Client. Client retains the right to notify the Provider of any personnel problems or issues that may arise with any Provider staff, personnel, and employee or health care Provider under the Provider's direction and upon such notice the Provider agrees to immediately rectify the problem after consultation with the Client and Chatham County Sheriff's Office and/or replace the Provider employee or staff person with another qualified and acceptable person of the Provider.

## XV. PROVIDER RELATIONSHIP

A. Nothing in this contract shall be deemed to create a partnership or agency relationship between the Provider and the Client. Further, the Provider shall not be responsible for any actions of the employees of the Client. Client shall not be responsible for any actions or services related to or performed by Provider.

B. The Provider shall maintain and provide for the Client's inspection all documents pursuant to law and health care regulations as they pertain to all health care Providers furnished to the Client hereunder.

C. The Provider will assist the Chatham County Sheriff's Office in reviewing all policies and procedures applicable to providing services herein to inmates and shall participate in ongoing quality improvement, quality assurance, and quality management activities. The Provider also agrees to assist Client related to resource utilization and risk management.

## XIV. MISCELLANEOUS

Page 16

Plaintiff Creely- 001321

A. <u>Independent Contractor Status.</u> The parties acknowledge that Provider is an independent contractor engaged to provide health care to Inmates at the DETENTION CENTER under the direction of Provider management. Nothing in this Agreement is intended nor shall be construed to create an agency relationship, an employer• employee relationship, or a joint venture relationship between the parties.

B. <u>Court Appearance by Provider Employees</u>. In the event Provider's personnel are required to devote time with regard to litigation or threatened litigation by or on behalf of CLIENT this shall be part of their service time pursuant to this agreement. CLIENT shall only be responsible for reasonable cost if the litigation or threatened litigation does not involve health care. CLIENT shall be responsible for reasonable costs of substitute personnel to fill positions, which would be vacant due to such court or trial appearance requirements.

C. <u>Notice</u>. Unless otherwise provided herein, all notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally in hand or sent by certified mail, return receipt requested, postage prepaid, and addressed to the appropriate party at the following address or to the other person at any other address as may be designated in writing by the parties:

<div style="margin-left:2em">

(a) CLIENT:      <u>Michael A. Kaigler, Assistant County Manager</u>
<u>P.O. Box 8161</u>
<u>Savannah, GA 31412</u>

(b) Provider:    CorrectHealth Chatham, LLC
<u>ATTN: Carlo A. Musso, M.D.</u>
<u>3384 Peachtree Road, NE, Suite 700</u>
<u>Atlanta, GA 30326</u>

(c) Sheriff:    <u>John Wilcher</u>
<u>1074 Carl Griffin Drive</u>
<u>Savannah, Georgia 31405</u>

</div>

Notices shall be effective upon receipt regardless of the form used.

Plaintiff Creely- 001322

D. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof. No modifications or amendment to this Agreement shall be binding upon the parties unless the same is in writing and signed by the respective parties hereto. All prior negotiations, agreements and understandings with respect to the subject matter of this Agreement are superseded hereby.

E. <u>Amendment.</u> This Agreement may be amended or revised only in writing and signed by all parties.

F. <u>Waiver of Breach.</u> The waiver by either party of a breach or violation of any provision of this Agreement shall not operate *as,* or be constructed to *be,* a waiver of any subsequent breach of the same or other provision hereof.

G. <u>Other contracts and Third-Party Beneficiaries</u>. The parties acknowledge that Provider is neither bound by nor aware of any other existing contracts to which CLIENT is a party and which relate to the providing of medical care to inmates at the DETENTION CENTER. The parties agree that they have not entered into this Agreement for the benefit of any third person or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof.

H. <u>Severability.</u> In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of the Agreement which shall remain in full force and effect and enforceable in accordance with its terms.

I. <u>Cooperation.</u> On and after the date of this Agreement, each party shall, at the request of the other or Chatham County Sheriff's Office, make, execute, deliver or obtain and deliver all instruments and documents and shall do or cause to be done all such other things which either party or Chatham County Sheriff's Office may reasonable require to effectuate the provisions and intentions of this Agreement.

Page 18

J.   <u>Time of Essence</u>. Time is and shall be of the essence of this Agreement.

K.   <u>Authority.</u>   The parties signing this Agreement hereby state that they have the authority to bind the entity on whose behalf they are signing.

L.   <u>Binding Effect.</u>   This Agreement shall be binding upon the parties hereto, their heirs, administrators, executors, successors and assigns.

M.  <u>Cumulative Powers</u>. Except as expressly limited by the terms of this Agreement, all rights, power and privileges conferred hereunder shall be cumulative and not restrictive of those provided at law or in equity.

N.   <u>Governing Law.</u>   This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed according to, the laws of the State of Georgia.

O.   <u>Immunity</u>. There is no provision of this agreement that shall act as a waiver of Client's sovereign immunity or the Sheriff and his deputies immunities, whether official, qualified, 11th amendment or any other immunity granted under state or federal law.

<div align="center">

**XV.    ENTIRE AGREEMENT**

</div>

This Contract contains all of the terms and conditions agreed upon by the parties with respect to the independent contract relationship contained herein and supersedes all prior agreements, arrangements and communications, if any, between the parties concerning the subject matter contained herein whether written or oral.

<div align="center">

[SIGNATURE PAGE FOLLOWS:]

</div>

Plaintiff Creely- 001324

**Chatham County**

By: _____

    Albert Scott, Chairman

    Board of Commissioners

Attest: _____

    Janice E. Bocook, Clerk of Commission

             [SEAL]

Date: _____

Reviewed and approved by:

_____

R. Jonathan Hart

Chatham County Attorney

**CorrectHealth Chatham, LLC**

By: _____

Print Name: CARLO A. MUSSO, MD

Title: PRESIDENT

Date: 9-1-16

Witness:

_____

Print Name: STACY M. SCOTT

Title: CHIEF LEGAL OFFICER

Date: 9-1-16

20

Plaintiff Creely- 001325

**Exhibit A**

# SCOPE OF SERVICES

1. CorrectHealth responds to our healthcare opportunities by bringing efficiency and innovation to the health services management field. With extensive experience in administering service delivery programs for local and state agencies as well as the retail sector, the company blends innovation with seasoned expertise in each of its program areas to provide clients with a unique combination of quality at competitive prices.

   CorrectHealth programs are marked by centralized/regional control, administrative systems at the corporate level and direct interaction with management at the service site level. In administering programs for clients, CorrectHealth draws upon extensive analytic and developmental resources as well as the institutional health care experience of its personnel.

   CorrectHealth operates health programs for correctional institutions; owns and operates urgent care and primary care centers for the retail public; founded and operates a non-profit community• based center for abused women and children; established and operates a foundation for the provision of substance abuse treatment for inmates; is developing long-term care facilities for geriatric & psychiatric patients with chronic medical problems for inmates who are parole eligible but have no place to go and for moderate to severe mental health patients from state mental health agencies; has provided disaster relief healthcare staffing services for the state of Louisiana; and has coordinated the health services operations for the NFL's largest event, the Super Bowl, for the past fifteen years.

2. CorrectHealth will be the sole provider and will coordinate the entire healthcare delivery system for the CCDC. CorrectHealth will be responsible for all medical care, mental healthcare (including psychiatric care), and dental care for the inmates at the detention center. CorrectHealth's responsibility will begin once the inmate is booked into the facility. The CorrectHealth mission is to provide high quality, cost- effective, comprehensive, healthcare inside the walls of correctional facilities. CorrectHealth will establish and maintain a strong relationship with the Detention center administration and the Chatham County Sheriff's office. Standardized reporting mechanisms are in place with all of our facilities and will certainly be maintained at the CCDC. The following services will be provided at the facility:

   a. Intake: a Receiving Screening will be performed on inmates' booking into the CCDC. Our approach includes the Health Appraisal (H&P) also being competed in Intake. This unique approach allows us to be more proactive in the healthcare delivery system and responsive to the inmate's needs. Please see a more detailed discussion of the benefits of this approval in Section F, Staffing Methodology, below. See our Intake Screening Form and Health History in Tab V.
   b. Transfer Screenings
   c. Sick Call

21

Plaintiff Creely- 001326

d.   Chronic Care Clinic

e.   Communicable/infectious disease: CorrectHealth will provide appropriately trained and qualified personnel to manage our infectious disease and chronic care disease programs. These positions will be staffed at the RN level (see Quality Control Plan).

f.   Schedule and unscheduled off-site services: CorrectHealth operates a state-of-the-art system that coordinates and tracks and validates specialty care, consultations, procedures and emergency room visits.

g.   CorrectHealth will arrange emergency visits, care, orders, records and discharge summaries.

h.   Infirmary Services: CorrectHealth operates infirmary services that meet and exceed national standards.

i.   Medication Services: CorrectHealth plans to partner with the local pharmacy Quick Rx.

j.   Ancillary Diagnostic Services: CorrectHealth will utilize various diagnostic services to complete necessary functions.

k.   Health Education: CorrectHealth provides health education to not only inmates, but Detention center staff, and healthcare staff as well.

l.   Dental Services: CorrectHealth will utilize Coastal Health Solutions/Lester Jackson DDS to provide dental services.

m.   Medical Discharge Planning: CorrectHealth Utilizes discharge practices that conform to national standards.

n.   Mental Health/Psychiatric Services-The CorrectHealth Mental Health Plan includes suicide prevention, intake screening, primary care, chronic disease management, medications, crisis intervention, individual and group treatment, treatment planning, discharge planning, and community collaborations with Gateway Behavioral Health (see Mental Health Plan).

o.   Staff credentialing and training: the maintenance of professional licensing and certifications will be maintained.

p.   All staff will be properly credentialed and licensed and perform duties within their scope of practice.

q.   CorrectHealth will work with the county to fully implement an electronic health record management system.

r.   CorrectHealth utilizes a continuous quality improvement and management program that meets accreditation standards.

s.   CorrectHealth will work with the county to fully implement complete medical records management system to include electronic health record, and work with the health information exchange obligations to include routine healthcare and health administration, data and information, quality performance reports, mortality reviews. All inmate deaths will be reviewed by an outside qualified healthcare professional.

t.   CorrectHealth has a proven track record to operate comprehensive healthcare delivery systems that collaborate with all aspects of inmate care.

u.   Emergency Response, Drills and Management: CorrectHealth healthcare professionals will respond, aid and assist on the campus of the CCDC. Routine drills for emergency response and disaster will be conducted to meet accreditation standards.

3. **Minimum Qualifications**

CorrectHealth meets all of the minimum Qualifications and provides no exceptions.

22

Plaintiff Creely- 001327

4.      CorrectHealth has gained significant expertise in the provision of inmate healthcare in the last fifteen (15) years, allowing us to effectively partner with our clients. At the Company level, we have over 200 combined years of experience in health care management, corrections and provider services.

CorrectHealth has grown from managing the healthcare in a single facility to the oversight of correctional healthcare for nearly 15,000 Inmates in 42 facilities in the Southeast. CorrectHealth is the largest, private provider  of correctional healthcare services in the States of Georgia and Louisiana. These facilities range in average daily populations from 40 to over 1000.  The services provided include medical, dental, mental health, personnel, pharmaceuticals, telehealth, specialty care, ancillary on-site services, materials and equipment. Our experience permits us to customize a  correctional healthcare program  that fits best with  the  operational needs of the CCDC, while providing  healthcare  services that adhere to nationally  recognized standards and comply with all constitutional rights to healthcare that are afforded to incarcerated individuals.

CorrectHealth has been providing comprehensive healthcare to detention centers and prisons for the last 15      years and serves populations from 40 to 3500.

b.      CorrectHealth  has significant  experience  obtaining  and maintaining  national and State accreditations  from (NCCHC) the  National Commission  on Correctional  Healthcare and (MAG) Medical Association of Georgia. We have achieved accreditation for 100% of our clients that have chosen to do so and have never lost on accreditation.

c.      CorrectHealth's standard operating procedures meet and exceed the standards set forth by the National Commission on Correctional Healthcare and the Medical Association of Georgia.

d.      Our Executive Medical Director has not only completed a residency in family practice but is also a board certified family practice physician.  Our Medical Director for CCDC will also be Board Certified.

e.      with the CorrectHealth corporate office being located in the State of Georgia our corporate leaders and clinical services team have experience with short startups.  Please see our transition plan located in Tab VI.  our team of clinical professionals  are not  only available to assist during transitions  but  are able to  come to  aid at any time  of need, for example accreditation surveys, disaster and emergency drills, real-life disasters, transitions etc.

f.      Stacy Blackman, our Chief Legal Officer administers a proactive approach to inmate litigation and risk management. Our systems and process have proven very successful.

g.      CorrectHealth has a broad experience on custom designing healthcare plans for correctional facilities. Being led by strong clinical leaders CorrectHealth gets it when it comes to matching the best uses of clinical systems and services with stewardship of costs and expenses. Our unique approach to clinical processes have proven to be very efficient and economical.

The CorrectHealth staffing plan will:

23

Plaintiff Creely- 001328

1. Ensure consistent constitutionally adequate levels of health assessment and care including right to treatment of serious medical needs; right to access medical care; and right to professional medical judgment.
2. Ensure consistent compliance with the federal Constitutional Rights for Institutionalized Persons Act (CRIPA), American Disabilities Act (ADA) and Prison Rape Elimination Act (PREA).

3. Ensure adequate program administrative and supervisory oversight

4. Ensure that no licensed or certified staff work beyond their respective scope of practice

5. Mitigate real and potential civil liability

6. Ensure timely and efficacious access to and levels of qualified health care services for the inmate population (volume and medical need)

7. Facilitate successful MAG accreditation reviews

The following is the CorrectHealth proposed staffing plan:

## 5. Healthcare Plan

CorrectHealth will implement a written health care plan with clear objectives, policies, procedures, and will complete an annual evaluation of compliance. The healthcare program will meet and exceed the standards established by the National Commission on Correctional Healthcare. Providing all documentation is current from the previous vendor CorrectHealth will make every effort to obtain accreditation by (NCCHC) the National Commission on Correctional Healthcare and (MAG) the Medical Association of Georgia.

A.   CorrectHealth will maintain an open and cooperative relationship with the Detention center administration, staff and Sheriff's office.

B.   CorrectHealth will provide a comprehensive program for continuing staff education to include cross training with custody staff.

C.   CorrectHealth will maintain complete and accurate records of care, healthcare statistics will be analyzed on a regular basis.

D.   CorrectHealth will operate the healthcare program in a humane manner with respect to the inmates' right to basic healthcare services.

E.   CorrectHealth will implement a site-specific emergency response plan, staff will be educated, trained and drilled on how to execute the ERP.

## 6. Inmate Custody and Security

CorrectHealth is aware the primary responsibility for inmate custody and security rests with the staff of the Chatham County Sheriff's office, and we are also aware that all matters pertaining to medical and dental treatment and care of inmates belongs to the medical provider. CorrectHealth pledges to work hand-in-hand with the Detention center staff and administration to provide a seamless operation.

## 7. Standards

24

Plaintiff Creely- 001329

The healthcare delivery system will conform to the state standards for medical services that are provided in correctional institutions as established by the Department of Corrections and other appropriate statements orders, in addition the healthcare delivery system will conform to the standards of will render emergency care at any location on the Chatham County sheriffs detention Center property services in detention centers established by the National Commission on Correctional Healthcare.

**8. Segregated Inmates**
CorrectHealth will render emergency care throughout the CCDC property. With proper security CorrectHealth will also examine and treat any inmate in segregation or otherwise unable to attend sick call in the cell of said inmate.

**9. Security Assistance**
CorrectHealth is aware that the CCDC is responsible for custody and security of the inmates at all times, however staff will assist and cooperate with Detention center staff and communicate any security risks or concerns.

**10. Policies and Procedures**
CorrectHealth will work along with the CCDC, Detention center administration and staff to educate and enforce all relevant policies of the Chatham County Sheriff's Department and CCDC. CorrectHealth has specific policies and procedures in place for the following functions:
- A. Drug and syringe security.
- B. Alcohol and drug medical detoxification.
- C. The care and treatment of inmates with special medical needs, including but not limited to, individuals with hepatitis, epilepsy, physical handicaps, those infected with the human immunodeficiency virus (HIV) and those with any other disease that can be sexually transmitted.
- D. Suicide prevention.
- E. The use of physical restraints.
- F. Care and treatment of individuals suffering from any mental illness, disease or injury, including, but not limited to, those inmates presenting a danger to themselves or others.

**11. Emergency Response Plan/Emergency Preparedness**
- A. CorrectHealth will provide one mass disaster recovery drill annually so that over a three year period all shifts have participated.
- B. CorrectHealth will perform a man down drill annually on each shift.
- C. A critique of the mass disaster recovery drill and the man down drill will be reviewed in staff meetings and also provided to custody staff.
- D. CorrectHealth will provide written policies and procedures for drills to the healthcare and custody staff and will coordinate and involve all in the drill exercise process.

CorrectHealth is experienced in managing staff and operations in multiple sites simultaneously for emergency and disaster relief. CorrectHealth also has significant experience in responding to and managing emergency medical teams during natural disasters. CorrectHealth has developed its own disaster response team to provide personnel, supplies, medications and other resources in case of a catastrophic event. We have responded to natural and man-made disasters in Georgia and in Louisiana

25

Plaintiff Creely- 001330

such as bomb threats, hurricanes, tornadoes, and floods.     We currently employ qualified healthcare professionals and consequently, have access to a large number of staff with expertise in all aspects of healthcare.

| | |
|---|---|
| • Licensed Physicians | • Licensed Behavioral Health Nurses |
| • Licensed Physician Assistants | • Licensed Behavioral Health Aids |
| • Licensed Nurse Practitioners | • Respiratory Care Therapists |
| • Licensed RNs and LPNs | • Social Workers and Counselors |
| • Licensed Paramedics | • Clerical and Administrative Staff |
| • Certified Nurse Aides | • Staffing Specialists |

With our corporate headquarters is located in Georgia, and a strong correctional healthcare footprint all over the state it is possible for us to respond immediately to the Chatham County Detention Center. This sets CorrectHealth apart from the other correctional healthcare companies.

CorrectHealth has practiced and activated teams needed for varies responses, coordinating all logistics for the Teams, including, but not limited to, training, transportation, supplies, equipment,  lodging and subsistence. After the catastrophic devastation caused by Hurricane Katrina in 2005, CorrectHealth was called in to emergently  assume responsibility for the healthcare of the inmates of Jefferson Parish and Plaquemines Parish in Louisiana.  During this experience, we were able to hone our Disaster Plan and implement additional contingencies not previously considered.  The result is that we now have a Comprehensive Disaster Plan that includes extensive logistical plans for disasters, including evacuations and healthcare relief efforts, we continue to provide these services today. With the Chatham County Detention Center being part of a coastal city our experience with operations, resources, cooperation and logistics responding to a Hurricanes is a tremendous benefit to Chatham County.

| | |
|---|---|
| • Communications system | • Transfer of injured to hospital |
| • Recall of key staff to the site | • Evacuation procedures to be determined |
| • Assignment of health care staff | in collaboration with Security personnel |
| • Establishment of a triage system | • A back-up plan |
| • Health records - identification of the | • Use of emergency equipment and supplies injured |
| • Ambulance services/EMS system | • Regular practice drills |

**General Requirements for All Team Members**. CorrectHealth  provides Training of  basic disaster skills, National  Incident  Management  System  (NIMS)-Incident  Command  Structure  (ICS-100),  and current American Heart Association approved  CPR. All Team members are immuno-competent at the time of deployment.

Our Emergency Response Plan provides contingencies for all of the following natural and manmade disaster scenarios:

| | |
|---|---|
| • Snow | • Hurricane |
| • Rain | • Earthquake |
| • Flood | • Terrorist Attack |
| • Land Slide | • Lack of Fuel |
| • Fire | • Chemical Spill |
| • Tornado | • Industrial Disaster |

26

Plaintiff Creely- 001331

CorrectHealth will identify the need for goods and services and will coordinate all contingencies through current vendors and the National Strategic Stockpile if needed. CorrectHealth stands ready to assist any of our facilities and keep operations running smooth and efficiently.

**12. Third Party Reimbursement**

CorrectHealth understands it may seek reimbursement for services provided under this contract from any available third party including the State of Georgia, any County of the state of Georgia, Blue Cross and/or Blue Shield. CorrectHealth understands the administration of the Chatham County Sheriff will cooperate in these efforts and CorrectHealth will share their plan for seeking Reimbursement and inform of the impact on the County.

**13.**    Healthcare services will comply with national and State accreditation standards, (NCCHC) the National Commission on Correctional Healthcare and (MAG) the Medical Association of Georgia.

**14.**    Healthcare services will be provided in full compliance with HIPPA and/or the most current privacy protection practices.

**15.**    CorrectHealth will recruit, interview, hire, train and supervise all health care staff. Such health care staff will be adequate to meet the conditions and specifications of this contract all medical staff providing services under this contract will be licensed to practice in the State of Georgia. At a minimum, a full-time, on-site health services administrator shall be provided who shall have general responsibility for the successful delivery of healthcare system for the CCDC, pursuant to this contract.

**16.**    CorrectHealth will recruit, interview and hire a Board certified or Board eligible psychiatrists to provide mental health services to inmates of the CCDC the services required of the selected psychiatrist will include:

**17.**    Psychiatrist along with the CorrectHealth mental health team will assist in developing and implementing policies which ensure appropriate comprehensive mental health care in compliance with all applicable State and Federal laws concerning such care. The team also developed and be responsible for all standing mental health care orders.

**18.**    Psychiatrist will provide comprehensive mental health care on-site and via tele mental psychiatry, to diagnosis, treat, and prescription of appropriate medications. The visit shall be as long as necessary to provide proper mental health care to those inmates in need of treatment.

**19.**    Psychiatrist will be on call as required to provide emergency treatment of inmates at the CCDC On a 24 hour basis.

**20.**    Our mental health team will perform the necessary mental health care that will enable the detention Center to maintain MAG and NCCHC accreditation.

**21.**    Psychiatrist shall perform his services to the standards of the community.

**22.**    Psychiatrist will perform all duties, treatment, care and supervision of his capacity as detention Center Psychiatrist as an independent contractor and not as an employee of Chatham County Georgia.

**23.**    Psychiatrist will provide a prognostic consultation including individual assessment and treatment as may be indicated.

**24.**    CorrectHealth in concert with the psychiatrist, mental health services evaluation of the mental health section.

27

Plaintiff Creely- 001332

**25.**  The Mental Health Team will provide diagnosis or referrals to State Mental Health facilities for those inmates requiring more extensive treatment.

**26.**  Our Mental Health Team will complete training in security procedures relevant to a detention Center environment.

**27.**  Mental Health will prescribe medication and/or other treatment as may be indicated.

**28.**  The Mental Health Team will participate in detention Center staff meetings as requested by Sheriff.

**29.**  The Mental Health Team will coordinate and collaborate with the Medical Director, Director of Nursing, and Health Services Administrator.

**30.**  The Mental Health Team will advise the detention Center administrators of any potential situation which could place inmates and staff in jeopardy.

**31.**  CorrectHealth will furnish copies of licenses and certifications of all medical staff members assigned to the Detention Center at the time the staff member is assigned. Staff members will be assigned to duties that conform to their scope of practice. All employees will have completed a pre-employment drug screen and will be susceptible to random drug screens throughout their employment. CorrectHealth affirms that all staff members will have sufficient qualifications and experience to perform the duties required under this agreement. CorrectHealth will affirm that all medical and health care providers supplied by Provider shall meet all local, state, and federal laws, rules, and regulations related to personnel.

**32.**  A Receiving Screening will be conducted on all new commitments to the CCDC before the inmate enters the general population. The screening will be conducted by a qualified medical professional. CorrectHealth agrees to furnish 24 hour (RN) Registered Nurse coverage on the intake unit. The Receiving Screening shall include:

**33.**  Documentation of current illness and health problems, including medications taken, and special health requirement. Receiving screening shall include the indemnification of prior mental health and substance abuse problems, prior treatments received, prescribed medications, suicidal tendencies, violent or disruptive behavior and possible need for further referral. Following this initial determination of need, the inmates may be referred to the mental health staff as clinically Appropriate;

**34.**  Behavioral observations, including state of consciousness, mental status, and whether the inmate is under the influence of alcohol or drugs;

**35.**  Notation of body deformities, trauma markings, bruises, ease of movement, etc.

**36.**  Conditions of skin including trauma markings, bruises, lesions, rashes, and needle marks or other indications of drug abuse should be noted.

**37.**  A standard form will be used for purposes of recording the information of the receiving screening and will be included in the health record of the inmate and;

**38.**  Referral of the inmate for special housing, emergency health services, or additional medical specialties will be made as appropriate.

28

Plaintiff Creely- 001333

CorrectHealth proposes the completion of a history and physical prior to transfer to the general population. This process has proven to be very successful and proactive as part of the healthcare delivery system.

**39.** CorrectHealth will perform a comprehensive health assessment on any inmate confined at the CCDC while in Intake and before transfer to general population. Such assessment shall be performed by a qualified healthcare professional at a minimum the comprehensive health assessment shall include:

**40.** Review of the Receiving Screening results by the Program Administrator or responsible physician;

**41.** Additional data necessary to complete a standard history and physical;

**42.** Tuberculosis and venereal disease testing;

**43.** Screening tests for tuberculosis, venereal disease and Human Immunodeficiency Virus (HIV), as well as urinalysis will be performed, as clinically indicated. Screening tests for HIV will be conducted when deemed necessary by the contract physician

**44.** Additional lab work as directed by the physician for particular medical or health problems;

**45.** Additional tests as required, based on the original screening tests;

**46.** Height, weight, pulse, blood pressure and temperature;

**47** The health assessment of females will also include:
   A. Inquiry about menstrual cycle and unusual bleeding, the current use of contraceptive, medications, the presence of an IUD, breast masses and nipple discharge, and possible pregnancy;
   B. Any abnormal results of the Health Assessment shall be reviewed by a physician for appropriate disposition.

**49.** Documentation of mental health concerns and behavior observations.

**50.** A CorrectHealth physician will perform employment physicals on any new employees of the CCDC as requested by the administration.

**51.** CorrectHealth will administer a two-step PPD test on all Sheriff Office employees on an annual basis. CorrectHealth staff will also be responsible for administering the test and reading the results. CorrectHealth will indicate the per employee cost for this in Step Two with their cost proposal.

**52.** CorrectHealth will identify the need, schedule, coordinate and pay for all non-emergency and emergency medical care rendered to inmates inside or outside the CCDC. CorrectHealth agrees to administer emergency medical care at the CCDC to any employee or visitor of the CCDC who requires such care.

29

Plaintiff Creely- 001334

53.   CorrectHealth will identify the need, schedule, coordinate and pay for any inpatient hospitalization of any inmate of the CCDC, subject to the defined catastrophic limits, if applicable. This will include all institutional charges, physician charges and any and all other additional charges. This also includes responsibility for making emergency arrangements for ambulance service to the inpatient facility and reimbursement to the local ambulance organization for the services provided. CorrectHealth will provide cap on their catastrophic insurance coverage per individual and in aggregate. Fee proposals in Step 2 will consider the cost to Chatham County with and without catastrophic coverage.

Note: CorrectHealth has experience with and is prepared to provide coverage for total catastrophic hospitalization risk, partial or aggregate risk, or risk capped on a per patient basis. Further, if provided claims data from Chatham County, we are willing to quote pre-incarceration risk.

54.   CorrectHealth will identify the need, schedule, coordinate and pay for all physician services rendered to inmates inside or outside the CCDC. At a minimum, we will also identify a "responsible physician" who shall conduct sick call and generally provide such care as is available in the community. The "responsible physician" or other covering physician shall be on call seven (7) days per week, twenty-four (24) hours per day for emergency situations. Please see our Request for Medical Services Policy and Procedure in **Tab V.**

55.   CorrectHealth will identify the need, schedule, coordinate and pay for all supporting diagnostic examinations, both inside and outside the CCDC. CorrectHealth will also provide and pay for all laboratory services, as indicated.

56.   CorrectHealth will provide the necessary follow-up for health problems identified by any of the screening tests or laboratory tests. This would include inpatient or outpatient hospitalization, appropriate monitoring and prescription of appropriate medications, consultations with specialty physicians, etc.

57.   CorrectHealth will identify the need, schedule, coordinate and pay for the services of an Optometrist, as needed. CorrectHealth will provide any inmate with one pair of ordinary glasses if prescribed.

58.   CorrectHealth will provide a dental program for the entire inmate population. The program shall provide for basic dental services including extraction, fillings and oral hygiene. Basic dental care service is available 20 hours per week. Emergency dental services shall be available on a 24- hour a day basis. Dental screening shall be given to all inmates within fourteen (14) calendar days of his or her admission to the CCDC. A dental screening shall include charting decayed, missing and filled teeth, and taking a dental history of the inmate. A dental record shall be maintained as part of the medical record of the inmate. Within ninety (90) calendar days of admission, a dental examination shall be performed by a Dentist. Annual dental examinations shall be performed on each inmate.

59.   Chatham County may consider a separate contract for pharmaceuticals. In step 2, cost proposals shall be requested with and without a pharmaceutical delivery system. CorrectHealth Will be capable of providing a total pharmaceutical system for the CCDC beginning with the physicians prescribing of medication, the filling of the prescription, the dispensing and administration of medication, and the necessary record keeping. The Provider shall be responsible for the costs of

39

Plaintiff Creely- 001335

all drugs prescribed by the provider's physicians and dentists. Pharmaceutical system shall include prescription medications and over-the counter medications. All prescription medications shall be prescribed by the responsible physician or dentist and shall be administered by licensed medical staff.

60. CorrectHealth will provide a medical detoxification program for drug and/or alcohol addicted inmates, which program shall be administered only on CCDC property.

61. CorrectHealth will provide and pay for all non-capital equipment and supplies used in the health care delivery system administered under this contract.

62. CorrectHealth will maintain complete and accurate medical and dental records. The current Provider provides electronic maintenance of medical records utilizing "Catalyst" software, or any Electronic Medical Record of choosing by Chatham County.         At the end of the contract, CorrectHealth understands the obligation to provide an offline copy of all data related to the inmates of the County. CorrectHealth will account for the electronic maintenance of medical records in the proposal and all costs associated with transferring data. The CCDC shall have access to these records. The CorrectHealth Legal Team will work with the County Attorney to resolve any Medical associated legal matters.

63. CorrectHealth will provide a consultation service to Chatham County Sheriff's Office on any and all aspects of the health care delivery system at the CCDC including evaluations and recommendations concerning new programs, architectural plans, staffing patterns for new facilities, alternate pharmaceutical and other systems, and on any other matter relating to this contract upon which the Chatham County Sheriff's Office seeks the advice4 and counsel of the Provider.

64. CorrectHealth will insure that appropriate staff is available to provide the health care services as defined in this proposal. At a minimum, this includes screening of all newly admitted inmates, 24 hour coverage in the intake, medical unit and infirmary, and 40 hour per week nursing coverage in all inmate housing units in the Detention Center.

65. CorrectHealth will describe the impact of the Affordable Care Act and any other recent legislation on your costs and how it impacts inmate care. Federal law 42 CFR 435.1009 generally prohibits claiming federal Medicaid funds, commonly referred to as Federal Financial Participation (FFP) for health care services provided to inmates residing in correctional facilities. However, this federal prohibition does not apply to the time period the individual is admitted to a medical institution, provided that stay is for no less than a 24-hour period, or expected to be for a 24-hour period.

Utilizing Medicaid benefits to cover an eligible inmate's hospital stay allows facilities to shift a portion of the cost of care to federal dollars rather than the limited state dollar. Under CMS eligibility rules, inmates who are age (65) or older, blind, disabled or pregnant, would meet technical eligibility requirements and be potentially eligible for Medicaid coverage of their inpatient acute care.

The Affordable Care Act has provided states with the option to create a new coverage group for childless adults. If Georgia elects to implement this option, it is feasible to assume most all inmates would be eligible for Medicaid coverage if inpatient acute care increases greatly.

Even without expansion this is a pathway ready for exploring. States have the option and have been

31

Plaintiff Creely- 001336

encouraged to suspend coverage for a Medicaid recipient when they enter an ineligible facility; unfortunately many eligibility systems have not been advanced enough to suspend coverage. In addition, the federal mandate requiring eligibility be re-determined annually has historically made this option unappealing to states, as it increased the workload of front line eligibility workers.

The Affordable Care Act has provided states with funding to build more innovative eligibility systems, and mandated the use of a simplified application process that will rely, to the maximum extent possible, on electronic data matches. The rule further requires states to utilize these online matches for the annual renewal period. Barriers that have historically created obstacles to the maximization of this path are being removed by automation. CorrectHealth is eager to partner with Chatham County Detention Center to begin a work group with the Department for Medicaid
Service to identify the most efficient, automated method for maximizing federal dollars.

**66.** CorrectHealth will utilize telehealth to its full advantage. CorrectHealth has pioneered a state of the art telemedicine system within correctional facilities. Our correctional facilities are now realizing the benefit of an expanded healthcare delivery system that includes telehealth services more than the tele-psychiatry that most companies offer. <u>60% of our facilities are now conducting live, real-time clinical consults with specialty physicians conducting sick call, chronic care clinics and follow- up consults that have historically required off-site visits</u>. Telehealth not only reduces the security costs of transporting prisoners to offsite providers, it also eliminates the need for providers to set up their offices with separate entrances and treatment areas to segregate prisoners from the provider's general patient population. This often causes providers to opt out of treating prisoners.

32

Plaintiff Creely- 001337

**EXHIBIT B – STAFFING MATRIX**

| Chatham County Detention Center – Staffing Matrix | | |
|---|---|---|
| Personnel | FTE | Hrs/ Wk |
| Medical Providers | | |
| Medical Director | 1.00 | 40 |
| Nurse Practitioner | 1.00 | 40 |
| Nurse Practitioner Women's Health | 0.10 | 4 |
| Oversite Operations | | |
| Health Services Administrator | 1.00 | 40 |
| Director of Nursing RN | 1.00 | 40 |
| Education/CQI/Infection Control | 1.00 | 40 |
| AA – General Office/HR | 1.00 | 40 |
| Intake | | |
| RN AP H&Ps | 2.10 | 84 |
| RN PA H&Ps | 2.10 | 84 |
| LPN AP | 2.10 | 84 |
| LPN PA | 2.10 | 84 |
| Clinic | | |
| RN Sick Call | 1.00 | 40 |
| LPN Sick Call | 1.00 | 40 |
| LPN – Court Education/Releases/Labs | 1.00 | 40 |
| Infirmary | | |
| RN AP House Supervisor | 2.10 | 84 |
| RN PA House Supervisor | 2.10 | 84 |
| LPN AP | 2.10 | 84 |
| LPN PA | 2.10 | 84 |
| CMA Flex* AM | 2.10 | 84 |
| Housing Unit Staff | | |
| LPN AP | 10.50 | 420 |
| Medical Records | | |
| Health Information Supervisor | 1.00 | 40 |
| Health Information Tech | 1.00 | 40 |
| Mental Health | | |
| Psychiatrist | 0.50 | 20 |
| CNS Mental Health | 0.50 | 20 |
| Licensed Professional Counselor | 3.80 | 152 |
| Dental | | |
| Dentist | 0.50 | 20 |
| Dental Hygienist | 0.50 | 20 |
| Totals | 46.30 | 1852 |

Additionally, Provider agrees to have a nocturnist on staff at all times.

33

Plaintiff Creely- 001338

## EXHIBIT C – STAFFING PERFORMANCE GUARANTEES

CorrectHealth will comply with the performance requirements stipulated in the RFP and acknowledges the penalties for failure to meet any of the following:

**Staffing Vacancies**

| Performance Objective | Measure | Penalty |
|---|---|---|
| Provider must maintain staffing outlined in minimum staffing requirements for 90% of the minimum monthly staffing hours | Monthly Provider Staffing Report by Position | The daily use of the salary and benefits plus 25% except for the RN and psychiatrist position. Failure to maintain staffing of the RN and psychiatrist position will result in a penalty of twice the daily value of salary and benefits. |

**Intake Screening**

| Performance Objective | Measure | Penalty |
|---|---|---|
| Receiving screening must be completed on all detainees within 4 hours. | Monthly Provider Report comparing booking time Stamp to pre-screening time stamp | $500 per occurrence |

**Medications**

| Performance Objective | Measure | Penalty |
|---|---|---|
| Provide/administer pharmaceutical drugs within two hours of scheduled time. | Monthly Provider Report | $100 per occurrence of late or non-dispensing of Pharmaceutical drugs |

**NCCHC Accreditation**

| Performance Objective | Measure | Penalty |
|---|---|---|
| Achieve/Maintain NCCHC Accreditation and MAG Accreditation | Accreditation status | A penalty of $25,000 shall be imposed for the Detention Center being placed on a probationary status and a penalty of $50,000 if the Detention Center loses their accreditation. This penalty will be imposed annually until accreditation has been reestablished. |

34

Plaintiff Creely- 001339

**EXHIBIT D – ELECTRONIC HEALTH RECORDS LETTER OF INTENT**

This letter of intent ("Letter of Intent") sets forth an agreement and commitment by Chatham County ("County") Curtis V. Cooper Primary Care ("Cooper"); CorrectHealth ("CorrectHealth"); and Fusion Consulting, a GE Healthcare Partner, ("Fusion"), each a ("Party") and collectively referred to herein as the ("Parties").

The Parties agree that Fusion will install, implement and modify its GE Centricity Practice Solutions software and provide Fusion Correctional Clinical Content ("GE Centricity EHR System"), collectively referred to herein as the ("Services"), for its operation as a healthcare information system for the Chatham County Detention Center. This Letter of Intent shall constitute an inducement for Fusion to install said GE Centricity Practice Solutions software and modify it with Fusion's proprietary Correctional Clinical Content (with fifty (50) hours of Fusion customization included) for its applicable use in the Chatham County Detention Center. CorrectHealth will cooperate and provide necessary information and assistance, as required by Fusion, for Fusion to perform its Services for Chatham County Detention Center.

In order to achieve the implementation of said Services, the following actions shall be taken by the respective Parties:

1. County, pursuant to a contract with CorrectHealth for inmate healthcare services for the Chatham County Detention Center, CorrectHealth will be paid through the County contract with CorrectHealth for services in the amounts set forth in Appendix 1, less any amount of payment the County shall pay directly to Fusion for services contained in Appendix 1.

2. County, as an inducement for Fusion to begin installation, implementation of GE Centricity EHR System shall make a direct payment of $50,000 to Fusion within fifteen (15) days of Effective Date of Letter of Intent. The $50,000 payment to Fusion by County is non-refundable. In consideration of this $50,000 non-refundable payment by County, CorrectHealth and Fusion agree to operate in good faith and cooperate with each other to completely and expeditiously ensure the smooth installation and implementation of the GE Centricity EHR System within the Chatham County Detention Center.

3. Cooper agrees that on or by December 31, 2016, Cooper will execute such documents as may be necessary to sell twenty-five (25) licenses to GE Centricity Records Management System, for and in consideration of one (1) dollar, to CorrectHealth for the benefit and use of CorrectHealth and County pertaining to the medical records management of the Chatham County Detention Center.

4. Upon request, Fusion provides CorrectHealth the opportunity to negotiate and enter into a separate licensing agreement for acquirement of temporary GE Centricity licenses to accommodate any anticipated "gap" period of functionality between Go-Live/acceptance of GE Centricity EHR System (Estimated: August 1, 2016 or sooner if deemed necessary by County) and transferal of twenty-five (25) licenses from Cooper to CorrectHealth on or about December 31, 2016.

5. CorrectHealth, for and in consideration of one (1) dollar, agrees that on or by January 1st,

2017, CorrectHealth will execute the necessary documents for the transfer of twenty-five

(25) licenses for the GE Centricity Records Management acquired from Cooper to Fusion.

35

Plaintiff Creely- 001340

6. In consideration of CorrectHealth's transfer of the GE Centricity Records Management System formerly owned by Cooper to Fusion, Fusion will install, implement, and modify the GE Centricity EHR System for its applicable use by CorrectHealth in providing healthcare

services to the Chatham County Detention Center.

7. Should the contract between County and CorrectHealth as it pertains to inmate health services terminate for any reason, then all right, title, interest, and ownership to use of the GE Centricity EHR System by CorrectHealth will be transferred and conveyed to County for and in consideration of one (1) dollar. Fusion understands and acknowledges that in the event of termination of the contract between County and Correct Health, that Fusion will cooperate in the transfer of the GE Centricity EHR System to County and provide service to said system. Upon termination of contract between County and CorrectHealth, any subsequent transfer services of GE Centricity EHR System performed by Fusion for County will constitute a separate agreement between County and Fusion, of which said transfer services will be billed by Fusion to County at Fusion's then current work-and-materials rate, unless otherwise negotiated. It is the intent of Correct Health and County that should for any reason the inmate health services contract terminate, that all right, title, and interest in said GE Centricity EHR System shall be owned by County.

To further demonstrate good faith and fair dealing, the Parties agree to:

1.   Cooperate in all matters relating to the Services detailed herein;

2.  Provide, such access as may reasonably be requested by Fusion for the purposes of performing the Services;

3.  Respond promptly to any requests by Fusion to provide direction, information, approvals, authorizations or decisions that are reasonably necessary for Fusion to perform Services;

4.Provide such materials and/or information as Fusion may request in order to carry out the Services, in a timely manner, and ensure that it is complete and accurate in all material respects; and

5.  Ensure that all equipment is in good working order and suitable for the purposes for which it is used in relation to the Services and conforms to all relevant legal or industry standards or requirements as applicable.

Acts or Omissions of Parties:

1.   If Fusion's performance of its Services is prevented or delayed by any act or omission of Parties or its agents, subcontractors, consultants or employees, Fusion shall not be deemed in breach of its obligations, withheld payment for Services provided, or otherwise liable for any costs, charges or losses sustained or incurred by Parties, in each case, to the extent arising directly or indirectly from such prevention or delay.

Non-Disclosure of Confidential Information:

36

Plaintiff Creely- 001341

1.  Parties recognize and acknowledge in exercise of due diligence under this Letter of Intent they may or will have access to confidential information concerning the structure and conduct of the business of Parties (including, but not limited to proprietary information, lists of customers or patients, and costs and financial information) which prior to and after the consummation of the Services will be valuable, special and unique to each respective Party. Respectively to the extent permitted by law. Parties agree they will not disclose, and will use their best efforts to prevent disclosure by any other person, of confidential information to any person, except to authorized representatives of Parties necessary to enable Services required to GE Centricity EHR System for use in the Chatham

County Detention Center. This non-disclosure agreement by Parties applies whether or not such

further and other agreements are formed and Services are performed and/or completed.

Attached to this Letter of Intent, labeled as Appendix 1, is a schedule of a one-time installation/implementation cost that will be the responsibility of Correct Health to Fusion, by and through its contract with County, and the schedule of annual and recurring maintenance, support, and hosting fees which shall be responsibility for payment by County to Fusion through the contract with CorrectHealth.

This Letter of Intent expresses the wishes arid intent of the parties to reach an agreement for the transfer of the necessary licenses and Implementation/modification of the GE Centricity EHR System so as to make it operational within the Chatham County Detention Center. The Parties pledge their cooperation each to the County, Sheriff and all other parties.

This Letter of Intent shall become effective as of the last signature date set forth below ("Effective Date") and will remain in effect for fifteen (15) days. Upon Effective Date, Parties shall prepare such further and other agreements as are necessary or advisable to give effect to this Letter of Intent. Such definitive agreement(s) shall contain inter alia the terms and conditions set out herein and such other terms, conditions, representations and warranties which may be required to perform Services and which may be agreed upon by the corresponding Parties, acting reasonably. In the event that such definitive agreement(s) required to perform Services are not entered into by Parties within fifteen (15) days of the signing of this Letter of Intent, the terms and conditions contained herein will be of no further force and effect. The Parties will have no further obligations with respect to this Letter of Intent except to abide by the following confidentiality provisions. The Parties have the good faith obligation to proceed with the negotiation of the definitive services agreement(s) as provided in this Letter of Intent.

37

Plaintiff Creely- 001342

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JESSICA HODGES, et al.                )
                                       )
          Plaintiffs,                  )
                                       )        Case Number: 4:22-cv-00067-WTM-CLR
vs.                                    )
                                       )
CHATHAM COUNTY, GEORGIA, et al.        )
                                       )
          Defendants.                  )

# Second Contract

SERVICES CONTRACT

BETWEEN

CHATHAM COUNTY, GEORGIA

AND

**CorrectHealth Chatham, LLC**
**3384 Peachtree Road, Suite 700**
**Atlanta, Georgia 30326**
**770-692-4750**

**Annual Contract to Provide Inmate Healthcare Services**

**(Annual Contract)**
**CONTRACT NO. 17-0109-1**

Board of County Commissioners
Chatham County Courthouse
124 Bull Street
Post Office Box 8161
Savannah, Georgia 31412

1

Plaintiff Creely- 001343

SERVICES CONTRACT

Between

CHATHAM COUNTY, GEORGIA

And

**CorrectHealth Chatham, LLC**

This Contract is made and entered into this **1ˢᵗ** day of **July, 2018,** by and between the Board of Commissioners of Chatham County, Georgia, hereinafter called the "BOARD" the Chatham County Sheriff's Office, hereinafter called "SHERIFF", and, **CorrectHealth Chatham, LLC,** a Corporation authorized to do business in Georgia, hereinafter called the "CONTRACTOR" and/or "CorrectHealth."

WITNESSETH

WHEREAS, the BOARD desires to engage qualified and experienced **PROFESSIONALS TO PROVIDE INMATE HEALTHCARE SERVICES FOR THE CHATHAM COUNTY DETENTION CENTER Contract No. 17-0109-1.**

WHEREAS, CorrectHealth has represented to the BOARD that it is experienced and qualified to provide the services contained herein, and the BOARD has relied upon such representation.

NOW, THEREFORE, in consideration of the mutual promises and covenants herein contained, it is agreed by and between the BOARD and the CONTRACTOR that the BOARD hereby engages the CorrectHealth, and that CorrectHealth hereby agrees to perform the services in accordance with the requirements set forth in RFP 17-0109-1.

**ARTICLE I**

**TERMS AND CONDITIONS OF THIS CONTRACT**

**SECTION I-1.   TERM OF SERVICES**: The services to be provided by the CONTRACTOR as described in Article IV shall commence on July 1, 2018. **THE TERM OF THIS CONTRACT IS FOR ONE (1) YEAR WITH RENEWAL OPTIONS FOR FOUR (4) ADDITIONAL ONE YEAR TERMS UPON AGREEMENT OF BOTH PARTIES. As an option the BOARD may approve further extension of this contract, upon negotiation and mutual consent of CONTRACTOR, for two (2) additional one year terms.**

**SECTION I-2.   REQUIREMENT FOR MANDATORY PERFORMANCE:**   The words "shall,"

2

Plaintiff Creely- 001344

"will" and "must" may be used interchangeably in this Contract; and in any case will indicate a required or mandatory performance by all parties.

**SECTION I-3.   COUNTY ADMINISTRATION**.   The administration of this Contract for BOARD shall be the responsibility of the County administrative staff, hereinafter called the "COUNTY". **MICHAEL KAIGLER, ASSISTANT COUNTY MANAGER, 124 BULL STREET, SAVANNAH, GA, 31401, (912) 652-7921, mkaigler@chathamcounty.org** shall serve as the Project Manager for this contract and shall be responsible to the County Manager who is responsible to the BOARD for the proper effectuation of Chatham County, Georgia's obligations under the terms of this Contract. All parties agree and understand that the Sheriff has responsibility regarding healthcare services at the CCDC.  The COUNTY and CONTRACTOR agree that the Sheriff must fulfill his constitutional duties.  The Sheriff and his designee shall also be responsible for the proper effectuation of the Sheriff's health care obligation under this contract.

**SECTION I-4.   COUNTY PROJECT MANAGER'S DUTIES AND AUTHORITY**.
The Project Manager is the Chatham County, Georgia staff member primarily responsible to assist in the Sheriff fulfilling his responsibility in providing adequate healthcare at the CCDC. All issues involving healthcare at the CCDC shall be reported to the Sheriff. The Project Manager shall be responsible for forwarding information received from the Sheriff to the COUNTY.  The Sheriff will cooperate to ensure that any information or documentation requested by COUNTY will be forthcoming from the CONTRACTOR. CONTRACTOR shall report directly to the Sheriff and said information shall be provided by the Sheriff to the project manager.  Any requests for reports shall be made by the Project Manager to the Sheriff and the Sheriff will then request reports from the CONTRACTOR.  The CONTRACTOR shall respond within 48 hours, unless a sooner time is specifically requested by the Sheriff.  If there are special circumstances requiring additional time, the CONTRACTOR shall immediately report the need for additional time to the Sheriff.  The Sheriff may extend the time for CONTRACTOR to respond, which extension shall not be unreasonably withheld.

The parties agree that the CONTRACTOR shall report directly to the Sheriff on all day to day operational matters.  The Project Manager may request through the Sheriff, all correspondence, data, information and reports.  The number of copies of such data shall be designated by the Project Manager to provide for proper distribution to the parties concerned. The Project Manager shall be responsible for the maintenance of all records and correspondence concerning this contract for the COUNTY.  The Project Manager shall provide any records, correspondence or other documents to the Sheriff, upon his request.

The CONTRACTOR shall meet with the COUNTY and the Sheriff for review of the work as determined by the Sheriff and COUNTY. The services shall be performed in satisfaction of the Sheriff or his designee and in compliance with the contract requirements and terms of the RFP.

The Project Manager, upon request of the Sheriff, will expedite any necessary decisions, regarding provisions of this contract that affect the performance of the CONTRACTOR.

3

Plaintiff Creely- 001345

**SECTION I-5.  PERSONNEL AND EQUIPMENT.**  The CONTRACTOR represents that it has secured or will secure, at its own expense, all equipment necessary to perform the services of this Contract with the exception of medical equipment present at the jail and in addition to the medical carts that the COUNTY shall purchase; CONTRACTOR shall provide all necessary personnel, none of whom shall be employees of, nor have any contractual relationship with COUNTY or the Sheriff.   All of the services required hereunder will be performed by the CONTRACTOR under its supervision, and all personnel engaged in the work shall be fully qualified as outlined in RFP 17-0109-1 and shall be authorized or permitted under law to perform such services. All computers, the electronic medical records system and medical distribution carts shall be the property of the County upon execution of this contract. The Contractor shall execute documents required to transfer from the contractor to the County the electronic medical records (EMR) and all medical information within the EMR. The EMR shall be the property of the County and may be used by the Contractor.

The contractor agrees that there are essential staffing positions which require full time equivalent employees to fill those positions and the contractor's staffing will ensure that there will be one nurse, RN, and one nurse, LPN, at all times in receiving and discharge and the infirmary will be staffed with one nurse, RN, and one nurse, LPN, at all times. The contractor agrees that it shall continue to provide Sheriff's Office employees and candidates for employment with physicals.

**SECTION I-6.  SCHEDULING OF WORK TASKS.**  The CONTRACTOR shall energetically and expeditiously carry out the required services. While discretion shall be granted to CONTRACTOR, CONTRACTOR shall perform the specific task outlined in RFP 17-0109-1.

**SECTION I-7.  REVIEW OF WORK IN PROGRESS.**  Authorized representatives of the COUNTY may at all reasonable times review and inspect the activities required under this contract. CONTRACTOR shall cooperate fully with any review of the services provided and shall ensure that any subcontractor utilized by CONTRACTOR likewise shall fully cooperate with any review of services rendered or other expenditures of county funds.

**SECTION I-8.  CHANGES TO THIS CONTRACT.**  The COUNTY or Sheriff may, at any time, request changes in the scope of services of the CONTRACTOR to be performed hereunder.      Such changes, including any increase or decrease in the term, rate or amount of the CONTRACTOR's compensation, as more fully described elsewhere herein, which are mutually agreed upon by and between the Sheriff, COUNTY and the CONTRACTOR, shall be incorporated in written amendments to this Contract.

**SECTION I-9.  DELAYS AND EXTENSION OF TIME.**  Delays or failures to perform the duties outlined in RFP 17-0109-1 are addressed in the performance guarantee sections of this contract. The Contract term of service and/or cost may be extended by Contract modification for such reasonable time as the Sheriff, COUNTY and CONTRACTOR may agree upon in compliance with the County's Purchasing Ordinance and state law.

4

Plaintiff Creely- 001346

**SECTION I-10.**  <u>**TERMINATION OF CONTRACT FOR CAUSE:**</u>  If the CONTRACTOR shall fail to fulfill any of its obligations hereunder, COUNTY may, give  60 days written notice to the CONTRACTOR to terminate the agreement with said CONTRACTOR for such default. If this agreement is so terminated, the CONTRACTOR shall be paid only for work satisfactorily completed. The termination notice will provide the date for the effective date of the termination.

Upon notice to terminate the contract for any reason, CONTRACTOR shall agree to a six month reconciliation period after the date of termination. Additionally, for a period of 60 days subsequent to the termination, CONTRACTOR shall remain in the facility to assist in the orderly transition of care of all detainees. The SHERIFF and County shall determine the scope of services, including staffing and compensation, which shall not exceed the then-current contract amount.   The SHERIFF and County shall consider the services being provided by the new contractor, in determining CONTRACTOR's services, staffing, and compensation. The Sheriff and County may seek the assistance of a qualified consultant to assist and recommend staffing and scope of services. Further, COUNTY will retain 20 percent of the remaining contract payments to pay any outstanding claims unless sufficient assurances of payment are made by the County Manager.  The money retained which is not in dispute shall be released no later than 120 days after the termination of the Contract. Any funds not so disposed of, if any, shall provide by the County in writing to the contractor and the reason for non-disbursement. However, CONTRACTOR agrees to be responsible for any claims that come in after 120 days, provided the payment can be verified and supported.  Sheriff shall assist CONTRACTOR in providing information to verify the appropriateness of the bill/payment.

**SECTION I-11.**  <u>**TERMINATION OF CONTRACT FOR CONVENIENCE.**</u>  The COUNTY shall have the right to terminate any contract to be made hereunder for its convenience by giving the proponent written notice 120 days in advance of its election to do so and by specifying the effective date of such termination.  CONTRACTOR shall be paid for services rendered and not in question or dispute through the effective date of such termination.

The CONTRACTOR shall have the right to terminate any contract to be made hereunder for its convenience by giving the proponent written notice 120 days in advance of its election to do so and by specifying the effective date of such termination.  CONTRACTOR shall be paid for services rendered and not in question or dispute through the effective date of such termination.

Upon notice to terminate the contract for any reason, CONTRACTOR shall agree to a six month reconciliation period. Additionally, for a period of 30 days subsequent to the termination, CONTRACTOR shall remain in the facility to assist in the orderly transition of care of all detainees.  The SHERIFF and County shall determine the scope of services, including staffing and compensation, which shall not exceed the then-current contract amount.   Sheriff and County may seek assistance of a qualified consultant to assist and recommend staffing and scope of services. The SHERIFF shall consider the services being provided by the new contractor, in determining CONTRACTOR's services, staffing, and

5

Plaintiff Creely- 001347

compensation. Further, COUNTY will retain 20 percent of the remaining contract payments to pay any outstanding claims unless sufficient assurances of payment are made in the by direction of the County Manager. The money retained which is not in dispute shall be released no later than 120 days after the termination of the Contract.  Any fund not so disposed of, if any, shall be provided by the County in writing to the contractor the reasons for non-disbursement. However, CONTRACTOR agrees to be responsible for any claims that come in after 120 days, provided the payment can be verified and supported.  Sheriff and County shall assist CONTRACTOR in providing information to verify the appropriateness of the bill/payment.

**SECTION I-12.   CONTRACTOR TO COOPERATE WITH OTHER CONTRACTORS AND GOVERNMENT AGENCIES**.   If the COUNTY undertakes or awards other contracts for additional related work, the CONTRACTOR and its subcontractors shall fully cooperate with such other contractors and COUNTY employees and carefully fit its own work to such additional work as may be directed by the COUNTY.   The CONTRACTOR and its subcontractors shall not commit or permit any act which will interfere with the performance of work by any other CONTRACTOR or by COUNTY employees.   Costs caused by ill-timed work shall be borne by the responsible party.

**SECTION I-13.   INDEMNIFICATION**.  The CONTRACTOR agrees to protect, defend, indemnify, and hold harmless the Sheriff's Office and Chatham County, Georgia, its commissioners, officers, agents, and employees from and against any and all liability, damages, claims, suits, liens, and judgments, of whatever nature, including claims for contribution and/or indemnification, for injuries to or death of any person or persons, or damage to the property or other rights of any person or persons caused by the CONTRACTOR or its subcontractors.   The CONTRACTOR's obligation to protect, defend, indemnify, and hold harmless, as set forth herein above shall include, but not be limited to, any matter arising out of any actual or alleged infringement of any patent, trademark, copyright, or service mark, or any actual or alleged unfair competition, disparagement of product or service, constitutional rights claims, other business tort of any type whatsoever, or any actual or alleged violation of trade regulations.

CONTRACTOR further agrees to investigate, handle, respond to, provide defense for, and to protect, defend, indemnify, and hold harmless the Sheriff's Office and Chatham County, Georgia, at CONTRACTOR'S sole expense, and agrees to bear all other costs and expenses related thereto, even if such claims, suits, etc., are groundless, false, or fraudulent, including any and all claims or liability for compensation under the Worker's Compensation Act arising out of injuries sustained by any employee of the CONTRACTOR or his subcontractors or anyone directly or indirectly employed by any of them.

The CONTRACTOR'S obligation to indemnify the Sheriff's Office and Chatham County under this Section shall not be limited in any way by the agreed upon contract price as shown in Article II or to the scope and amount of coverage provided by any insurance maintained by the CONTRACTOR including, without limitation to, the insurance required to be maintained by the CONTRACTOR pursuant to Section II-4 of this Contract.

6

Plaintiff Creely- 001348

Upon tender of any claim, notice or lawsuit for defense by COUNTY or Sheriff, then CONTRACTOR shall respond in writing to accept or deny the defense within 15 days of CONTRACTOR's receipt of the tender.

**SECTION I-14.   COVENANT AGAINST CONTINGENT FEES**.   The CONTRACTOR shall comply with the relevant requirements of all Federal, State, County or other local laws.   The CONTRACTOR warrants that it has not employed or retained any company or person, other than a bona fide employee working solely for the CONTRACTOR, to solicit or secure this Contract, and that it has not paid or agreed to pay any company or person, other than a bona fide employee working solely for the CONTRACTOR, any fee, commission, percentage, brokerage fee, gifts, or any consideration, contingent upon or resulting from the award or making of this Contract.

For breach or violation of this warranty, the BOARD shall have the right to annul this Contract without liability, or, in its discretion to deduct from the Contract price or consideration, or otherwise recover, the full amount of such fee, commission, percentage, brokerage fee, gift or contingent fee.

**SECTION I-15.   PROHIBITED INTERESTS**.

a.   Conflict of Interest.   The CONTRACTOR and its subcontractors warrant that it presently has no interest and shall acquire no interest, direct or indirect, that would conflict in any manner or degree with the performance of its services hereunder.   The CONTRACTOR further agrees that, in the performance of the Contract no person having any such interest shall be employed.

b.   Interests of Public Officials.   No member, officer, public official or employee of Chatham County, Georgia, during his tenure shall have any interest, direct or indirect, in this Contract or the proceeds thereof.

**SECTION I-16.   SUBCONTRACTING**.   The CONTRACTOR shall not subcontract any part of the work covered by this Contract without the COUNTY's prior written approval of the subcontractor.   All approved subcontractors and their personnel assigned to this Project shall be listed as an attachment to this contract.   CONTRACTOR shall promptly pay all subcontractors for services rendered in accordance with the scope of work in this contract.

**SECTION I-17.   ASSIGNABILITY**.   The CONTRACTOR shall not assign or transfer whether by an assignment or novation, any of its rights, obligations, benefits, liabilities or other interest under this Contract without the written consent of the COUNTY.

**SECTION I-18.   EQUAL EMPLOYMENT OPPORTUNITY**.   During the performance of this Contract, the CONTRACTOR agrees as follows:

a.   The CONTRACTOR will not discriminate against any employee or applicant for employment because of race, creed, color, sex, age, national origin, place of birth, physical handicap, or marital status;

7

Plaintiff Creely- 001349

b.   The CONTRACTOR will, in all solicitations or advertisements for employees, insure that qualified applicants will receive consideration for employment and will take affirmative action to employ applicants without regard to race, creed, color, sex, age, national origin, place of birth, physical handicap, or marital status.   Such action shall include, but not be limited to the following:   employment, upgrading, demotion, transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation,   and selection for training, including apprenticeship;

c.   The CONTRACTOR will cause the foregoing provisions to be inserted in all subcontracts for any work covered by this Contract so that such provision will be binding upon each subcontractor, provided that the foregoing provisions shall not apply to contracts or subcontracts for standard commercial supplies or raw materials.

**SECTION I-19.   ANTI-KICKBACK CLAUSE.**   Salaries of all personnel performing work under this Contract shall be paid unconditionally and not less often than once a month without deduction or rebate on any account except only such payroll deductions as are mandatory by law.   The CONTRACTOR hereby agrees to comply with all applicable "Anti-Kickback" laws and shall insert appropriate provisions in all subcontracts covering work under this Contract.

**SECTION I-20.   PREFERENCE FOR LOCAL LABOR AND PURCHASES.**   The CONTRACTOR hereby agrees, as part of the consideration to COUNTY for the making of this Contract, that the CONTRACTOR in the carrying out of this contract will give the citizens of Chatham County preference for employment to perform all labor required by this contract; that the rate of wages to be paid shall not be less than legally required; and that in the purchase of materials to be used in the Work of the Project, preference shall be given to sources from within Chatham County to the maximum extent practicable.   The CONTRACTOR will cause the forgoing provisions to be inserted in all subcontracts so that provisions will be binding upon each subcontractor.

**SECTION I-21.   AUDITS AND INSPECTIONS.** At any time during normal business hours and as often as the Sheriff and COUNTY may deem necessary, the CONTRACTOR and his subcontractors shall make available to the COUNTY, Sheriff and/or representatives of the Chatham County Department of Internal Audit or other designee of the County, for examination all of its records with respect to all matters covered by this Contract, with the exception of confidential employee information, including, but not limited to, personal identifiers, addresses, disciplinary matters, health information, financial institution information;  matters of litigation or pending litigation, to include attorney client communications or other confidential work product materials; non-Chatham County related information; peer review; internal correspondence.  It shall also permit the COUNTY and/or its representatives including but not limited to the Department of Internal Audit to audit, inspect, examine and make copies, excerpts and transcripts from such records of personnel, conditions of employment and other data relating to all matters covered by this Contract, subject to the above exceptions.        All audits, as requested by the COUNTY and the SHERIFF, shall be performed in accordance with generally accepted accounting procedures.  If any protected health information may be disclosed during

8

Plaintiff Creely- 001350

such audit, COUNTY and CONTRACTOR agree to enter into any agreement necessary to comply with federal laws.

**SECTION I-22.   VERBAL AGREEMENT OR CONVERSATION**.   No verbal agreement or conversation with any officer, agent, or employee of Chatham County, Georgia, either before, during, or after the execution of this Contract, shall affect or modify any of the terms or obligations herein contained.   All changes to this Contract shall be in writing and appended hereto as prescribed in Section I-8.

**SECTION I-23.   INDEPENDENT CONTRACTOR**.   The CONTRACTOR shall perform the services under this Contract as an independent contractor and nothing contained herein shall be construed to be inconsistent with this relationship or status.   Nothing in this Contract shall be interpreted or construed to constitute the CONTRACTOR or any of its subcontractors, agents or employees to be the agent, employee or representative of Chatham County, Georgia.

**SECTION I-24.   NOTICES**.   All notices shall be in writing and any notices, demands and other papers or documents to be delivered to Chatham County, Georgia, under this Contract shall be delivered in person or transmitted by mail or Email to the **County's Project Manager, MICHAEL KAIGLER, ASSISTANT COUNTY MANAGER, 124 BULL STREET, SAVANNAH, GA. 31401, (912) 652-7921, mkaigler@chathamcounty.org** or at such other place or places as may be subsequently designated by written notice to the CONTRACTOR. Any notice provided to the County's Project Manager shall be simultaneously conveyed to the Sheriff of Chatham County.

All written notices, demands and other papers or documents to be delivered to the CONTRACTOR under this Contract shall be transmitted by mail or E-mail, and addressed as follows: **CARLO A. MUSSO, MD, 3384 PEACHTREE ROAD , SUITE 700,   ATLANTA, GEORGIA 30326, CARLO.MUssO@CORRECTHEALTH.ORG, 770-692-4750.**

**SECTION I-25.   INCORPORATION OF TITLE VI PROVISIONS**

During the performance of this contract, the CONTRACTOR, for itself, its assignees, and successors in interest (hereinafter referred to as the "CONTRACTOR"), **agree as follows:**

1.  **Compliance with Regulations**
    The CONTRACTOR shall comply with the Regulations relative to nondiscrimination in federally-assisted programs of the Department of Transportation (hereinafter referred to as DOT), Title 49, Code of Federal Regulations, part 21, as they may be amended from time to time, (hereinafter referred to as the Regulations), which are herein incorporated by reference and made a part of this contract.

2.  **Nondiscrimination**
    The CONTRACTOR, with regard to the work performed by it during the contract, shall not discriminate on the grounds of race, color, sex, or national origin in the selection and

9

Plaintiff Creely- 001351

retention of subcontractors, including procurement of materials and leases of equipment. The Contractor shall not participate either directly or indirectly in discrimination prohibited by Section 21.5 of the Regulations, including employment practices when the contract covers a program set forth in Appendix B of the Regulations.

3. **Solicitations for Subcontracts, Including Procurement of Materials and Equipment**
In all solicitations either by competitive bidding or negotiations made by the CONTRACTOR for work to be performed under a subcontract, including procurement of materials or leases of equipment, each potential subcontractor or supplier shall be notified by the CONTRACTOR of the CONTRACTOR's obligations under this contract and the Regulations relative to nondiscrimination on the ground of race, color, sex, or national origin.

4. **Information and Reports**
The CONTRACTOR shall provide all information and reports required by the Regulations or directives issued pursuant thereto, and shall permit access to its books, records, accounts, other sources of information and its facilities as may be determined by Chatham County when applicable, to be pertinent to ascertain compliance with such Regulations, orders, and instructions. Where any information required of a contractor is in the exclusive possession of another who fails or refuses to furnish this information, the Contractor shall so certify to COUNTY, as appropriate, and shall set forth what efforts it has made to obtain the information.

5. **Sanctions for Noncompliance**
In the event of the CONTRACTOR's noncompliance with the nondiscrimination provisions of this contract, COUNTY shall impose such contract sanctions as it or any federal laws that may determine to be appropriate, including, but not limited to:

   a. Withholding of payments to the CONTRACTOR under the contract until the CONTRACTOR complies; and/or

   b. Cancellation, termination, or suspension of the contract, in whole or in part.

6. **Incorporation of Provisions**
The CONTRACTOR shall include the provisions of paragraphs (1) through (5) in every subcontract, including procurement of materials and leases of equipment, unless exempt by the Regulations, or directives issued pursuant thereto.

The CONTRACTOR shall take such action with respect to any subcontractor or procurement as COUNTY when applicable may direct as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event a CONTRACTOR becomes involved in, or is threatened with, litigation with a subcontractor or supplier as a result of such direction, the CONTRACTOR may request COUNTY enter into such litigation to protect the interests of the state and, in addition, the CONTRACTOR may request the United States to enter into such litigation to protect the interests of the United States.

10

Plaintiff Creely- 001352

**SECTION I-26.   CHOICE OF LAW**.   This Contract shall be deemed to have been executed in Chatham County, Georgia, and all questions of interpretation shall be governed by the laws of the State of Georgia.

**SECTION I-27. COMPLIANCE WITH LAWS**.   The CONTRACTOR shall comply with all applicable Federal, State, Chatham County and municipal laws, ordinances, rules, regulations, and lawful orders of public authorities relating to the work, including but not limited to Chatham County building code and permits and/or municipal business licenses, building permits, and other local requirements, as applicable.

**SECTION I-28. POST-CONTRACT TERM COMPLETION OF WORK**.   The CONTRACTOR shall be entitled to complete any work assignments issued near the end of the term of this annual contract but which requires additional time for completion beyond the termination date of this contract.

**SECTION I-29.   ACCURACY OF WORK WARRANTED**.   The CONTRACTOR hereby warrants the accuracy of the Work completed under the terms of this contract and shall promptly correct any errors and omissions at no additional cost to COUNTY.   Acceptance of the Work by COUNTY will not relieve the CONTRACTOR of the responsibility for subsequent correction, at no additional cost to COUNTY, of any errors and omissions for a period of one (1) year after substantial completion of the Work.

At any time during the course of the work as specified in the documents contained or work performed by others based on data secured by the CONTRACTOR under this Contract, the CONTRACTOR shall confer with the COUNTY to correct any errors or omissions made by the CONTRACTOR.   The CONTRACTOR shall prepare any reasonable data required by the COUNTY to correct such errors or omissions.   The above consultations, clarifications or corrections shall be made without added compensation.   The CONTRACTOR shall give immediate attention to these changes so that there will be a minimum delay to COUNTY.

## ARTICLE II

### COMPENSATION, FINANCIAL ADMINISTRATION AND GUARANTEES

**SECTION II-1.   COMPENSATION FOR CONTRACTOR SERVICES**.   The COUNTY shall pay the CONTRACTOR for his services as follows: **AS LISTED ON ATTACHMENT C.**

**SECTION II-2.   COMPENSATION SCHEDULE**.   The detailed project compensation schedule is shown in Attachment C and is attached hereto and incorporated herein as a part of this Contract.   Any changes to the cost will be directed to the CONTRACTOR by the County Project Manager in writing, and said document shall automatically become an addition to Attachment C.

Plaintiff Creely- 001353

**SECTION II-3.  METHOD OF COMPENSATION.**   The compensation provided for herein shall include all claims by the CONTRACTOR for all costs incurred by the CONTRACTOR in the conduct of the work as authorized by the approved Project Compensation Schedule and this amount shall be paid to the CONTRACTOR after receipt of the invoice and approval of the amount by the COUNTY.   The COUNTY shall make payment(s) to the CONTRACTOR in accordance with the schedule as indicated and provided for on forms approved by the County Project Manager. CONTRACTOR AGREES TO PROVIDE REQUIRED REPORTS TO THE SHERIFF, AS FOLLOWS:

a)   Utilization reports from the Contractors' pharmacy
b)   Quarterly quality improvement (QI) monitoring of medication administration records and physician prescribing reports.
c)   Monthly statistical report which summarizes the health care services provided during the previous month including the number of detainees receiving treatment for Hepatitis C, HIV, and pregnancy.
d)   Staffing report which provides monthly staffing data based on Sheriff's biometric timekeeping as fully outlined in the attachment.
e)   Warrant that at all time during the previous month CONTRACTOR has fully complied with all HIPPA laws, rules and regulations.
f)   Provide copies of all, if any, ante litem or other legal notices received for breach of medical care, as they apply to Chatham County.

Upon completion of the contract for any reason, CONTRACTOR shall agree to a six month reconciliation period. Further, COUNTY will retain 20 percent of the remaining contract payments to pay any outstanding claims unless sufficient assurances of payment are made by the County Manager with concurrence of the Sheriff. The money retained which is not in dispute shall be released no later than 120 days after the termination of the Contract. However, CONTRACTOR agrees to be responsible for any claims that come in after 120 days, provided the payment can be verified and supported.  Sheriff shall assist CONTRACTOR in providing information to verify the appropriateness of the bill/payment.

**SECTION II-4.   General Information that shall appear on a Certificate of Insurance:**

I.      Name of Producer (Provider's insurance Broker/Agent).
II.     Companies affording coverage (there may be several).
III.    Name and address of the Insured.
IV.     A Summary of all current insurance for the insured (includes effective dates of coverage).
V.      A brief description of the operations to be performed, the specific job to be      performed, or contract number.
VI.     Certificate Holder (This shall be both Chatham County and the Sheriff of Chatham County, jointly).
VII.    A certification that the policy held is for the benefit of any potential claims pursuant to this contract and this contract alone.   This certification shall state that no other facility is covered under this Certificate.

12

Plaintiff Creely- 001354

CONTRACTOR shall furnish at its own expense and will maintain in full force and effect at all times during the term of this agreement the following insurance as outlined herein and in the RPF Section 2.21.1:

    A.   **General Liability** Insurance with a $4 million dollars aggregate coverage

    B.   **Medical Malpractice** Insurance with coverage of $1 million dollars per occurrence and a $4 million dollars aggregate coverage.

    C.   **Worker's Compensation** Insurance as provided or required by the State of Georgia provides statutory protection against bodily injury, sickness or disease sustained by employees of the Contractor while performing within the scope of their duties. Employer's Liability coverage is usually included in Worker's Compensation policies, and insures common law claims of injured employees made in lieu of or in addition to a Worker's Compensation claim. Minimum limits: $ 500,000 for each accident, disease policy limit, and disease each employee and Statutory Worker's Compensation limit.

In addition, these SPECIAL REQUIREMENTS are agreed to by CONTRACTOR:

    A.   **Claims-Made Coverage:** The limits of liability shall remain the same as the occurrence basis, however, the Retroactive date shall be prior to coincident with the date of any contract, and the Certificate of Insurance shall state the coverage is claims-made. The Retroactive date shall also be specifically stated on the Certificate of Insurance.

    B.   **Reporting Provisions:** Any failure to comply with reporting provisions of the policies shall not affect coverage provided in relation to this request.

    C.   **Cancellation/Non-Renewal Notification:** Each insurance policy that applies to this request shall be endorsed to state that it shall not be suspended, voided, or canceled, except after thirty (30) days prior to written notice by certified mail, return receipt requested, has been given to the County.   A lapse in coverage shall constitute grounds for contract termination by Chatham County Board of Commissioners.

    D.   **Insurer Acceptability:** insurance is to be placed with an insurer having an A.M. Best's rating of A and a five (5) year average financial rating of not less than V. If an insurer does not qualify for averaging on a five year basis, the current total Best's rating will be used to evaluate insurer acceptability.

13

Plaintiff Creely- 001355

14

Plaintiff Creely- 001356

    E.    **Deductible and Self-Insured Retention:** Any deductibles or self-insured retention must be declared to, and approved by, the County. At the option of the County, either: the insurer shall reduce or eliminate such deductibles or self-insured retention as related to the County, its officials, officers, employees, and volunteers; or the Contractor shall procure a bond guaranteeing payment of related suits, losses, claims and related investigation, claim administration and defense expenses.

**SECTION II-5. <u>PERFORMANCE AND PAYMENT BONDS:</u>** A performance bond in the amount of 25 % of the first year contract amount shall be provided within fourteen (14) working days after notice of award. If CONTRACTOR is subcontracting any portion of the work, a 100% payment bond must be provided

**SECTION II-6. <u>MAINTENANCE OF FINANCIAL RECORDS</u>.** The CONTRACTOR shall maintain all books, documents, papers, accounting records and other evidence pertaining to costs incurred, where appropriate, and shall make such material available at all reasonable times, during the period of the Contract and for three (3) years from the date of final payment under the Contract, for inspection by the COUNTY or any reviewing agencies, and copies thereof shall be furnished upon request. The CONTRACTOR agrees that the provisions of this Article shall be included in any contracts it may make with any subcontractor, assignee, or transferee.

**SECTION II-7. <u>PAYMENT OF TAXES AND FEES</u>.** The CONTRACTOR shall request and obtain any necessary inspections from the County Project Manager should same be required. The cost of any permit fees required by the County, and not waived, shall be paid by the CONTRACTOR.

<div align="center">

**ARTICLE III**

**<u>COUNTY RESPONSIBILITIES</u>**

</div>

**SECTION III-1. <u>SCOPE OF SERVICES</u>.** It is agreed and understood that certain services, if required, will be performed and furnished by the COUNTY in a timely manner so as not to delay the CONTRACTOR unduly in his performance of said obligations.

**SECTION III-2. <u>INFORMATION TO THE CONTRACTOR</u>.** The COUNTY will supply the CONTRACTOR with adequate copies of all available data pertaining to the required service, plus full information as to the COUNTY's requirements for the service including any available pertinent data from any other CONTRACTORS performing work that would affect this Project.

**SECTION III-3. <u>COUNTY STAFF RESPONDING TO CONTRACTOR EXPEDITIOUSLY</u>.** The COUNTY will examine all data as the County deems appropriate for such examination and rendering written decisions pertaining thereto within a reasonable time so as not to delay the services of the CONTRACTOR.

<div align="center">15</div>

Plaintiff Creely- 001357

**SECTION III-4.   <u>COUNTY GIVING NOTICE OF PROBLEMS</u>.**   The COUNTY shall give prompt verbal and/or written notice to the CONTRACTOR whenever the COUNTY observes or otherwise becomes aware of any defect in the service or changed circumstances.

**SECTION III-5.   <u>ACCESS TO PROPERTY</u>.**   The Sheriff will guarantee access to and make necessary provisions for the CONTRACTOR to enter upon public and private property as required for the CONTRACTOR to perform his services under this Contract.

## ARTICLE IV

### <u>SCOPE OF SERVICES PROVIDED BY THE CONTRACTOR</u>

**SECTION IV-1. <u>CONTRACTOR MISSION STATEMENT</u>.** The CONTRACTOR shall do, perform, and carry out the services as specified below in a satisfactory and proper manner and in conformance with the standard practices and procedures of its professions. The Contractor's mission is to **PROVIDE INMATE HEALTHCARE SERVICES AS SPECIFIED IN RFP # 17-0109-1 WHICH IS INCORPORATED HEREIN, IN ITS ENTIRETY BY REFERENCE.   CorrectHealth's response to the request for proposal and all representations made by CorrectHealth in their response to the RFP, including their Best and Final Offer are also incorporated into this contract.**

**SECTION IV-2. DETAILED SCOPE OF SERVICES.** The detailed scope of services to be performed by the Contractor are as outlined in RFP # 17-0109-1 INMATE HEALTH SERVICES for the Chatham County Detention Center.

Signatures follow on next page.

16

Plaintiff Creely- 001358

IN WITNESS WHEREOF, the parties hereto acting through their duly authorized agents have caused this contract to be signed, sealed and delivered.

ATTEST:

CONTRACTOR:
**CorrectHealth Chatham, LLC**

SIGNATURE:                          SIGNATURE:

TITLE: _Treasury  Services_        TITLE: _President_

I attest that the Corporate Seal attached to this Document is in fact the seal of the Corporation and that the Officer of this Corporation executing this Document does in fact occupy the official position indicated and is duly authorized to execute such document on behalf of this Corporation. (CORPORATE SEAL)

CHATHAM COUNTY SHERIFF'S OFFICE

John T. Wilcher
Sheriff of Chatham County Georgia

CHATHAM COUNTY, GEORGIA:

Albert J. Scott,
Chatham County, Georgia
Chairman of the Board of Commissioners

ATTEST:

JANICE BOCOOK, CLERK

APPROVED AS TO FORM AND LEGALITY

R. JONATHAN HART, COUNTY ATTORNEY

**CONTRACT NO. 17-0109-1**
**C/A DATE: June 22, 2018**

17

Plaintiff Creely- 001359

## ATTACHMENT A

### DRUG - FREE WORKPLACE CERTIFICATION

THE UNDERSIGNED CERTIFIES THAT THE PROVISIONS OF CODE SECTIONS 50-24-1 THROUGH 50-24-6 OF THE OFFICIAL CODE TO GEORGIA ANNOTATED, RELATED TO THE **DRUG-FREE WORKPLACE**, HAVE BEEN COMPLIED WITH IN FULL.   THE UNDERSIGNED FURTHER CERTIFIES THAT:

    <u>1.</u>  A Drug-Free Workplace will be provided for the employees during the performance of the contract; and;

    <u>2.</u>  Each sub-contractor under the direction of the Contractor shall secure the following written certification:

CORRECTHEALTH, CHATHAM, LLC (CONTRACTOR) certifies to Chatham County that a Drug-Free Workplace will be provided for the employees during the performance of this contract known as **Annual Contract to Inmate Healthcare Services** (PROJECT) pursuant to paragraph (7) of subsection (B) of Code Section 50-24-3. Also, the undersigned further certifies that he/she will not engage in the unlawful manufacture, sale, distribution, possession, or use of a controlled substance or marijuana during the performance of the contract.

CONTRACTOR

NOTARY

10-30-18

DATE

10/30/18

DATE



18

Plaintiff Creely- 001360

## ATTACHMENT B

### PROMISE OF NON-DISCRIMINATION STATEMENT

Know All Men By These Presence, that I (We), ___Carlo Musso___

___President___      ___CorrectHealth Chatham LLC___
Title         Name of

<div align="center">Name</div>
<div align="center">Bidder</div>

(herein after Company) in consideration of the privilege to provide services on the following Chatham County project **Inmate Healthcare Services for the Chatham County Detention Center** hereby consent, covenant and agree as follows:

(1) No person shall be excluded from participation in, denied the benefit of or otherwise discriminated against on the basis of race, color, national origin or gender in connection with the bid submitted to Chatham County or the performance of the contract resulting therefrom;

(2) That it is and shall be the policy of this Company to provide equal opportunity to all business persons seeking to contract or otherwise interested with the Company, including those companies owned and controlled by racial minorities, and women;

(3) In connection herewith, I (We) acknowledge and warrant that this Company has been made aware of, understands and agrees to take affirmative action to provide minority and women owned companies with the maximum practicable opportunities to do business with this Company on this contract;

(4) That the promises of non-discrimination as made and set forth herein shall be continuing throughout the duration of this contract with Chatham County;

(5) That the promises of non-discrimination as made and set forth herein shall be and are hereby deemed to be made a part of and incorporated by reference in the contract which this Company may be awarded;

(6) That the failure of this Company to satisfactorily discharge any of the promises of non-discrimination as made and set forth above may constitute a material breach of contract entitling the County to declare the contract in default and to exercise appropriate remedies including but not limited to termination of the contract.

_Carlo Musso_                  _10-30-18_
Signature                  Date

<div align="center">B-1</div>

<div align="center">19</div>

Plaintiff Creely- 001361

ATTACHMENT C
COST PROPOSAL, STAFFIING, PERFORMANCE GUARANTEES

CONTRACTOR presented a comprehensive proposal for inmate healthcare services at the Chatham County Detention Center in response to RFP 17-0901-1. This contract provides for an entire medical, mental health, dental and pharmaceutical program at the Chatham County Detention Center including full risk for catastrophic care coverage. CONTRACTOR agrees to provide the services specified in response to RFP 17-0901-1 and its Best and Final Offer in accordance with the Pricing Schedule, Staffing Matrix and Performance Guarantees outlined herein:

4.1   Base pricing includes comprehensive medical services, mental health services, dental services, nursing services, provider services, administrative support services, all pharmaceuticals and healthcare supplies, laboratory and routine radiology services, equipment maintenance, medical waste, medical transport and all requisite insurance coverage to support the healthcare needs of the Chatham County Detention Center. In addition to these services, TeleHealth equipment and services are also included in the base pricing. Pricing data for these services are included in the specific price per month for a base average daily population of 1800 inmates or less.

If the average daily population at the Chatham County Detention Center exceeds **1800** for over 60 days CONTRACTOR will charge the Chatham County **$3.80** per inmate per day for those inmates above the census of **1800**. **This per diem is intended to cover additional costs in those instances where minor, short term increases in the inmate population result in the higher utilization of routine supplies and services. However, the per diem is not intended to provide for any additional fixed costs, such as new staffing positions.**

4.2   CONTRACTOR will be responsible for all medication costs, including but not limited to psychotropic medication costs. The base proposal price submitted by CONTRACTOR in the Cost Proposal shown below provides for all medications.

4.3   CONTRACTOR will be responsible for payment of all catastrophic care costs and expenses associated with the provision of on-site and off-site specialty care provided to the inmates of the Chatham County Detention Center.

4.3.1   In regards to catastrophic care, pre-commitment (before acceptance into pre-booking) injuries that require hospitalization are the responsibility of the arresting agency until they are discharged and accepted at the detention center. CONTRACTOR shall be responsible for costs associated with healthcare of inmates arrested by the Sheriff's Office as they are considered an inmate the moment they are arrested. Any pre-existing illness or injury will be CONTRACTOR's responsibility after incarceration.

20

Plaintiff Creely- 001362

4.3.2    Any catastrophic medical care provided to an inmate is the responsibility of CONTRACTOR no matter the number of inmates involved.

4.3.3    CONTRACTOR will be responsible for catastrophic medical care for common/contagious disease no matter the number (one or more) of inmates involved.

4.4    In order to ensure delivery of quality medical services, CONTRACTOR will be responsible for maintaining staffing levels as outlined in the CorrectHealth Staffing Matrix:

| CorrectHealth Staffing Matrix | | |
|---|---|---|
| Personnel | FTE | Hrs / Wk |
| Medical Providers | | |
| Medical Director | 1.00 | 40 |
| Nurse Practitioner | 1.10 | 44 |
| Health Services Administrator | 1.00 | 40 |
| Director of Nursing RN | 1.00 | 40 |
| Education / CQI / Infection Control | 1.00 | 40 |
| Administrative Assistant | 1.00 | 40 |
| Advanced RN (NP) AP H&Ps | 2.10 | 84 |
| RN | 7.30 | 292 |
| LPN | 20.90 | 836 |
| Cert Medical Asst | 2.10 | 84 |
| Health Information Supervisor | 1.00 | 40 |
| Health Information Technician | 1.00 | 40 |
| Mental Health | | |
| Psychiatrist | 0.50 | 20 |
| Psychiatrist / Psychologist - Evenings / Nights | 0.25 | 10 |
| Psychiatric PA / NP | 0.75 | 30 |
| Licensed Professional Counselor | 4.80 | 192 |
| Behavioral Health Specialist | 1.00 | 40 |
| Dental | | |
| Dentist | 0.75 | 30 |
| Dental Hygienist | 0.50 | 20 |
| Totals | 49.05 | 1962 |

21

Plaintiff Creely- 001363

<div style="text-align:center;border:1px solid;">CorrectHealth Pricing Schedule</div>

**YEAR ONE**

| | | |
|---|---|---|
| Annual Base Costs for <u>1800</u> ADP | $ 7,248,086.36 | yr |
| Monthly Base Cost for <u>1800</u> ADP | $ 604,007.20 | mos |
| Variable per Diem for ADP above 1800 | $ 3.80 | per inmate |

**YEAR TWO**

| | | |
|---|---|---|
| Annual Base Costs for <u>1800</u> ADP | $ 7,429,288.52 | yr |
| Monthly Base Cost for <u>1800</u> ADP | $ 619,107.38 | mos |
| Variable per Diem for ADP above 1800 | $ 3.90 | per inmate |

**YEAR THREE**

| | | |
|---|---|---|
| Annual Base Costs for <u>1800</u> ADP | $ 7,615,020.73 | yr |
| Monthly Base Cost for <u>1800</u> ADP | $ 634,585.06 | mos |
| Variable per Diem for ADP above 1800 | $ 3.99 | per inmate |

| | |
|---|---|
| Maximum cap for future year increases | 2.50 % |

(Must be approved, not automatic)

## Performance Guarantees

1. Loss of MAG Accreditation shall result in a $25,000 penalty.

2. Loss of NCCHC Accreditation:  $25,000 penalty.

3. CONTRACTOR agrees that all positions within the Staffing Matrix are essential to the medical operation of the Detention Center.  Failure to maintain the minimum staffing credits as measured by utilizing the Sheriff's biometric timekeeping system and reporting the same to the Sheriff and Project Manager.

   a. The CONTRACTOR is required to provide coverage for vacant positions within 48 hours of the vacancy.

   b. The amount of the credit is equivalent to the total salary / wage and benefit cost.

   c. Staffing requirements are tabulated quarterly, based solely on the biometric data provided to the Sheriff and County Project Manager, unless otherwise agreed upon in writing by the County Manager and shall be applied to the next subsequent invoice.

### Attachment D
### AFFIDAVIT under O.C.G.A. § 13-10-91(b)(1)

By executing this affidavit, the undersigned contractor verifies its compliance with O.C.G.A. § 13-10-91, stating affirmatively that the individual, firm or corporation which is engaged in the physical performance of services on behalf of CHATHAM COUNTY has registered with, is authorized to use and uses the federal work authorization program commonly known as E-Verify, or any subsequent replacement program, in accordance with the applicable provisions and deadlines established in O.C.G.A. § 13-10-91. Furthermore, the undersigned contractor will continue to use the federal work authorization program throughout the contract period and the undersigned contractor will contract for the physical performance of services in satisfaction of such contract only with subcontractors who present an affidavit to the contractor with the information required by O.C.G.A. § 13-10-91(b). Contractor hereby attests that its federal work authorization user identification number and date of authorization are as follows:

65870
Federal Work Authorization User Identification Number
11-5-07
Date of Authorization
Correct Health
Name of Contractor
Inmate Healthcare Services RFP 17-0109-1
Name of Project
Chatham County Georgia
Name of Public Employer

23

Plaintiff Creely- 001365

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on _Oct 30_, 201_8_ in _Atl_ (city), _GA_ (state).

_Carlo Musso_
Signature of Authorized Officer or Agent

_CARLO MUSSO_
Printed Name and Title of Authorized Officer or Agent

SUBSCRIBED AND SWORN BEFORE ME
ON THIS THE _30th_ DAY OF _October_ ,201_8_
_Nina Simone Bates_
NOTARY PUBLIC

My Commission Expires:
_April 12, 2022_

D-1

24

Plaintiff Creely- 001366

**ATTACHMENT E**

**BIDDER'S CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY AND VOLUNTARY EXCLUSION**

The undersigned certifies, by submission of this proposal or acceptance of this contract, that neither Contractor nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntary excluded from participation in this transaction by any Federal department or agency, State of Georgia, City of Savannah, Board of Education of local municipality.    Bidder agrees that by submitting this proposal that Bidder will include this clause without modification in all lower tier transactions, solicitations, proposals, contracts, and subcontracts.    Where the Bidder or any lower tier participant is unable to certify to this statement, that participant shall attach an explanation to this document.

**Certification - the above information is true and complete to the best of my knowledge and belief.**

CARLO MUSSO
(Printed or typed Name of Signatory)

*[signature]*
(Signature)

10-30-18
(Date)

**NOTE:** The penalty for making false statements in offers is prescribed in 18 U.S.C. 1001

**END OF DOCUMENT Mod. CC P & C 6/2005**

Plaintiff Creely- 001367